## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | | |
|---|---|---|
| EDSAL MANUFACTURING CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | Court No. 24-00087 |
| | ) | |
| Defendant, | ) | |
| | ) | |
| TRIUNE TECHNOFAB PRIVATE LIMITED, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |
| | ) | |

### PLAINTIFF'S RULE 56.2 MOTION
### FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Rules of this Court, Plaintiff Edsal Manufacturing Co., Ltd. ("Edsal") hereby moves for judgment upon the agency record with respect to the U.S. Department of Commerce's negative final determination in the less-than-fair-value investigation of boltless steel shelving units prepackaged for sale from India, published as Boltless Steel Shelving Units Prepackaged for Sale From India: Final Negative Determination of Sales at Less Than Fair Value, 89 Fed. Reg. 28,746 (Apr. 19, 2024) ("Final Determination"), and the accompanying Issues and Decision Memorandum for the Final Negative Determination in the Less-Than-Fair-Value Investigation of Boltless Steel Shelving Units Prepackaged for Sale from India (Apr. 12, 2024) ("IDM").

For the reasons explained in the accompanying Rule 56.2 Brief in Support of Plaintiff's Motion for Judgment on the Agency Record, Plaintiff respectfully moves that this Court find that the Final Determination is not supported by substantial evidence and is otherwise not in

accordance with law.    Plaintiff respectfully moves that this Court remand the <u>Final</u> <u>Determination</u> to the U.S. Department of Commerce with instructions to correct its <u>Final</u> <u>Determination</u> in accordance with the proposed order.

Respectfully submitted,

<u>/s/ Joshua R. Morey</u>

KATHLEEN W. CANNON
JOSHUA R. MOREY
MATTHEW T. MARTIN
KELLEY DRYE & WARREN LLP
3050 K Street NW, Suite 400
Washington, DC  20007
(202) 342-8867
kcannon@kelleydrye.com
jmorey@kelleydrye.com
mmartin@kelleydrye.com

Counsel to Plaintiff Edsal Manufacturing Co., Ltd.

Dated: October 15, 2024

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| EDSAL MANUFACTURING CO., LTD., )<br><br>Plaintiff, )<br><br>v. )<br><br>UNITED STATES, )<br><br>Defendant, )<br><br>TRIUNE TECHNOFAB PRIVATE LIMITED, )<br><br>Defendant-Intervenor. ) | Court No. 24-00087 |

## ORDER

Upon consideration of Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record and the accompanying Rule 56.2 Brief in Support of Plaintiff's Motion for Judgment on the Agency Record, and all other papers and proceedings herein, it is hereby

**ORDERED** that Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record is **GRANTED**; and it is further

**ORDERED** that the U.S. Department of Commerce's final determination in the less-than-fair-value investigation of boltless steel shelving units prepackaged for sale from India, Boltless Steel Shelving Units Prepackaged for Sale From India: Final Negative Determination of Sales at Less Than Fair Value, 89 Fed. Reg. 28,746 (Apr. 19, 2024), is unsupported by substantial evidence and is otherwise not in accordance with law; and it is further

**ORDERED** that this action is remanded to the Department for proceedings consistent with this Court's opinion.

**SO ORDERED**.

_____
Mark A. Barnett, Chief Judge

Dated: _____
         New York, New York

**NONCONFIDENTIAL**

## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE**

| | |
|---|---|
| EDSAL MANUFACTURING CO., LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES, ) | Court No. 24-00087 |
| ) | |
| Defendant, ) | |
| ) | |
| TRIUNE TECHNOFAB PRIVATE ) | |
| LIMITED, ) | |
| ) | |
| Defendant-Intervenor. ) | |
| ) | |

## RULE 56.2 BRIEF IN SUPPORT OF PLAINTIFF'S
## MOTION FOR JUDGMENT ON THE AGENCY RECORD

KATHLEEN W. CANNON
JOSHUA R. MOREY
MATTHEW T. MARTIN
**KELLEY DRYE & WARREN LLP**
3050 K Street NW, Suite 400
Washington, DC 20007
(202) 342-8867
kcannon@kelleydrye.com
jmorey@kelleydrye.com
mmartin@kelleydrye.com

Counsel to Plaintiff Edsal Manufacturing Co., Ltd.

October 15, 2024

NONCONFIDENTIAL

**TABLE OF CONTENTS**

**Page**

ADMINISTRATIVE DETERMINATION UNDER REVIEW ........................................................1

ISSUES PRESENTED AND SUMMARY OF ARGUMENT ...................................................1

STANDARD OF REVIEW ....................................................................................................3

STATEMENT OF FACTS ....................................................................................................4

ARGUMENT .....................................................................................................................10

I.     THE DEPARTMENT'S DECISION TO ACCEPT TMTE'S FINANCIAL
STATEMENT IS UNLAWFUL .................................................................................10

     A.     Triune Failed to Timely Submit a Publicly Available Version of
TMTE's 2022-2023 Financial Statement ................................................11

          1.     Legal Standard ................................................................................11

          2.     The Department's Acceptance of Triune's Untimely Filed
CV Profit Information Is Unlawful ................................................13

     B.     The Department's Finding that TMTE's Financial Statement Is
Publicly Available Is Unlawful ................................................................18

II.    THE DEPARTMENT'S REJECTION OF MEKINS' FINANCIAL
STATEMENT IS UNLAWFUL .................................................................................27

     A.     The Department's Rejection of Mekins' Financial Statement On
the Basis That It Indicates Receipt of Countervailable Subsidies Is
Not Supported by Substantial Evidence and Is Otherwise Not In
Accordance with Law ...............................................................................27

          1.     Legal Standard ................................................................................27

          2.     The Department's Treatment of Mekins' Financial
Statement as Unsuitable Per Se Is Unlawful Because
Receipt of Countervailable Subsidies Is Not Dispositive of
a Financial Statement's Suitability for CV Profit
Calculations...................................................................................29

     B.     The Department's Deviation from its Practice of Relying on
Multiple Financial Statements Is Unlawful .............................................36

CONCLUSION...................................................................................................................39

NONCONFIDENTIAL

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Bebitz Flanges Works Priv. Ltd. v. United States,
    433 F. Supp. 3d 1297 (Ct. Int'l Trade 2020) ................................................................. 11-12

Best Mattresses Int'l Co. v. United States,
    622 F. Supp. 3d 1347 (Ct. Int'l Trade 2023) ("Best Mattresses I")............................. 19, 21-22

Best Mattresses Int'l Co. v. United States,
    703 F. Supp. 3d 1382 (Ct. Int'l Trade 2024) ("Best Mattresses II") ............................. passim

Bldg. Sys. de Mexico, S.A. de C.V. v. United States,
    567 F. Supp. 3d 1306 (Ct. Int'l Trade 2022)
    ("Building Systems de Mexico I")................................................................................... passim

Consol. Edison Co. of N.Y. v. NLRB,
    305 U.S. 197 (1938)........................................................................................................ 3-4

CP Kelco US, Inc. v. United States,
    949 F.3d 1348 (Fed. Cir. 2020),
    rev'g in relevant part CP Kelco US, Inc. v. United States,
    2018 WL 4469912 (Ct. Int'l Trade Sept. 17, 2018)...................................................... passim

Dongtai Peak Honey Indus. Co. v. United States,
    777 F.3d 1343 (Fed. Cir. 2015)............................................................................... 11-12, 16

Ferrostaal Metals Gmbh v. United States,
    518 F. Supp. 3d 1357 (Ct. Int'l Trade 2021) ........................................................... 12-13, 16

Juancheng Kangtai Chem. Co. v. United States,
    Slip Op. 15-93, 2015 WL 4999476 (Ct. Int'l Trade Aug. 21, 2015) ..................................28

Mid Continent Steel & Wire, Inc. v. United States,
    203 F. Supp. 3d 1295 (Ct. Int'l Trade 2017) ("Mid Continent I") .................................. 29-30

Mid Continent Steel & Wire, Inc. v. United States,
    273 F. Supp. 3d 1348 (Ct. Int'l Trade 2017) ("Mid Continent II") ......................................30

Mid Continent Steel & Wire, Inc. v. United States,
    941 F.3d 530 (Fed. Cir. 2019) ("Mid Continent III")...................................................... passim

Mid Continent Steel & Wire, Inc. v. United States,
    551 F. Supp. 3d 1360 (Ct. Int'l Trade 2021) ("Mid Continent IV")................................. 31-32

NONCONFIDENTIAL

Mid Continent Steel & Wire, Inc. v. United States,
    586 F. Supp. 3d 1349 (Ct. Int'l Trade 2022) ("Mid Continent V")..................................32, 34

Mid Continent Nail Corp. v. United States,
    999 F. Supp. 2d 1307 (Ct. Int'l Trade 2014) ..........................................................................13

Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.,
    463 U.S. 29 (1983)..............................................................................................4, 10, 27

NTSF Seafoods Jt. Stock Co. v. United States,
    487 F. Supp. 3d 1310 (Ct. Int'l Trade 2020) ..........................................................................37

PT Zinus Glob. Indon. v. United States,
    628 F. Supp. 3d 1252 (Ct. Int'l Trade 2023) ..........................................................................35

SeAH Steel Corp. v. United States,
    539 F. Supp. 3d 1341 (Ct. Int'l Trade 2021) ...................................................................27-28, 35

Since Hardware (Guangzhou) Co. v. United States,
    Consol. Ct. No. 11-00106 (ECF No. 81), 2012 WL 11802604
    (Ct. Int'l Trade Aug. 14, 2012) ("Since Hardware I")....................................................22-25

Since Hardware (Guangzhou) Co. v. United States,
    911 F. Supp. 2d 1362 (Ct. Int'l Trade 2013) ("Since Hardware II").............................23-24

Since Hardware (Guangzhou) Co. v. United States,
    977 F. Supp. 2d 1347 (Ct. Int'l Trade 2014) ("Since Hardware III").............................24-26

SKF USA v. United States,
    630 F.3d 1365 (Fed. Cir. 2011)..............................................................................4, 11, 27

Tau-Ken Temir LLP v. United States,
    587 F. Supp. 3d 1346 (Ct. Int'l Trade 2022) ...................................................................11-12

Tri Union Frozen Prods., Inc. v. United States,
    163 F. Supp. 3d 1255 (Ct. Int'l Trade 2016) ...........................................................12-13, 16

Universal Camera Corp. v. NLRB,
    340 U.S. 474 (1951)..............................................................................................4, 11, 27

**Statutes and Regulations**

19 U.S.C. § 1516a(a)(2)(B)(ii)............................................................................................3

19 U.S.C. § 1516a(b)(1)(B)(i)............................................................................................3

19 U.S.C. § 1677b(a)(1)(B)(ii) ...........................................................................................5

NONCONFIDENTIAL

19 U.S.C. § 1677b(a)(1)(B)(ii)(II) ...........................................................................5

19 U.S.C. § 1677b(a)(1)(C)(ii) ................................................................................5

19 U.S.C. § 1677b(a)(1)(C)(iii) ...............................................................................5

19 U.S.C. § 1677b(a)(4) ...........................................................................................5

19 U.S.C. § 1677b(e)(2)(B)(iii) .......................................................................*passim*

19 C.F.R. § 351.102(b)(21)(i) .................................................................................15

19 C.F.R. § 351.102(b)(21)(v) ................................................................................15

19 C.F.R. § 351.301(c)(5) .......................................................................................15

19 C.F.R. § 351.302(a).............................................................................................11

19 C.F.R. § 351.302(b) ...................................................................................*passim*

19 C.F.R. § 351.302(c).......................................................................................11, 14

19 C.F.R. § 351.302(c)(1) .......................................................................................14

19 C.F.R. § 351.302(c)(2) .................................................................................11, 14

**Administrative Determinations**

Boltless Steel Shelving Units Prepackaged for Sale From India:
   Final Negative Determination of Sales at Less Than Fair Value,
   89 Fed. Reg. 28,746 (Dep't Commerce Apr. 19, 2024) ("Final
   Determination") (P.R. 289), and accompanying Issues and Decision
   Memorandum for the Final Negative Determination in the Less-Than-Fair-
   Value Investigation of Boltless Steel Shelving Units Prepackaged for Sale
   from India (Apr. 12, 2024) ("IDM") (P.R. 287) .............................................*passim*

Boltless Steel Shelving Units Prepackaged for Sale from India, Malaysia, Taiwan,
   Thailand and the Socialist Republic of Vietnam:
   Initiation of Less-Than-Fair-Value Investigations, 88 Fed. Reg. 32,188
   (Dep't Commerce May 19, 2023) (P.R. 35) ............................................................4

Boltless Steel Shelving Units Prepackaged for Sale From India, Malaysia,
   Taiwan, Thailand and the Socialist Republic of Vietnam:
   Postponement of Preliminary Determinations in the Less-Than-Fair-Value
   Investigations, 88 Fed. Reg. 63,063 (Dep't Commerce Sept. 14, 2023)
   (P.R. 151) ...........................................................................................................7-8

NONCONFIDENTIAL

Boltless Steel Shelving Units Prepackaged for Sale From India:
    Preliminary Negative Determination of Sales at Less Than Fair Value and
    Postponement of Final Determination, 88 Fed. Reg. 83,395 (Dep't Commerce
    Nov. 29, 2023) ("Preliminary Determination") (P.R. 246), and accompanying
    Decision Memorandum for the Preliminary Negative Determination in the
    Less-Than-Fair-Value Investigation of Boltless Steel Shelving Units
    Prepackaged for Sale from India (Nov. 21, 2023) ("PDM") (P.R. 239)........................ *passim*

Carbon and Alloy Steel Threaded Rod From India:
    Final Affirmative Determination of Sales at Less Than Fair Value,
    85 Fed. Reg. 8,818 (Dep't Commerce Feb. 18, 2020), and accompanying
    Decision Memorandum for the Final Determination in the Less-Than-Fair-
    Value Investigation of Carbon and Alloy Steel Threaded Rod from India
    (Feb. 7, 2020) ("Threaded Rod from India IDM") (ACCESS barcode
    3941514-02)........................................................................................... 36-37

Certain Activated Carbon From the People's Republic of China:
    Final Results of Antidumping Duty Administrative Review; and Final
    Determination of No Shipments; 2021–2022, 88 Fed. Reg. 77,552 (Dep't
    Commerce Nov. 13, 2023), and accompanying Issues and Decision
    Memorandum for the Final Results of the 2021-2022 Administrative Review
    of the Antidumping Duty Order on Certain Activated Carbon from the
    People's Republic of China (Nov. 3, 2023) (ACCESS barcode 4458039-02) ........................38

Certain Fabricated Structural Steel From Mexico:
    Final Determination of Sales at Less Than Fair Value, 85 Fed. Reg. 5,390
    (Dep't Commerce Jan. 30, 2020), and accompanying Issues and Decision
    Memorandum for the Final Affirmative Determination in the Less-Than-Fair-
    Value Investigation of Certain Fabricated Structural Steel from Mexico
    (Jan. 23, 2020) (ACCESS barcode 3935345-01),
    aff'd as modified upon remand, Bldg. Sys. de Mexico, S.A. de C.V. v. United
    States, 609 F. Supp. 3d 1369 (Ct. Int'l Trade 2022)
    ("Building Systems de Mexico II") .....................................................................................28

Certain Steel Nails From the Sultanate of Oman:
    Final Determination of Sales at Less Than Fair Value, 80 Fed. Reg. 28,972
    (Dep't Commerce May 20, 2015), and accompanying Issues and Decision
    Memorandum for the Final Determination of Sales at Less Than Fair Value
    (May 13, 2015) ("Steel Nails from Oman IDM")
    (ACCESS barcodes 3276442-01 to 3276442-03)........................................................ 15-16, 29

Certain Steel Nails from the United Arab Emirates:
  Final Determination of Sales at Less Than Fair Value, 77 Fed. Reg. 17,029
  (Dep't Commerce Mar. 23, 2012), and accompanying Issues and Decision
  Memorandum for the Less Than Fair Value Investigation of Certain Steel
  Nails from the United Arab Emirates (Mar. 19, 2012)
  (ACCESS barcode 3064220-01)............................................................ 18-19

Extension of Time Limits, 78 Fed. Reg. 57,790
   (Dep't Commerce Sept. 20, 2013) ....................................................... 11-12, 14

Final Determination of Sales at Less Than Fair Value:
  Prestressed Concrete Steel Rail Tie Wire From the People's Republic of
  China, 79 Fed. Reg. 25,572 (Dep't Commerce May 5, 2014), and
  accompanying Issues and Decision Memorandum for the Final Determination
  of Sales at Less Than Fair Value (Apr. 28, 2014)
  (ACCESS barcode 3198557-01)..................................................................26

Final Results of Redetermination Pursuant to Court Remand:
  Best Mattresses Int'l Co. v. United States, Ct. No. 21-00281 (Dep't Commerce
  July 17, 2023) (ECF No. 105) (ACCESS barcode 4403561-01)
  ("Mattresses from Cambodia Remand Results").......................................... 20-22, 24

Final Results of Redetermination Pursuant to Court Order:
  Mid Continent Steel & Wire, Inc. v. United States, Consol. Ct. No. 15-00214
  (Dep't Commerce May 23, 2017) (ECF No. 95)
  (ACCESS barcode 3575091-01)..................................................................30

Final Results of Redetermination Pursuant to Court Remand:
  Mid Continent Steel & Wire Inc. v. United States, Consol. Ct. No. 15-00214
  (Dep't Commerce Apr. 12, 2022) (ECF No. 150)
  (ACCESS barcode 4232065-01)
  ("Steel Nails from Oman Third Remand Results") ....................................... 32-33

Final Results of Redetermination Pursuant to Court Remand:
  Yangtai Xinke Steel Structure Co. v. United States, Ct. No. 10-00240
  (Dep't Commerce Jan. 18, 2013) (ECF No. 83), aff'd, 38 C.I.T. 478 (2014) .................. 23-24

Glycine From India:
  Final Results of Countervailing Duty Administrative Review: 2020,
  87 Fed. Reg. 76,611 (Dep't Commerce Dec. 15, 2022), and accompanying
  Issues and Decision Memorandum for the Final Results of the Countervailing
  Duty Administrative Review of Glycine from India: 2020 (Dec. 9, 2022)
  (ACCESS barcode 4319512-02)................................................................ 33-34

**NONCONFIDENTIAL**

Mattresses From Cambodia:
    Final Affirmative Determination of Sales at Less Than Fair Value and Final
    Negative Determination of Critical Circumstances, 86 Fed. Reg. 15,894
    (Dep't Commerce Mar. 25, 2021), and accompanying Issues and Decision
    Memorandum for the Final Affirmative Determination in the Less-Than-Fair-
    Value Investigation of Mattresses from Cambodia (Mar. 18, 2021)
    (ACCESS barcode 4101216-01)..........................................................................19

Mattresses From Indonesia:
    Final Results of Antidumping duty Administrative Review; 2020–2021, 88
    Fed. Reg. 85,240 (Dep't of Commerce Dec. 7, 2023), and accompanying
    Issues and Decision Memorandum for the Final Results of the 2020-2022
    Antidumping Duty Administrative Review: Mattresses from Indonesia
    (Dec. 1, 2023) (ACCESS barcode 4473081-02)............................................. 36-37

Persulfates from the People's Republic of China:
    Final Results of Antidumping Duty Administrative Review, 68 Fed. Reg.
    68,030 (Dep't Commerce Dec. 5, 2003), and accompanying Issues and
    Decision Memorandum for the 2001-2002 Antidumping Duty Administrative
    Review of Persulfates from the People's Republic of China (Nov. 28, 2003) ................. 28-29

Steel Wire Garment Hangers From the People's Republic of China:
    Antidumping Duty Administrative Review, 2010–2011, 77 Fed. Reg. 66,952
    (Dep't Commerce Nov. 8, 2012), and accompanying Issues and Decision
    Memorandum for the Final Results of the Third Antidumping Duty
    Administrative Review (May 7, 2013) (ACCESS barcode 3134549-01)...............................37

NONCONFIDENTIAL

On behalf of Plaintiff Edsal Manufacturing Co., Ltd. ("Edsal"), we submit this Rule 56.2 Brief in Support of Plaintiff's Motion for Judgment on the Agency Record.  As set forth below, Plaintiff urges this Court to determine that certain aspects of the U.S. Department of Commerce's ("the Department") final negative determination in the less-than-fair-value investigation of boltless steel shelving units prepackaged for sale from India are not supported by substantial evidence and are otherwise not in accordance with law and to remand the Department's final determination for further proceedings.

## ADMINISTRATIVE DETERMINATION UNDER REVIEW

Plaintiff challenges certain aspects of the Department's final negative determination in the less-than-fair-value investigation of boltless steel shelving units prepackaged for sale from India.  Boltless Steel Shelving Units Prepackaged for Sale From India: Final Negative Determination of Sales at Less Than Fair Value, 89 Fed. Reg. 28,746 (Dep't Commerce Apr. 19, 2024) ("Final Determination") (P.R. 289),[1] and the accompanying Issues and Decision Memorandum for the Final Negative Determination in the Less-Than-Fair-Value Investigation of Boltless Steel Shelving Units Prepackaged for Sale from India (Apr. 12, 2024) ("IDM") (P.R. 287).

## ISSUES PRESENTED AND SUMMARY OF ARGUMENT

The Department's Final Determination is unsupported by substantial evidence and is not otherwise in accordance with law because the Department:

1. Considered and accepted untimely filed new factual information submitted by Triune purporting to show a privately obtained

---

[1]    Documents in the administrative record are cited using the Public Record ("P.R.") or Confidential Record ("C.R.") number corresponding to the record documents identified in the Index to the Administrative Record filed with this Court on July 15, 2024 (ECF No. 16).

NONCONFIDENTIAL

source of constructed value ("CV") profit information had become publicly available;

2. Found that Triune's privately obtained source of CV profit information was publicly available despite a lack of record evidence;

3. Refused to consider an additional source of CV profit information submitted by Edsal because it reflected the receipt of countervailable subsidies; and

4. Declined to average the profit data from suitable sources for the Department's calculation of Triune's CV profit and selling expenses ratios.

First, the Department accepted and considered untimely filed CV profit information submitted by Triune to purportedly establish that a financial statement Triune had obtained from private sources had subsequently become publicly available. The Department's acceptance and consideration of this information is contrary to established agency precedent, the Department's letter requesting CV profit information, and the Department's regulations.

Second, the Department's finding that the privately obtained financial statement of TMTE is publicly available is unlawful. Contrary to the agency's determinations in other proceedings, the Department blindly accepted as fact that the privately obtained version of TMTE's financial statement is an accurate, reliable publicly available version of the financial statement. A fatal flaw in the Department's final determination is the fact that the record lacks any version of TMTE's financial statement as obtained from a public source. Instead, the record contains merely an unreliable and potentially inaccurate version of TMTE's financial statement. In addition, the Department failed to address the fact that Edsal was unable to procure TMTE's financial statement in the public domain.

Third, the Department's treatment of Mekins' financial statement as per se unsuitable for the agency's CV profit calculations is unlawful. See Mid Continent Steel & Wire, Inc. v. United

NONCONFIDENTIAL

<u>States</u>, 941 F.3d 530, 543-46 (Fed. Cir. 2019). Evidence of countervailable subsidies does not automatically render a financial statement unsuitable for the Department's CV profit calculations under 19 U.S.C. § 1677b(e)(2)(B)(iii). The statute authorizes the Department to calculate profit based on any "reasonable method," and does not require the Department to dismiss a financial statement solely because it demonstrates receipt of a countervailable subsidy. <u>See</u> 19 U.S.C. § 1677b(e)(2)(B)(iii). The Department's refusal to consider Mekins' financial statement, its disregard of the comparability of Mekins' financial experience with that of Triune's, and its failure to account for the limited, non-distortive impact of the subsidies on Mekins' overall profit data renders the <u>Final Determination</u> unsupported by substantial evidence and not in accordance with law.

Last, the Department's failure to, in the alternative, average the Mekins and TMTE financial statements is inconsistent with the Department's preference and practice of relying on multiple financial statements to calculate surrogate profit and selling expenses ratios. Relying on an average of multiple sources for CV profit data would result in a fairer comparison between normal value and Triune's prices, would reflect a broader market average and thus would be more representative of the Indian economy as a whole.

## STANDARD OF REVIEW

When reviewing a challenge to a final negative determination in a less-than-fair-value investigation by the Department, this Court "shall hold unlawful any determination, finding, or conclusion" that is "unsupported by substantial evidence on the record, or otherwise is not in accordance with law." 19 U.S.C. § 1516a(a)(2)(B)(ii), (b)(1)(B)(i). The substantial evidence standard requires "more than a mere scintilla" of evidence. <u>Consol. Edison Co. of N.Y. v. NLRB</u>, 305 U.S. 197, 229 (1938). Substantial evidence is "such relevant evidence as a

NONCONFIDENTIAL

reasonable mind might accept as adequate to support a conclusion" considering the record as a whole. Id.; CP Kelco US, Inc. v. United States, 949 F.3d 1348, 1356 (Fed. Cir. 2020). Further, to be supported by substantial evidence, the Department's determination, findings, and conclusions "must take into account whatever in the record fairly detracts" from their weight. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also SKF USA v. United States, 630 F.3d 1365, 1374 (Fed. Cir. 2011) ("Commerce has an 'obligation' to address important factors raised by comments from petitioners and respondents."). In addition, the Department "must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, (1983) (quoting Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962)).

## STATEMENT OF FACTS

On May 15, 2023, the Department initiated the less-than-fair-value investigation of boltless steel shelving units prepackaged for sale from India after Edsal filed a petition for antidumping duties on imports of boltless steel shelving from India, Malaysia, Taiwan, Thailand, and Vietnam. Boltless Steel Shelving Units Prepackaged for Sale from India, Malaysia, Taiwan, Thailand and the Socialist Republic of Vietnam: Initiation of Less-Than-Fair-Value Investigations, 88 Fed. Reg. 32,188 (Dep't Commerce May 19, 2023) (P.R. 35). The Department selected ESS ENN Auto CNC Private Limited ("ESS ENN Auto") and Triune Technofab Private Limited ("Triune") as the respondents to individually examine. Boltless Steel Shelving Units Prepackaged for Sale From India: Preliminary Negative Determination of Sales at Less Than Fair Value and Postponement of Final Determination, 88 Fed. Reg. 83,395 (Dep't Commerce Nov. 29, 2023) (hereinafter, "Preliminary Determination") (P.R. 246); Decision

NONCONFIDENTIAL

Memorandum for the Preliminary Negative Determination in the Less-Than-Fair-Value Investigation of Boltless Steel Shelving Units Prepackaged for Sale from India (Nov. 21, 2023) ("PDM") at 2 (P.R. 239).  Following the Department's determination that ESS ENN Auto and an alternative potential respondent (Addagudi Exports) did not produce or ship subject merchandise, Triune became the sole company subject to individual examination.  PDM at 2-3 (P.R. 239).

Pursuant to 19 U.S.C. § 1677b(a)(1)(C)(iii), (a)(1)(B)(ii)(II), the Department found that Triune's home market and third-country market sales were not viable.  Letter from USDOC Pertaining to Boltless Steel Shelving Packaged for Sale from India CV Profit Letter at 1 (hereinafter, "CV Profit Letter") (P.R. 140); PDM at 12 (P.R. 239).  When the Department "determines that the aggregate quantity (or, if quantity is not appropriate, value) of the foreign like product sold in the exporting country is insufficient to permit a proper comparison with the sales of the subject merchandise to the United States," the agency may use "the price at which the foreign like product is so sold (or offered for sale) for consumption in a country other than the exporting country or the United States," i.e., a third country, or "the constructed value of that merchandise."   19 U.S.C. § 1677b(a)(1)(C)(ii), (a)(1)(B)(ii), (a)(4).   Accordingly, the Department invited interested parties to submit comments and factual information, including surrogate company financial statements, for the Department's consideration in calculating constructed value ("CV") profit and selling expenses.  CV Profit Letter at 1-2 (P.R. 140); PDM at 12 (P.R. 239).  The Department instructed parties that they "must provide the source of each of the financial statements included in {their} submission and confirm that the source is publicly available."  CV Profit Letter at 2 (emphasis added) (P.R. 140).  After granting extensions of time requested by counsel, the deadlines for the submission of this information were October 2, 2023,

NONCONFIDENTIAL

for comments and factual information, and October 10, 2023, for rebuttal comments and information.  See PDM at 12 (P.R. 239).

Edsal submitted CV profit and expense information, including the financial statements of two companies, an Indian producer of comparable merchandise, Mekins Industries Private Limited ("Mekins"), and a Malaysian producer of identical and comparable merchandise, Eonmetall Group Berhad ("Eonmetall").  Letter from Kelley Drye & Warren LLP to Sec'y of Commerce Pertaining to Petitioner Submission of CV Profit and Selling Expenses at 3, Attachs. 1B, 2B (P.R. 175-76).  As explained in the submission, "{t}he Mekins financial statements {for the fiscal year 2022 to 2023} were obtained from the website of the Government of India's Ministry of Corporate Affairs." Id. at 3-4 (P.R. 175-76).  The "Eonmetall financial statements were obtained from the company's own website." Id. at 4 (P.R. 175-76).

Triune submitted CV profit and expense information, including the financial statements of seven companies.  Letter from Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP to Sec'y of Commerce Pertaining to Triune CV Profit Submission (hereinafter, "Triune CV Profit Comments") (P.R. 177-91).  According to Triune's submission, "{s}ix of the seven financial statements have been directly downloaded from the {Government of India's Ministry of Corporate Affairs' ('MCA')} website after payment of applicable fees." Id. at 2 (P.R. 177-91).  However, Triune noted that "the due date for filing of the fiscal year 2022-23 financial statements with the MCA is November 30, 2023," more than eight weeks after the deadline for CV profit information.  Id. (P.R. 177-91); see PDM at 12 (noting the October 2, 2023 deadline for CV profit information) (P.R. 239).  As a result, Triune provided "financial statements for fiscal year 2021-22 only," but "with one exception."  Triune CV Profit Comments at 2 (P.R. 177-91).  Triune included a copy of the financial statement of TMTE Metal Tech Private Limited

NONCONFIDENTIAL

("TMTE") for fiscal year 2022-2023, which Triune obtained from TMTE's owner.  Id. at 2, Exs. CV-8(c), CV-8(e) (P.R. 177-91).  Triune also submitted a letter from TMTE's owner "agreeing to place on record this financial statement as a public document."  Id. at 2, Ex. CV-8(e) (P.R. 177-91).  Triune did not request an extension of time to submit any of the fiscal year 2022-2023 versions of the financial statements it submitted once they became publicly available.

Edsal submitted rebuttal comments to Triune's CV profit and selling expense comments and information.  Letter from Kelley Drye & Warren LLP to Sec'y of Commerce Pertaining to Petitioner Rebuttal CV Cmts. (hereinafter, "Edsal Rebuttal CV Profit Comments") (P.R. 218). Edsal explained why TMTE's financial statement was not a suitable source for the Department's CV profit and selling expense calculations.  Id. at 2-8 (P.R. 218).  While Triune was able to acquire TMTE's financial statement directly from TMTE's owner and not from a publicly available source, Edsal was unable to locate the same financial statement in the public domain. Id. at 4 (P.R. 218).  Edsal further explained that consistent with the Department's longstanding policy of accepting only publicly available sources of information for the purpose of CV profit calculations, the Department should disregard TMTE's financial statement.  Id. (P.R. 218).

On October 23, 2023, several weeks after the deadline for interested parties to submit CV profit information, and without requesting an extension of the since-passed deadline, Triune submitted a printout from the MCA's website portal, which Triune argued "evidences that TMTE's 2022-23 financial statement has now been filed with the Registrar of Companies," and thus, "any can person can approach the Indian agency and obtain a copy of TMTE's 2022-23 financial statement upon payment of prescribed fees."  Letter from Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP to Sec'y of Commerce Pertaining to Triune Submission of Factual Information at 1, Ex. 1 (hereinafter, "Triune TMTE Factual Info.") (P.R. 220-22);

NONCONFIDENTIAL

<u>Boltless Steel Shelving Units Prepackaged for Sale From India, Malaysia, Taiwan, Thailand and</u>

<u>the Socialist Republic of Vietnam: Postponement of Preliminary Determinations in the Less-</u>

<u>Than-Fair-Value Investigations</u>, 88 Fed. Reg. 63,063, 63,064 (Dep't Commerce Sept. 14, 2023)

(P.R. 151).  Triune did not submit a copy of the TMTE financial statement retrieved from the

MCA's website in its October 23rd submission.

Edsal urged the Department to reject and remove Triune's October 23rd new factual

information as untimely.  Letter from Kelley Drye & Warren LLP to Sec'y of Commerce

Pertaining to Petitioner's Req. to Reject Triune NFI (hereinafter, "Edsal Request to Strike")

(P.R. 228).  Triune opposed Edsal's request that the submission be rejected and removed from

the record.  Letter from Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP to Sec'y of

Commerce Pertaining to Triune Opp. to Req. to Reject 30 Day NFI (hereinafter, "Triune

Opposition to Request to Strike") (P.R. 230).

On November 13, 2023, the Department issued a memorandum in which it accepted

Triune's October 23rd submission and retroactively extended the October 2nd deadline for CV

profit information.  Memo from USDOC to File Pertaining to Interested Parties Acceptance and

Opportunity to Rebut at 2 (hereinafter, "CV Profit Info Acceptance") (P.R. 233).    The

Department asserted it had "determined that good cause exists to extend the deadline for CV

profit information to October 23, 2023."  <u>Id.</u> at 2 (footnoted omitted) (P.R. 233).  The basis for

this "good cause" determination was Triune's November 2nd letter in which it indicated that

TMTE's fiscal year 2022-2023 financial statement "placed on the record was not available on the

due date for CV profit information."  <u>Id.</u> (P.R. 233).  In comments filed in advance of the

Department's preliminary determination, Edsal again urged the Department to find that TMTE's

financial statement was not publicly available.  Letter from Kelley Drye & Warren LLP to Sec'y

of Commerce Pertaining to Petitioner Pre-Prelim Cmts at 11-15 (hereinafter, "Edsal Pre-Prelim Comments") (P.R. 229).

On November 21, 2023, the Department issued its preliminary determination. Preliminary Determination, 88 Fed. Reg. at 83,397 (P.R. 246). For the purpose of calculating CV profit under 19 U.S.C. § 1677b(e)(2)(B)(iii), the Department found all of the financial statements submitted by the parties to be unsuitable, except for the TMTE financial statement. PDM at 11-12 (P.R. 239).

During the briefing stage of the investigation, Edsal reiterated that the Department wrongfully accepted Triune's untimely October 23rd new factual information, and urged the Department to acknowledge and account for the fact that TMTE's financial statement was not publicly available at the time of submission. Brief from Kelley Drye & Warren LLP to Sec'y of Commerce Pertaining to Petitioner Case Brief at 1-10 (hereinafter, "Petitioner's Case Brief") (P.R. 279). Edsal also urged the Department to rely on the Mekins financial statement for calculating CV profit because Mekins is a producer of comparable merchandise and its financial statement satisfies the Department's CV profit financial statement selection criteria. See id. at 3-15 (P.R. 279); Edsal Pre-Prelim Comments at 8-15 (P.R. 229). Alternatively, if the Department continued to find the TMTE financial statement to be suitable, Edsal urged the Department to average the TMTE and Mekins financial statements, consistent with the agency's practice of relying on multiple useable financial statements to avoid distortions. See Petitioner's Case Brief at 14-15 (P.R. 279).

On April 12, 2024, the Department issued its final determination. Final Determination, 89 Fed. Reg. at 28,747 (P.R. 289). The Department continued to rely solely on TMTE's financial statement for calculating CV profit. IDM at 4 (P.R. 287). In addition, the Department

**NONCONFIDENTIAL**

did not reconsider its basis for accepting Triune's October 23rd submission and simply asserted that it "exercised its discretion under {Commerce's} regulations" and accepted the placement of the October 23rd information on the record.  Id. at 5 (P.R. 287).  Because the October 23rd submission, according to the Department, showed "TMTE's financial statement was filed" with the Indian Government "and was, thus, publicly available," the Department declined to reject TMTE's financial statement.  Id. at 5-6 (P.R. 287).  Without specifying precisely when TMTE's 2022-2023 financial statement became publicly available, the Department asserted that "TMTE's financial statements are public information and analyzed as such," noting that "TMTE's financial statements have been publicly available since October 2023."  Id. at 6 (P.R. 287).

## ARGUMENT

I.  **THE DEPARTMENT'S DECISION TO ACCEPT TMTE'S FINANCIAL STATEMENT IS UNLAWFUL**

The Department wrongfully permitted Triune to supplement its initial CV profit information when Triune failed to establish that TMTE's financial statement was publicly available.  By permitting Triune to belatedly file information purporting to show that the privately obtained version of TMTE's financial statement is publicly available and therefore a suitable source for CV profit calculations, the Department failed to "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made'" when it considered the untimely information and found TMTE's financial statement to be publicly available.  Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (quoting Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962)).  In addition, the Department failed to account for the glaring omission of any version of TMTE's financial statement as obtained from a public source.  The Department also failed to address the fact that Edsal was unable to obtain TMTE's financial

NONCONFIDENTIAL

statement in the public domain.  In short, the Department failed to take into account evidence that fairly detracts from its finding that TMTE's financial statement is publicly available.  See Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); SKF USA v. United States, 630 F.3d 1365, 1374 (Fed. Cir. 2011).  For these reasons and as explained further below, the Department's acceptance and consideration of untimely information, use of a privately obtained source of CV profit, and finding that TMTE's financial statement is publicly available is not supported by substantial evidence and otherwise not in accordance with law.

A.    **Triune Failed to Timely Submit a Publicly Available Version of TMTE's 2022-2023 Financial Statement**

1.    **Legal Standard**

The Department's regulations set forth procedures by which interested parties may request extensions of time to submit factual information.  See 19 C.F.R. § 351.302(a)-(c).  The Department will retroactively extend a deadline to submit factual information only when a party has demonstrated that extraordinary circumstances existed that prevented the submitting party from timely requesting an extension of the applicable deadline.  Id. § 351.302(c)(2).  Only then will the Department determine whether good cause exists to justify an extension of a deadline under 19 C.F.R. § 351.302(b).  Extension of Time Limits, 78 Fed. Reg. 57,790, 57,791 (Dep't Commerce Sept. 20, 2013) ("Final Rule") ("Only if the Department determines that the party has demonstrated that extraordinary circumstances exist will the Department then consider whether the party has demonstrated that good cause exists for allowing an extension of the time limit pursuant to section 351.302(b).").

Consistent with the Department's regulations governing the acceptance of factual information and procedures for granting extensions of time, the courts have upheld the Department's proper enforcement of its deadlines.  See Dongtai Peak Honey Indus. Co. v. United

NONCONFIDENTIAL

States, 777 F.3d 1343, 1351-53 (Fed. Cir. 2015); Tau-Ken Temir LLP v. United States, 587 F. Supp. 3d 1346, 1351-56 (Ct. Int'l Trade 2022); Bebitz Flanges Works Priv. Ltd. v. United States, 433 F. Supp. 3d 1297, 1303-07 (Ct. Int'l Trade 2020).  In Dongtai Peak, the U.S. Court of Appeals for the Federal Circuit explained that the Department properly rejected the respondent's untimely extension request and questionnaire response.  Dongtai Peak, 777 F.3d at 1350-53.  The court held that "good cause did not exist to retroactively extend the deadline" at issue because the respondent could have timely requested an extension of time "but simply failed to do so." Id. at 1352.  The court also stressed that "'it is not for {the respondent} to establish Commerce's deadlines or to dictate to Commerce whether and when Commerce actually needs the requested information.'"  Id. at 1352 (quoting United States' Br. 23).  Indeed, the court noted the Department's authority to grant an extension request under 19 C.F.R. § 351.302(b) is predicated on a determination that an "extension request provides good cause for extending the deadline." Id.; see also Tau-Ken, 587 F. Supp. 3d at 1351 (similarly explaining that under 19 C.F.R. § 351.302(b), "{u}pon receipt of a timely filed request for an extension, Commerce may, for good cause shown, extend a time limit, except where precluded by statute") (citing 19 C.F.R. § 351.302(b) and Final Rule, 78 Fed. Reg. at 57,791); Bebitz Flanges, 433 F. Supp. 3d at 1303-04 (same).

The courts have also reasoned that a party's failure to request an extension of time to submit information previously requested by the Department justifies the agency in later declining to accept untimely information.  See Dongtai Peak, 777 F.3d at 1352; Tri Union Frozen Prods., Inc. v. United States, 163 F. Supp. 3d 1255, 1296 (Ct. Int'l Trade 2016); Ferrostaal Metals Gmbh v. United States, 518 F. Supp. 3d 1357, 1371 (Ct. Int'l Trade 2021).  As explained by the court in Tri Union, "{i}t is hard to think of a reason why Commerce should be expected to *sua sponte*

NONCONFIDENTIAL

grant an extension of its deadlines" when the party "itself did not ask for one." Tri Union, 163 F. Supp. 3d at 1293; see also Ferrostaal Metals, 518 F. Supp. 3d at 1371 (quoting same and stating "{t}his court too cannot think of a reason that Commerce should be expected, given the context, to extend its deadline when {the party} did not ask for an extension").

Accordingly, the Department's rejection of untimely CV profit information in prior cases has been upheld by the courts. See Mid Continent Nail Corp. v. United States, 999 F. Supp. 2d 1307, 1327-28 (Ct. Int'l Trade 2014) (affirming the Department's rejection of new factual information purporting to show that a previously submitted financial statement for CV profit was publicly available); Mid Continent Steel & Wire, Inc. v. United States, 941 F.3d 530, 540-52 (Fed. Cir. 2019) (affirming the Department's rejection of untimely new factual information attempting to provide further translation of a source of CV profit information).

### 2.    The Department's Acceptance of Triune's Untimely Filed CV Profit Information Is Unlawful

The Department's request for CV profit information specifically instructed interested parties to "provide the source of each of the financial statements included in {their} submission and confirm that the source is publicly available." CV Profit Letter at 2 (emphasis added) (P.R. 140). Contrary to these explicit instructions, on the date of the deadline for CV profit information, Triune submitted a version of TMTE's 2022-2023 financial statement that was not publicly available and that Triune obtained directly from TMTE's owner. See Triune CV Profit Comments at 2, Exs. CV-8(c), CV-8(e) (P.R. 177-91). Within the deadline for rebuttal CV profit information established by the Department, Edsal commented on the weaknesses of TMTE's financial statement for the purpose of CV profit calculations, including the fact that Triune did not establish its public availability. Edsal Rebuttal CV Profit Comments at 4-8 (P.R. 218). Then, 13 days after the Department's deadline for rebuttal information and 21 days after the

**NONCONFIDENTIAL**

deadline for CV profit information, Triune attempted to supplement its initial CV profit comments and counter Edsal's rebuttal comments by submitting new factual information and claiming that TMTE's 2022-2023 financial statement had become publicly available.  See Triune TMTE Factual Info. at 1, Ex. 1 (P.R. 225).  The Department should not have permitted Triune to do so.

First, as discussed in section I.A.1, the Department's regulations set forth the procedures an interested party must follow in seeking an extension of a deadline for submitting factual information.  If a request is made before the deadline, the Department may grant an extension for "good cause."  19 C.F.R. § 351.302(b)-(c).  If an interested party fails to request an extension of a deadline before the applicable time limit expires, the party must show that an "extraordinary circumstance exist{ed}" that "{p}recludes a party or its representative from timely filing an extension request through all reasonable means."  Id. § 351.302(c)(1)-(2).  Only if a party establishes such "extraordinary circumstances exist{ed}" will the Department consider whether good cause exists to grant an extension retroactively.  Extension of Time Limits, 78 Fed. Reg. 57,790, 57,791 (Dep't Commerce Sept. 20, 2013).  The Department's determination in this case is unlawful because it failed to apply these procedures.  Indeed, Triune never requested an extension of the deadline (either before or after) and the Department's determination to retroactively extend the deadline for "good cause" is contrary to the agency's regulations.  See CV Profit Info Acceptance at 2 (P.R. 233).  The Department stated that "good cause" existed to grant an extension of the CV profit information deadline because Triune had indicated that TMTE's fiscal year 2022-2023 financial statement "placed on the record was not available on the due date for CV profit information," but this explanation does not constitute an "extraordinary circumstance" under 19 C.F.R. § 351.302(c)(2).

NONCONFIDENTIAL

**Second**, in <u>Steel Nails from Oman</u>, the Department rejected petitioner Mid Continent Steel & Wire, Inc.'s ("Mid Continent") attempt to submit additional CV-profit-related information after the deadline for such information but before the preliminary determination deadline. <u>Certain Steel Nails From the Sultanate of Oman: Final Determination of Sales at Less Than Fair Value</u>, 80 Fed. Reg. 28,972 (Dep't Commerce May 20, 2015), and accompanying <u>Issues and Decision Memorandum for the Final Determination of Sales at Less Than Fair Value</u> at cmt. 1 (May 13, 2015) (hereinafter, "<u>Steel Nails from Oman IDM</u>") (ACCESS barcodes 3276442-01 to 3276442-03). The Department "agreed with Oman Fasteners" that the Department should "reject factual information regarding CV profit and selling expenses submitted by the Petitioner after the deadline" established for such information. <u>Id.</u> The Department explained that while Mid Continent submitted the new factual information that it claimed was filed pursuant to 19 C.F.R. § 351.102(b)(21)(v) and 19 C.F.R. § 351.301(c)(5), the Department reasoned that the information actually falls under the definition of 19 C.F.R. § 351.102(b)(21)(i) because it was information requested by the Department in its initial request for CV profit information. According to the Department in that case,

> under the Department's regulations, all parties were permitted to file new factual information up to 30 days prior to the preliminary determination (in this case, November 17, 2014) <u>provided that they explained why that information did not meet the definition of the information provided in response to the Department's specific request for CV profit information.</u>

<u>Id.</u> (emphasis added).

Here, Triune characterized its untimely filed CV profit information as falling under 19 C.F.R. § 351.102(b)(21)(v) and 19 C.F.R. § 351.301(c)(5) – just like Mid Continent did – and Edsal objected on the grounds that Triune's new factual information was untimely. Edsal Request to Strike at 1-3 (P.R. 228); Triune TMTE Factual Info. at 2 (P.R. 225). Indeed, Triune

NONCONFIDENTIAL

admitted that its October 23, 2023 CV profit information was "provided in support of the public availability of TMTE's 2022-23 financial statement." Triune Opposition to Request to Strike at 2-3 (P.R. 230). In other words, the information responded to the Department's earlier instruction that "to be considered timely and included in the preliminary determination," parties must submit such information by the established deadline and "confirm that the source is publicly available" for "each of the financial statements." CV Profit Letter at 2 (P.R. 140). Thus, the Department should have treated Triune's submission similar to Mid Continent's submission in Steel Nails from Oman. The Department's refusal to do so is an unreasonable deviation from the Department's precedent, and because the Department provided no justification for departing from its practice or treating these two similar situations differently, the agency's determination is not in accordance with law. See CV Profit Info Acceptance at 1-2 (P.R. 233).

Third, the plain language of the Department's regulations requires "good cause" for an extension of a deadline to submit information. See 19 C.F.R. § 351.302(b); Dongtai Peak, 777 F.3d at 1352. Triune never requested an extension of time to submit the publicly available version of TMTE's 2022-2023 financial statement. Triune also failed to demonstrate why good cause supported accepting the new factual information it submitted on October 23, 2023. Thus, similar to the court's reasoning in Tri Union and consistent with the cases discussed above, "{i}t is hard to think of a reason why Commerce should be expected to sua sponte grant an extension of its deadlines" when Triune did not ask for one. Tri Union, 163 F. Supp. 3d at 1293; see Ferrostaal Metals, 518 F. Supp. 3d at 1371; Dongtai Peak, 777 F.3d at 1352.

Fourth, the Department failed to articulate a reasonable showing of "good cause" for retroactively extending the deadline for CV profit information. See CV Profit Info Acceptance at 2 (P.R. 233); 19 C.F.R. § 351.302(b). The Department inexplicably determined that good

NONCONFIDENTIAL

cause existed because Triune admitted that TMTE's 2022-2023 financial statement "was not available on the due date for CV profit information." CV Profit Info Acceptance at 2 (P.R. 233) (citing Triune Opposition to Request to Strike (P.R. 230)). Not only is this an insufficient demonstration of "good cause," as required under 19 C.F.R. § 351.302(b), but the Department's acceptance of Triune's new factual information nullified the purpose of establishing deadlines for affirmative and rebuttal CV profit information, and undermined, in a highly prejudicial manner, Edsal's ability to demonstrate the weaknesses of TMTE's 2022-2023 financial statement. In particular, in accordance with the Department's deadlines for CV profit information and rebuttal comments, Edsal identified deficiencies in Triune's CV profit submission. Edsal Rebuttal CV Profit Comments at 3-8 (P.R. 218). Only then did Triune attempt to cure a deficiency in TMTE's financial statement (its non-public nature) after the deadlines had passed. Triune TMTE Factual Info. at 1, Ex. 1 (P.R. 225). Had Edsal not been forthcoming and raised the deficiency in its rebuttal comments, Triune may have never attempted to cure its CV profit submission. In addition, because court-approved precedent established that untimely CV profit information would be rejected, Edsal had every reason to highlight the deficiencies in Triune's CV profit information in its rebuttal comments for the Department's benefit. The Department, however, inexplicably and without notice contravened its precedent and undermined its deadlines, undercutting Edsal's rebuttal comments.

Fifth, the Department contradicted its own explicit instruction for the submission of factual information for CV profit calculations. In its September 6, 2023 letter providing parties the opportunity to submit CV profit information and rebuttal comments, the Department explicitly stated "you must provide the source of each of the financial statements included in your submission and confirm that the source is publicly available." CV Profit Letter at 2

NONCONFIDENTIAL

(emphasis added) (P.R. 140). In accordance with the Department's deadlines for affirmative and rebuttal CV profit information, Edsal demonstrated that Triune failed to follow this instruction because Triune conceded it was only able to obtain TMTE's financial statement from TMTE's owner. See Edsal Rebuttal CV Profit Comments at 4-8 (P.R. 218). By allowing Triune to attempt to cure its failure to establish the public availability of the financial statement, the Department both (1) disregarded its requirement that parties confirm the public availability of a submitted financial statement in their initial CV profit submission, and (2) unreasonably allowed Triune an additional opportunity to submit new factual information to supplement its initial CV profit submission. Thus, the Department's acceptance of Triune's untimely filed new factual information is unlawful.

> **B.    The Department's Finding that TMTE's Financial Statement Is Publicly Available Is Unlawful**

The Department's Final Determination is unsupported by substantial evidence and not in accordance with law because the Department used TMTE's privately obtained 2022-2023 financial statement to value Triune's CV profit and selling expenses. The Department's practice is to use publicly available financial statements to calculate CV profit and selling expenses under 19 U.S.C. § 1677b(e)(2)(B)(iii). IDM at 5 (P.R. 287) ("It is Commerce's practice to use publicly available financial statements to value CV profit and selling expenses.") (citing Glycine from India: Final Results of Antidumping Duty Administrative Review; 2021–2022, 88 Fed. Reg. 77,552 (Dep't Commerce Nov. 13, 2023), and accompanying Issues and Decision Memorandum for Final Results of Antidumping Duty Administrative Review; 2021-2022 at cmt. 4 (Nov. 6, 2023) (ACCESS barcode 4458703-02)); Certain Steel Nails from the United Arab Emirates: Final Determination of Sales at Less Than Fair Value, 77 Fed. Reg. 17,029 (Dep't Commerce Mar. 23, 2012), and accompanying Issues and Decision Memorandum for the Less Than Fair

NONCONFIDENTIAL

<u>Value Investigation of Certain Steel Nails from the United Arab Emirates</u> at cmt. 6 (Mar. 19, 2012) (ACCESS barcode 3064220-01) ("We have not used Conares's 2010 financial statements for CV profit because it is our practice to use non-proprietary, publicly available financial statements when presented with third-party financial statements.").

In <u>Best Mattresses International Co. v. United States</u>, the court held that in calculating CV profit under 19 U.S.C. § 1677b(e)(2)(B)(iii), the Department "did not adequately explain its finding that the {surrogate company Emirates Sleep Systems Private Limited's ('Emirates')} statements were publicly available." 622 F. Supp. 3d 1347, 1389-95 (Ct. Int'l Trade 2023) (hereinafter, "<u>Best Mattresses I</u>"). In the underlying less-than-fair-value investigation, Emirates' financial statements were not available on the Government of India's MCA website at the time of their submission. <u>Mattresses From Cambodia: Final Affirmative Determination of Sales at Less Than Fair Value and Final Negative Determination of Critical Circumstances</u>, 86 Fed. Reg. 15,894 (Dep't Commerce Mar. 25, 2021), and accompanying <u>Issues and Decision Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value Investigation of Mattresses from Cambodia</u> at cmt. 2 (Mar. 18, 2021) (ACCESS barcode 4101216-01). The court noted that although the submitting party "<u>represented to Commerce</u> that the financial statements are publicly available," the Department's conclusion that the financial statements were actually obtained from a public source was not grounded "in any part of the factual record before the court." <u>Best Mattresses I</u>, 622 F. Supp. 3d at 1394-95 (emphasis added). Moreover, the court reasoned that if the submitter had obtained Emirates' financial statement directly from Emirates, then that would "possibly render the financial statements <u>not 'publicly available.</u>'" <u>See</u> <u>id.</u> (emphasis added).

NONCONFIDENTIAL

Only after the Department reopened the record on remand and the petitioners submitted copious, detailed evidence demonstrating precisely how Emirates' financial statements were publicly available did the court sustain the Department's redetermination on this issue. See Best Mattresses Int'l Co. v. United States, 703 F. Supp. 3d 1382, 1391-95 (Ct. Int'l Trade 2024) (hereinafter, "Best Mattresses II"). The information provided during the remand proceeding demonstrated three critical facts. First, petitioners submitted the Emirates financial statement as obtained from a fee-based subscription website, which in turn, sourced the data from official registers and published government data, permitting the Department to confirm that the now demonstrably publicly available financial statements "were, indeed, the financial statements" relied upon for the Department's CV profit calculation. Id. at 1393-94. Second, the additional record evidence demonstrated that petitioners had not retrieved Emirates' financial statement from Emirates itself. Final Results of Redetermination Pursuant to Court Remand; Best Mattresses Int'l Co. v. United States, Ct. No. 21-00281 (Dep't Commerce July 17, 2023) at 10 (ECF No. 105) (ACCESS barcode 4403561-01) (hereinafter, "Mattresses from Cambodia Remand Results"). Third, the additional record information permitted the Department to conclude that the Emirates financial statement submitted on remand was the same statement submitted by petitioners on the date of the deadline of CV profit information during the investigation. Best Mattresses II, 703 F. Supp. 3d at 1393-94; Mattresses from Cambodia Remand Results at 14-15. Thus, the court reasoned that the additional record evidence provided during the remand proceeding "support{ed} Commerce's determination that the Emirates statements were publicly available on August 17, 2020," the deadline for CV profit information in the underlying investigation and the date on which petitioners submitted the statement to the record. Best Mattresses II, 703 F. Supp. 3d at 1394-95 (emphasis added).

**NONCONFIDENTIAL**

Here, just as the court concluded in Best Mattresses I, the Department's Final Determination did not adequately explain and support its finding that TMTE's financial statement was publicly available. See IDM at 5-6 (P.R. 287). First, the Department accepted Triune's claim that the copy of the 2022-2023 TMTE financial statement it obtained from TMTE's owner and submitted to the Department is publicly available based on evidence that TMTE later "filed {its financial statement} with the Registrar of Companies Chennai." Id. at 5 (P.R. 287) (citing Triune TMTE Factual Info. at Ex. 1 (P.R. 225)). The fact that TMTE filed a copy of its financial statement with the Indian government, however, does not demonstrate that the financial statement Triune submitted, which was not obtained from the MCA registry, is publicly available. The Department therefore failed to ground its factual finding that the TMTE financial statement on the agency's record is publicly available "in any part of the factual record before the court." See id. (P.R. 287); Best Mattresses I, 622 F. Supp. 3d at 1394-95. Second, the Department failed to address the fact the TMTE financial statement on the record was obtained directly from TMTE's owner, which may be reason enough to "possibly render the financial statements not 'publicly available.'" Best Mattresses I, 622 F. Supp. 3d at 1394-95.

The weaknesses of the Department's conclusion that TMTE's financial statement is publicly available is further demonstrated by the absence of key findings developed in the Mattresses from Cambodia Remand Results. Here, unlike the record as developed on remand in that proceeding, this record lacks any financial statement as obtained from a public source. See Mattresses from Cambodia Remand Results at 14-15. Second, while in that proceeding, the submitter explained and demonstrated that it did not obtain Emirates' financial statements from Emirates itself, Triune is unable to offer the same assurance here, and thus, this fact should "render the financial statements not 'publicly available.'" Id. at 9-10; Best Mattresses I, 622 F.

Supp. 3d at 1394-95.  Third, unlike the remand record in <u>Mattresses from Cambodia</u>, which permitted the Department to conclude that the Emirates financial statement submitted during the remand proceeding was the same as the financial statement submitted on the deadline for CV profit information, the record here lacks evidence definitively establishing a publicly available version of TMTE's 2022-2023 financial statement on the date of the deadline for CV profit information, October 2, 2023.  <u>Mattresses from Cambodia Remand Results</u> at 14-15; <u>Best Mattresses II</u>, 703 F. Supp. 3d at 1393-94; <u>PDM</u> at 12 (P.R. 239) (referring to the submissions of financial statements filed by the October 2, 2023 deadline).  Thus, a remand is necessary for the Department to reconsider its finding that the TMTE financial statement is publicly available.

Similarly, in <u>Since Hardware (Guangzhou) Co. v. United States</u>, the court remanded the Department's final determination on the issue of public availability of financial statements.  Order at 4-5, <u>Since Hardware (Guangzhou) Co., Ltd.</u>, Consol. Ct. No. 11-00106 (ECF No. 81), 2012 WL 11802604 at *2-3 (Ct. Int'l Trade Aug. 14, 2012) (hereinafter, "<u>Since Hardware I</u>").  The court reasoned that "a fair amount of record information" demonstrated that surrogate company Infiniti Modules' financial statements "may not have been publicly available."  <u>Id.</u>  Specifically, interested parties were unable to obtain the financial statements through the public domain.  <u>See id.</u>  Further, record evidence established that the financial statements were not available through the Government of India's MCA website.  <u>See id.</u>  Given these facts, the court faulted the agency's "apparently one-sided handling of the issue of the public availability of the Infinite Modules financial statements":

> {H}ow could one reasonably conclude that the Infiniti Modules 2006–2007 financial statement is publicly available? It does not appear to be. Commerce may need to review the purposes behind its regulatory preference for publicly available information. One would assume that publicly available information is preferred

> because all parties, including Commerce, may readily access it for
> review, analysis, and if appropriate, use. If two interested parties
> had such difficulty accessing the information, is it really publicly
> available?

Id. at *3.

On remand the Department "acknowledged that it erred . . . when it concluded that the

Infiniti Modules' financial statements were available through the MCA website; they {were}

not." Since Hardware (Guangzhou) Co. v. United States, 911 F. Supp. 2d 1362, 1366-69 (Ct.

Int'l Trade 2013) (hereinafter, "Since Hardware II"). Instead, the Department noted the

statements were publicly available because they were on the public records of other proceedings.

Id. at 1367. The court, however, remanded the issue of public availability for a second time

because the financial statements – which the petitioner retrieved directly from the company –

continued to be insufficiently shown to be publicly available:

> Commerce here was satisfied that Infiniti Modules' statements
> were publicly available because Petitioner was able to get them
> directly from the company simply by requesting them, even though
> respondents were apparently unsuccessful with similar requests.
> Under the standards Commerce enunciated in the *Steel Grating
> Remand Results*, respondents' inability to obtain the data from the
> same source and in the same manner does seem to establish that
> Infiniti Modules' statements are now publicly unavailable. In the
> *Remand Results* Commerce casts a skeptical eye on respondents'
> efforts to obtain the data from Infiniti Modules, noting that
> respondents never specifically requested the '06–'07 data. The
> court was somewhat surprised by this interpretation of the record.
> Although it may be technically correct, the court was under the
> impression that the record made clear that respondents had made a
> good faith effort to obtain general financial information from
> Infiniti Modules (including more contemporaneous financial
> statements), but were completely rebuffed, which then instigated
> their arguments about public availability.
>
> The court will remand the issue of public availability for
> Commerce to reconcile its approach here with the *Steel Grating
> Remand Results*. . . . Commerce's determination that Infiniti
> Modules financial statements are publicly available remains

**NONCONFIDENTIAL**

> unreasonable (unsupported by substantial evidence), and therefore
> cannot be sustained.

Id. at 1369 (emphases added) (quotations and citations omitted).  Like the Department's instructions in a questionnaire issued during the remand proceeding leading to the Mattresses from Cambodia Remand Results, in the Steel Grating Remand Results the Department had instructed the submitters of financial statements to provide a rigorous step-by-step explanation of the means by which they acquired surrogate financial data from a public source.  See Mattresses from Cambodia Remand Results at 9-12; Final Results of Redetermination Pursuant to Court Remand; Yangtai Xinke Steel Structure Co. v. United States, Ct. No. 10-00240 (Dep't Commerce Jan. 18, 2013) (ECF No. 83) at 19-23 (concluding the financial statement at issue was not publicly available and noting the submitters of the financial statement failed to "provide a step-by-step explanation" of how the financial statement was obtained), available at https://access.trade.gov/Resources/remands/12-95.pdf, aff'd, 38 C.I.T. 478, 493-97 (2014).  The Since Hardware court sustained the Department's second remand results on this issue because the Infiniti Modules financial statements relied upon were shown to be used in numerous prior proceedings and their provenance had never been called into question.   Since Hardware (Guangzhou) Co. v. United States, 977 F. Supp. 2d 1347, 1351-53 (Ct. Int'l Trade 2014) (hereinafter, "Since Hardware III"); see also id. at 1352 (noting the Department's explanation that "the primary purpose for obtaining publicly available information for financial statements is to ensure that all interested parties have access to such information, and are able to comment on the reliability and relevance of such information in the particular case. . .") (internal quotation marks omitted).

While Triune submitted belated information claiming that the TMTE financial statement was publicly available, the Department engaged in a similar "one-sided handling on the issue of

NONCONFIDENTIAL

the public availability" faulted by the court in <u>Since Hardware I</u>.  <u>See</u> <u>Since Hardware I</u>, 2012

WL 11802604 at *2-3.  For example, the Department failed to address Edsal's inability to obtain

TMTE's financial statement in the public domain, and merely stated that the financial statement

has "been publicly available since October 2023."  <u>See</u> Edsal Rebuttal CV Profit Info at 4 (P.R.

218); <u>IDM</u> at 6 (P.R. 287).  Further, the Department's acceptance of the belated factual

information from Triune attempting to show that TMTE's financial statement was publicly

available was manifestly one-sided for the reasons explained above in Section I.A.  Triune,

therefore, unfairly benefitted from the Department's <u>Final Determination</u> in this respect, contrary

to the requirement that interested parties, and not the Department, "bear the burden of developing

the administrative record."  <u>Since Hardware III</u>, 977 F. Supp. 2d at 1354 (citing <u>QVD Food Co.</u>

<u>v. United States</u>, 658 F.3d 1318, 1325 (Fed. Cir. 2011)).

Moreover, because Triune never submitted the purportedly publicly available version of

TMTE's 2022-2023 financial statement, the Department unreasonably relied on an unverified,

unreliable version of the financial statement that was privately obtained.  Importantly, the court

in <u>Best Mattresses II</u> and <u>Since Hardware III</u> only sustained the Department's conclusions on the

public availability of financial statements after the record data were definitively shown to be the

public financial statements they purported to be.  <u>Best Mattresses II</u>, 703 F. Supp. 3d at 1393-95;

<u>Since Hardware III</u>, 977 F. Supp. 2d at 1351-53.  While Infiniti Modules' financial statements

were accepted as publicly available because (1) they were relied on and submitted on the records

of numerous other proceedings and (2) their provenance had never been called into question,

here, TMTE's financial statement has <u>not</u> been shown to be used in <u>any</u> other proceedings and

the provenance of TMTE's financial statement <u>is</u> at issue.  <u>See</u> <u>Since Hardware III</u>, 977 F. Supp.

2d at 1353; Petitioner's Case Brief at 3-10 (P.R. 279); Edsal Pre-Prelim Comments at 11-15

NONCONFIDENTIAL

(P.R. 229); Edsal Rebuttal CV Profit Info at 4-8 (P.R. 218).   Indeed, the Department has compelling reasons to decline to rely on privately obtained surrogate data because such information presents "information and collection concerns," the Department "does not know the conditions under which the information is obtained," and the Department "cannot be certain" that other parties would be able to obtain the same information.   See Petitioner's Case Brief at 3-7 (P.R. 279); Final Determination of Sales at Less Than Fair Value: Prestressed Concrete Steel Rail Tie Wire From the People's Republic of China, 79 Fed. Reg. 25,572 (Dep't Commerce May 5, 2014), and accompanying Issues and Decision Memorandum for the Final Determination of Sales at Less Than Fair Value at cmt. 6 (Apr. 28, 2014) (ACCESS barcode 3198557-01); IDM at 6 (P.R. 287).

In short, the Department's rationale for its conclusion that "TMTE's financial statements are public information and analyzed as such" is unsupported by substantial evidence.   IDM at 6 (P.R. 287).   Contrary to the Department's reasoning, Triune's October 23rd submission purporting to "'support{} the fact that TMTE's 2022-2023 financial statement{},' previously submitted by Triune were publicly available" does not establish that the TMTE financial statement on the record is publicly available.   Id. at 5 (P.R. 287) (quoting Triune TMTE Factual Info. at 1 (P.R. 225)).   Further, the Department's reliance on Triune's October 23rd submission "showing TMTE's financial statement was filed with the Registrar of Companies Chennai, and was, thus, publicly available" failed to acknowledge Triune's failure to establish public availability by the deadline for CV profit information.   Id. (P.R. 287) (citing Triune TMTE Factual Info. at Ex. 1 (P.R. 225)).   Therefore, and for all of the foregoing reasons, Triune "failed to develop an administrative record that would mandate a reasonable mind" to rely on TMTE's financial statement.   Since Hardware III, 977 F. Supp. 2d at 1353-54.

**NONCONFIDENTIAL**

## II.    THE DEPARTMENT'S REJECTION OF MEKINS' FINANCIAL STATEMENT IS UNLAWFUL

In dismissing Mekins' financial statement outright, the Department failed to "take into account whatever in the record fairly detracts" from its final determination.  See Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); SKF USA v. United States, 630 F.3d 1365, 1374 (Fed. Cir. 2011).  In addition, the Department failed to "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made'" by dismissing the likeness of Mekins' profit experience with that of Triune's, ignoring the minimal impact of subsidies on Mekins' overall profit data, and refusing to average Mekins' financial data with that of other surrogate financial data on the record.  See Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, (1983) (quoting Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962)).  For these reasons and as explained further below, the Final Determination is not supported by substantial evidence and is otherwise not in accordance with law.

### A.    The Department's Rejection of Mekins' Financial Statement On the Basis That It Indicates Receipt of Countervailable Subsidies Is Not Supported by Substantial Evidence and Is Otherwise Not In Accordance with Law

#### 1.    Legal Standard

When calculating constructed value profit and selling expenses ratios under 19 U.S.C. § 1677b(e)(2)(B)(iii), the Department's "objective is to find a good proxy (or surrogate) for the profits that the respondent can be fairly expected to build into a fair sales price of the particulate merchandise."  Mid Continent Steel & Wire, Inc. v. United States, 941 F.3d 530, 542 (Fed. Cir. 2019) (hereinafter, "Mid Continent III"); see SeAH Steel Corp. v. United States, 539 F. Supp. 3d 1341, 1358-59 (Ct. Int'l Trade 2021).  Accordingly, the Department "must consider whether the data it uses to calculate constructed value profit results in a fair comparison between normal

NONCONFIDENTIAL

value and export price." <u>Bldg. Sys. de Mexico, S.A. de C.V. v. United States</u>, 567 F. Supp. 3d 1306, 1311-12 (Ct. Int'l Trade 2022) (hereinafter, "<u>Building Systems de Mexico I</u>").

The Department is not required to reject a company's financial statement for the purpose of calculating constructed value under 19 U.S.C. § 1677b(e)(2)(B)(iii) because it indicates receipt of countervailable subsidies.  See <u>Mid Continent III</u>, 941 F.3d at 543-46; <u>CP Kelco US, Inc. v. United States</u>, 949 F.3d 1348, 1358-59 (Fed. Cir. 2020), <u>rev'g in relevant part CP Kelco US, Inc. v. United States</u>, 2018 WL 4469912 at *1-3 (Ct. Int'l Trade Sept. 17, 2018).  Evidence of the receipt of such subsidies is not dispositive in the Department's analysis of the relative suitability of the financial statements on the record.  See, e.g., <u>Mid Continent III</u>, 941 F.3d at 543-46; <u>CP Kelco</u>, F.3d at 1358-59; <u>SeAH Steel</u>, 539 F. Supp. 3d at 1359-62; <u>Juancheng Kangtai Chem. Co. v. United States</u>, Slip Op. 15-93 at 25, 2015 WL 4999476 at *13 (Ct. Int'l Trade Aug. 21, 2015) ("The decision on whether to rely on a particular financial statement (even one tainted, <i>arguendo</i>, by subsidies) is record-dependent.") (citation omitted); <u>Certain Fabricated Structural Steel From Mexico: Final Determination of Sales at Less Than Fair Value</u>, 85 Fed. Reg. 5,390 (Dep't Commerce Jan. 30, 2020), and accompanying <u>Issues and Decision Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value Investigation of Certain Fabricated Structural Steel from Mexico</u> at cmt. 13 (Jan. 23, 2020) (ACCESS barcode 3935345-01) (finding "no evidence" to support the assertion that a company's home market profit data "is distorted by the receipt of a countervailable export subsidy" because such subsidies "relate to export sales, not {home market} sales, which is what the CV profit calculation is based on"), <u>aff'd as modified upon remand</u>, <u>Bldg. Sys. de Mexico, S.A. de C.V. v. United States</u>, 609 F. Supp. 3d 1369 (Ct. Int'l Trade 2022) (hereinafter, "<u>Building Systems de Mexico II</u>").  Indeed, the Department has explained that "the mere fact that a company may receive a government subsidy

NONCONFIDENTIAL

is {an} insufficient basis upon with to reject its financial statements," and that the Department will consider "the totality of the circumstances rather than the sole fact that the surrogate producer was being subsidized." Persulfates from the People's Republic of China: Final Results of Antidumping Duty Administrative Review, 68 Fed. Reg. 68,030 (Dep't Commerce Dec. 5, 2003), and accompanying Issues and Decision Memorandum for the 2001-2002 Antidumping Duty Administrative Review of Persulfates from the People's Republic of China at cmt. 3 (Nov. 28, 2003).

> **2.    The Department's Treatment of Mekins' Financial Statement as Unsuitable Per Se Is Unlawful Because Receipt of Countervailable Subsidies Is Not Dispositive of a Financial Statement's Suitability for CV Profit Calculations**

The Department's refusal to consider Mekins' financial statement is unlawful and contrary to the Department's use of financial statements indicating receipt of countervailable subsidies in Steel Nails from Oman and other proceedings. See IDM at 6-7 (P.R. 287).

In the less-than-fair-value investigation of steel nails from Oman, the Department used the financial statement of Hitech, a Thai producer of steel screws, as a source for CV profit and selling expenses under 19 U.S.C. § 1677b(e)(2)(B)(iii) even though the financial statement indicated Hitech received a countervailable subsidy. See Petitioner's Case Brief at 10 (P.R. 279); Certain Steel Nails From the Sultanate of Oman: Final Determination of Sales at Less Than Fair Value, 80 Fed. Reg. 28,972 (Dep't Commerce May 20, 2015), and accompanying Issues and Decision Memorandum for the Final Determination of Sales at Less Than Fair Value at cmt. 1 (May 13, 2015) (hereinafter, "Steel Nails from Oman IDM") (ACCESS barcodes 3276442-01 to 3276442-03). The U.S. Court of International Trade remanded the Department's final determination in that case for further explanation of its use of Hitech's financial statement and non-use of other financial statements. See Mid Continent Steel & Wire, Inc. v. United States,

NONCONFIDENTIAL

203 F. Supp. 3d 1295, 1314-16 (Ct. Int'l Trade 2017) (hereinafter, "Mid Continent I"). In its remand redetermination, the Department explained that a surrogate company's receipt of countervailable subsidies "does not preclude the use of that company's financial statements for the calculation of CV profit." Final Results of Redetermination Pursuant to Court Order; Mid Continent Steel & Wire, Inc. v. United States, Consol. Ct. No. 15-00214 (Dep't Commerce May 23, 2017) at 29-30 (ECF No. 95) (ACCESS barcode 3575091-01). The Department also explained that "relying on a financial statement for CV profit that may include countervailable subsidies is consistent with how the Department calculates the cost of production to which it applies the profit rate." Id. at 30. The court sustained the Department's remand redetermination on this issue and concluded "Commerce thoroughly and reasonably explained that its use of the Hitech statements here (i) in fact accounts for, and offsets, any countervailing subsidies and (ii) is in accordance with well-established past practice." Mid Continent Steel & Wire, Inc. v. United States, 273 F. Supp. 3d 1348, 1350-53 n.1 (Ct. Int'l Trade 2017) (hereinafter, "Mid Continent II").

The U.S. Court of Appeals for the Federal Circuit ("CAFC") vacated the portion of Mid Continent II sustaining the Department's remand redetermination on the issue of Hitech's receipt of countervailable subsidies. Mid Continent III, 941 F.3d at 543-46. Importantly, the CAFC did not hold that the presence of countervailable subsidies necessarily renders a source unsuitable for the Department's CV profit calculations. The court held that evidence of the receipt of countervailable subsidies is relevant but not dispositive of a financial statement's suitability for CV profit calculations:

> A company that receives government subsidies to produce certain merchandise **may** have "expenses separately recouped by income other than receipts from selling that merchandise." Subsidies **may**

increase recorded profit, for example, **if** they are included on the receipt side of a profit calculation **or if** they take the form of artificially lower input costs. Thus, government subsidies are precisely the kind of factor that **could** distort the accuracy of a surrogate company's information.

As a logical matter, Hitech would be a weaker surrogate for constructed value **if** government subsidies **heavily** distort its profits. It **might** be so much weaker that Commerce would no longer have a sound reason to choose Hitech over another proposed source of profit information, whether from {Oman Fasteners'} home country or elsewhere. The **size of any subsidies would obviously be relevant, as would the comparative deficiencies of the alternative sources**. Choice of a different source is not the only possible response to a determination of the existence, likelihood, or magnitude of subsidies that artificially increase a surrogate's profit. If the statute permits, **Commerce might determine the amount of subsidies and adjust its calculation of constructed value downward to eliminate the effect of the subsidies. Or Commerce might decide that the subsidies are so insignificant that no change needs to be made at all**.

Practical considerations might play a role in the reasonableness of Commerce's choice. . . .

We do not prescribe an ultimate result.

Id. at 544-45 (emphases added) (quotations and citation omitted).

After continuing to find Hitech's financial statements suitable for the Department's CV profit calculation in its second remand redetermination, the U.S. Court of International Trade remanded the Department's determination on this issue for more thorough analysis of the comparative deficiencies in the sources for CV profit and the impact of countervailable subsidies on Hitech's profit data. Mid Continent Steel & Wire, Inc. v. United States, 551 F. Supp. 3d 1360 (Ct. Int'l Trade 2021) (hereinafter, "Mid Continent IV"). Notably, the court explained that pursuant to Mid Continent III, "Commerce may need to engage in a comparative analysis of the deficiencies of multiple financial statements," analysis which cannot be merely conclusory. Id.

NONCONFIDENTIAL

at 1367 (citing Mid Continent III, 941 F.3d at 544). In addition, the court explained that "the quantity of the potential subsidy is an important consideration because 'Hitech would be a weaker surrogate for constructed value if government subsidies heavily distort its profits.'" Id. (quoting Mid Continent III, 941 F.3d at 544).

Ultimately, the U.S. Court of International Trade sustained the Department's third remand redetermination in which the Department analyzed the financial statements on the record and selected Sundram Fasteners Limited's ("Sundram") financial statements instead of Hitech's even though both companies received countervailable subsidies. Mid Continent Steel & Wire, Inc. v. United States, 586 F. Supp. 3d 1349 (Ct. Int'l Trade 2022) (hereinafter, "Mid Continent V"). Notably, respondent Oman Fasteners' argument that "Commerce should have rejected {Sundram's and Hitech's financial statements} in favor of another financial statement on the record" because they both contained evidence of subsidies was unavailing. Id. at 1355; see Final Results of Redetermination Pursuant to Court Remand; Mid Continent Steel & Wire Inc. v. United States, Consol. Ct. No. 15-00214 (Dep't Commerce Apr. 12, 2022) at 16 (ECF No. 150) (ACCESS barcode 4232065-01) (hereinafter, "Steel Nails from Oman Third Remand Results") ("We acknowledged that both Hitech and Sundram received subsidies, however, these subsidies do not negate the fact that each company produces comparable merchandise.").

Here, consistent with the Mid Continent line of cases and similar precedents as explained further below, a remand is necessary to correct the Department's outright dismissal of Mekins' financial statement. See IDM at 6-8 (P.R. 287). First, the Department wrongly treated Mekins' financial statement as per se unsuitable. While the presence of countervailable subsidies in potential sources of CV profit data is relevant to the Department's analysis, it does not necessarily render a source unsuitable. See Mid Continent III, 941 F.3d at 543-46; CP Kelco,

NONCONFIDENTIAL

949 F.3d at 1358-59 (holding the Department reasonably relied on surrogate financial statements despite evidence of countervailable subsidies because alternative financial statements were incomplete); Best Mattresses II, 703 F. Supp. 3d at 1395 (sustaining the Department's use of Emirates' financial statements despite indication of countervailable subsidies).    Indeed, the Department's reasoning that Mekins' financial statement is unsuitable is conclusory and repetitive of its assertion that it is unsuitable simply due to the countervailable subsidies.    See IDM at 7-8 (P.R. 287).

Second, the Department wrongly dismissed Edsal's explanation that the fact that Mekins may have received a countervailable subsidy actually likens its profit experience to Triune's, and therefore Mekins "most closely exhibits a profit experience from the production and sale of identical or comparable merchandise during the {period of investigation}" because Triune also received countervailable subsidies during the period of investigation.    Steel Nails from Oman Third Remand Results at 15; see IDM at 7 (P.R. 287); Petitioner's Case Brief at 11-12 (P.R. 279).    In fact, Triune received no less than [            ] Indian rupees as a "refund of interest paid on short term working capital loans," documented in Exhibits S3-10.a and S3-10.b of Triune's supplemental Section D questionnaire response.    Petitioner's Case Brief at 11 (C.R. 208; P.R. 279) (citing Response from Grunfeld, Desiderio, Lebowitz, Silverman, Klestadt LLP to Sec'y of Commerce Pertaining to Triune Sec. D Supp. Cover Ltr. and Narrative and Exhibits at S3-12, Exs. S3-10.a and S3-10.b (hereinafter, "Triune Supp DQR") (C.R. 144, 165; P.R. 213-16)). Triune revealed that this interest included "Interest on Subvention" pertaining to "**PCFC** availed value."    Triune Supp DQR at Ex. S3-10.b (emphasis added) (P.R. 213-16).    Because this interest income most likely pertains to the Pre-shipment Credit in Foreign Currency program (i.e., "PCFC"), which the Department has previously found to be a countervailable subsidy, the

NONCONFIDENTIAL

Department should have found that use of Mekins' profit data to calculate CV profit would result in a fair comparison with Triune's profit experience during the period of investigation.  See Petitioner's Case Brief at 11-12 (C.R. 208; P.R. 279); Glycine From India: Final Results of Countervailing Duty Administrative Review; 2020, 87 Fed. Reg. 76,611 (Dep't Commerce Dec. 15, 2022), and accompanying Issues and Decision Memorandum for the Final Results of the Countervailing Duty Administrative Review of Glycine from India; 2020 at cmts. 4, 10 (Dec. 9, 2022) (ACCESS barcode 4319512-02) (identifying "pre-shipment credit in foreign currency – PCFC" and "Pre-Shipment and Post-Shipment Finance Programs" as countervailable). Moreover, Triune also reported that "its production facility is located in a Special Economic Zone ('SEZ')," and the Department consistently countervails Indian SEZ programs in countervailing duty proceedings.  See Petitioner's Case Brief at 12 & n.34 (P.R. 279); Response from Grunfeld, Desiderio, Lebowitz, Silverman, Klestadt LLP to Sec'y of Commerce Pertaining to Triune Sec. D Supp. Cover Ltr. and Narrative at S3-12 (P.R. 213).  Thus, the Department's assertion that whether Triune received countervailable subsidies "would not affect our selection of the financial statements used to derive CV profit or selling expenses" is directly contrary to its obligation to "consider whether the data it uses to calculate constructed value profit results in a fair comparison." IDM at 7 (P.R. 287); Building Systems de Mexico I, 567 F. Supp. 3d at 1311-12; see Mid Continent V, 586 F. Supp. 3d at 1357 (noting the Department prefers data most closely reflecting the experience of the mandatory respondent).

Third, because, as the CAFC explained, the "size of any subsidies would obviously be relevant," and because the Department may "adjust its calculation of constructed value downward to eliminate the effect of the subsidies" or "decide that the subsidies are so insignificant that no change needs to be made at all," the Department wrongly ignored the fact

NONCONFIDENTIAL

that the impact of the subsidies on Mekins' profit data is quantifiable and miniscule.  See Mid Continent III, 941 F.3d at 544-45; IDM at 7-8 (P.R. 287).  As in Building Systems de Mexico I, where the court sustained the Department's decision to disregard a Mexican subsidy program in its CV profit calculation because it found no evidence to support the claim that the surrogate company's profitability was "distorted by the receipt of a countervailable export subsidy," Mekins' profit data revealed a similar limited impact.  567 F. Supp. 3d at 1314; see also SeAH Steel Corp. v. United States, 539 F. Supp. 3d 1341, 1358-62 (Ct. Int'l Trade 2021) (sustaining the Department's decision that a surrogate company's financial statement was suitable for its CV profit calculation under 19 U.S.C. § 1677b(e)(2)(B)(iii) because, among other reasons, the government-provided grant did not distort the surrogate company's data).  Indeed, the benefits of the subsidy programs constituted only 0.50 percent of Mekins' total revenue from operations and just 2.4 percent of the company's total profits.  IDM at 7-8 (P.R. 287) (citing Petitioner's Case Brief at 12, 14 (P.R. 279)).

Thus, because any impact of these subsidies on Mekins was modest and did not heavily distort its profits, the Department should have considered the small amount of the subsidies at issue and concluded that the amounts do not significantly distort Mekins' profit data.  See Mid Continent III, 941 F.3d at 544-45; PT Zinus Glob. Indon. v. United States, 628 F. Supp. 3d 1252, 1271 (Ct. Int'l Trade 2023) (stating that in "selecting a constructed value surrogate, Commerce {is} tasked with comparing the options presented and their 'comparative deficiencies'" and noting "'the size of any subsidies would obviously be relevant, as would the comparative deficiencies of the alternative sources'" (quoting Mid Continent III, 941 F.3d at 544)).

Thus, the Department's refusal to consider Mekins' financial statement, its disregard of the comparability of Mekins' financial experience with that of Triune's, and its failure to address

NONCONFIDENTIAL

the limited, non-distortive impact of the subsidies on Mekins' profit data renders the Department's final determination unsupported by substantial evidence and not in accordance with law.

**B.    The Department's Deviation from its Practice of Relying on Multiple Financial Statements Is Unlawful**

The Department's preference and practice is to rely on multiple financial statements to calculate surrogate profit and selling expenses ratios.  See Carbon and Alloy Steel Threaded Rod From India: Final Affirmative Determination of Sales at Less Than Fair Value, 85 Fed. Reg. 8,818 (Dep't Commerce Feb. 18, 2020), and accompanying Decision Memorandum for the Final Determination in the Less-Than-Fair-Value Investigation of Carbon and Alloy Steel Threaded Rod from India at cmt. 1 (Feb. 7, 2020) (ACCESS barcode 3941514-02) (hereinafter, "Threaded Rod from India IDM");  Mattresses From Indonesia: Final Results of Antidumping duty Administrative Review; 2020–2021, 88 Fed. Reg. 85,240 (Dep't of Commerce Dec. 7, 2023), and accompanying Issues and Decision Memorandum for the Final Results of the 2020-2022 Antidumping Duty Administrative Review: Mattresses from Indonesia at cmt. 1 (Dec. 1, 2023) (hereinafter, "Mattresses from Indonesia IDM") (ACCESS barcode 4473081-02); Petitioner's Case Brief at 14-16 (P.R. 279).  The Department has recently explained its practice of averaging data from multiple companies' financial statements when calculating CV profit and selling expenses:

> We also disagree with Ecos/Grantec's contention that Commerce's decision to apply the average of the calculated CV profit and selling expense ratios for both Kurlon Enterprise and Masterfoam to Ecos/Grantec does not comply with prior practice. First, we note that Ecos/Grantec did not cite to a source for Commerce's practice in its case brief in support of its contention. In contrast, for example, in *Carbon and Alloy Steel Threaded Rod from India*, Commerce relied on five selected financial statements and used a simple average of the CV profit and selling expenses from the five

NONCONFIDENTIAL

> surrogate financial statements. Accordingly, <u>Commerce continues to follow its practice as it did in the *Preliminary Results* and accordingly continues to calculate a simple average of Masterfoam's and Kurlon Enterprise's profit ratios.</u>

<u>Mattresses from Indonesia IDM</u> at cmt. 1 (emphasis added) (citing <u>Threaded Rod from India IDM</u> at cmt. 1). By relying on more than just one company's profit and selling expenses data, the Department "end{s} up with a more representative result," and thus, a more accurate antidumping margin. <u>Threaded Rod from India IDM</u> at cmt. 1; <u>see</u> <u>Steel Wire Garment Hangers From the People's Republic of China: Antidumping Duty Administrative Review, 2010–2011</u>, 77 Fed. Reg. 66,952 (Dep't Commerce Nov. 8, 2012), and accompanying <u>Issues and Decision Memorandum for the Final Results of the Third Antidumping Duty Administrative Review</u> at cmt. 1D (May 7, 2013) (ACCESS barcode 3134549-01) ("Using multiple financial statements in this review is consistent with the Department's preference of using multiple financial statements to determine surrogate financial ratios."); <u>NTSF Seafoods Jt. Stock Co. v. United States</u>, 487 F. Supp. 3d 1310, 1318-19 (Ct. Int'l Trade 2020) ("Commerce explained that it prefers to use multiple financial statements in order to normalize any potential distortions that may arise from using the statements of a single producer.").

Here, the Department unjustifiably deviated from its practice by declining to average the profit data of Mekins and TMTE. <u>See</u> <u>IDM</u> at 8 (P.R. 287). The Department claimed that doing so "would distort the CV profit and selling expenses calculation because Mekins' statements include countervailable subsidies and are not suitable for determining CV profit for Triune," however, as explained above, that finding is unsupported by substantial evidence is not in accordance with law. <u>See</u> <u>id.</u> (P.R. 287); Petitioner's Case Brief at 14-15 (P.R. 279). Relying on an average of multiple sources of CV profit data would result in a fairer comparison between normal value and Triune's prices. <u>See</u> <u>Building Systems de Mexico I</u>, 567 F. Supp. 3d at 1311-

NONCONFIDENTIAL

12 ("Commerce must consider whether the data it uses to calculate constructed value profit results in a fair comparison between normal value and export price.").  Further, the court has previously sustained the Department's use of multiple companies' financial statements to calculate financial ratios, including when those sources indicated receipt of countervailable subsidies.  See Best Mattresses Int'l Co. v. United States, 703 F. Supp. 3d 1382, 1395-96 (Ct. Int'l Trade 2024) ("Commerce's decision to average the Emirates and GTI statements to account for flaws in both datasets is . . . supported by substantial evidence and otherwise in accordance with law.").

In addition, the Department's long-standing preference supports using more than just one financial statement so that the CV profit calculation would reflect a broader market average and thus be more representative of the Indian economy as a whole.  See Certain Activated Carbon From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; and Final Determination of No Shipments; 2021–2022, 88 Fed. Reg. 77,552 (Dep't Commerce Nov. 13, 2023), and accompanying Issues and Decision Memorandum for the Final Results of the 2021-2022 Administrative Review of the Antidumping Duty Order on Certain Activated Carbon from the People's Republic of China at cmt. 4 (Nov. 3, 2023) (ACCESS barcode 4458039-02) ("{I}t is Commerce's long-standing standing preference to use multiple companies' financial statements whenever practicable, because 'using the greatest number of financial statements possible will yield the most representative data from the relevant manufacturing sector to calculate accurate surrogate financial ratios.'") (quoting Amended Final Results of Antidumping Duty Administrative Review and New Shipper Reviews: Wooden Bedroom Furniture from the People's Republic of China, 72 Fed. Reg. 46,957 (Dep't Commerce Aug. 22, 2007), and accompanying Issues and Decision Memorandum for the 2004–2005

NONCONFIDENTIAL

<u>Administrative Review of Wooden Bedroom Furniture from the People's Republic of China</u> at cmt. 17 (Aug. 8, 2007)). Thus, and because Mekins' financial data is not heavily distortive and TMTE's financial statement is imperfect by not being reliable or publicly available, the Department's failure to use an average of the two company's profit data is not supported by substantial evidence and otherwise not in accordance with law.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully urges this Court to determine that the Department's <u>Final Determination</u> is not supported by substantial evidence and is otherwise not in accordance with law and remand the <u>Final Determination</u> to the Department with instructions to correct the errors set forth above.

Respectfully submitted,

/s/ Joshua R. Morey

KATHLEEN W. CANNON
JOSHUA R. MOREY
MATTHEW T. MARTIN
KELLEY DRYE & WARREN LLP
3050 K Street NW, Suite 400
Washington, DC 20007
(202) 342-8867
kcannon@kelleydrye.com
jmorey@kelleydrye.com
mmartin@kelleydrye.com

Counsel to Plaintiff Edsal Manufacturing Co., Ltd.

Dated: October 15, 2024

**CERTIFICATE OF COMPLIANCE WITH CHAMBERS PROCEDURES**

Pursuant to Court of International Trade Standard Chambers Procedures and this Court's August 14, 2024 Order (ECF No. 19) setting the word limitation of Plaintiff's Rule 56.2 Brief to 14,000 words, counsel for Plaintiff, Edsal Manufacturing, Inc., certifies that the attached Rule 56.2 Brief contains 11,795 words, including footnotes.  This word count certification is made in reliance on the word-count feature contained in Microsoft 365 - Enterprise.


Respectfully submitted,

/s/ Joshua R. Morey
JOSHUA R. MOREY

October 15, 2024