**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

_____

|  |  |  |
|---|---|---|
| EDSAL MANUFACTURING CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 24-0087 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TRIUNE TECHNOFAB PRIVATE LIMITED, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

_____ )

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT UPON THE AGENCY RECORD**

Of Counsel:

K. GARRETT KAYS
Attorney
U.S. Department of Commerce
Office of the Chief Counsel for Trade
  Enforcement and Compliance
1401 Constitution Avenue, NW
Washington, DC 20005

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

FRANKLIN E. WHITE, JR.
Assistant Director

AN HOANG
Trial Attorney
Commercial Litigation Branch
United States Department of Justice
P.O. Box 480 | Ben Franklin Station
Washington, DC 20044
(202) 616-3226 | An.Hoang@usdoj.gov

December 13, 2024

*Attorneys for the Respondent*

**TABLE OF CONTENTS**

**PAGE**

TABLE OF CONTENTS .................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... iii

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT UPON
THE AGENCY RECORD ............................................................................................... 1

STATEMENT PURSUANT TO RULE 56.2 ................................................................... 2

      I.     Administrative Determination Under Review ....................................... 2

      II.    Issues Presented For Review ................................................................. 2

STATEMENT OF FACTS ............................................................................................... 2

      I.     Initial Submissions Of Surrogate Financial Statement ........................ 3

      II.    Rebuttal Submissions ............................................................................ 4

      III.   Additional Submissions ........................................................................ 5

      IV.   Preliminary And Final Determinations ................................................. 7

SUMMARY OF ARGUMENT ....................................................................................... 11

ARGUMENT .................................................................................................................. 12

      I.     Standard Of Review ............................................................................. 12

      II.    Commerce's Lawfully And Reasonably Exercised Its Discretion To Extend Its
           Deadlines .............................................................................................. 13

           A.     Legal Standard ..................................................................... 13

           B.     Commerce Lawfully Exercised Its Discretion To Find That "GOOD
                  CAUSE" Warranted Extension Of Its Deadline ...................... 14

      III.   Edsal Cannot Show Commerce Unlawfully Relied On The TMTE Financial
           Statement To Calculate CV Profit ....................................................... 19

           A.     Commerce Reasonably Found That TMTE's Financial Statement Was
                  Publicly Available, And The Best Data Source On The Record ............. 20

i

      B.     Commerce's Rejection Of Mekins' Financial Statement Is Consistent With Commerce's Practice And The Law ................................................ 27

CONCLUSION.................................................................................................................... 35

# TABLES OF AUTHORITIES

**CASES**                                                                                   **PAGE(S)**

*ABB, Inc. v. United States,*
   273 F. Supp. 3d 1200 (Ct. Int'l Trade 2017)..................................................................... 19

*Am. Farm Lines v. Black Ball Freight Serv.,*
   397 U.S. 532 (1970) .................................................................................. 13, 14, 16

*Am. Silicon Techs. v. United States,*
   261 F.3d 1371 (Fed. Cir. 2001)................................................................................. 33

*Atl. Sugar, Ltd. v. United States,*
   744 F.2d 1556 (Fed. Cir. 1984)................................................................................. 12

*Bebitz Flanges Works Private Ltd. v. United States,*
   433 F. Supp. 3d 1309 (Ct. Int'l Trade 2020)....................................................................... 15

*Best Mattresses Int'l Co. Ltd. v. United States,*
   622 F. Supp. 3d 1347 (Ct. Int'l Trade 2023).............................................................. 20, 21, 22

*Best Mattresses Int'l Co. v. United States,*
   703 F. Supp. 3d 1382 (Ct. Int'l Trade 2024).................................................................. passim

*Bldg. Sys. de Mexico, S.A. de C.V. v. United States,*
   567 F. Supp. 3d 1306 (Ct. Int'l Trade 2022)....................................................................... 32

*Calgon Carbon Corp. v. United States,*
   443 F. Supp. 3d 1334 .......................................................................................... 16

*Cambria Co. LLC v. United States,*
   705 F. Supp. 3d 1369 (Ct. Int'l Trade 2024)....................................................................... 13

*Cleo Inc. v. United States,*
   501 F.3d 1291 (Fed. Cir. 2007)................................................................................. 13

*Consol. Edison Co. of N.Y. v. NLRB,*
   305 U.S. 197 (1938) ........................................................................................... 12

*Consolo v. Fed. Mar. Comm'n,*
   383 U.S. 607 (1966) ....................................................................................... 12, 18

*CP Kelco U.S., Inc. v. United States,*
   949 F.3d 1348 (Fed. Cir. 2020)................................................................................. 29

*Dongtai Peak Honey Indus. Co. v. United States*,
    777 F.3d 1343 (Fed. Cir. 2015) ........................................................... 15, 16, 17

*Downhole Pipe & Equip., L.P. v. United States*,
    776 F.3d 1369 (Fed. Cir. 2015) ................................................................... 19

*Fujitsu Gen. Ltd. v. United States*,
    88 F.3d 1034 (Fed. Cir. 1996) ............................................................... 12, 34

*Geum Poong Corp. v. United States*,
    193 F. Supp. 2d 1363 (Ct. Int'l Trade 2002) ............................................. 15

*Goodluck India Ltd. v. United States*,
    393 F. Supp. 3d 1352 (Ct. Int'l Trade 2019) ............................................. 15

*Inmax SDN v. United States*,
    277 F. Supp. 3d 1367 (Ct. Int'l Trade 2017) ............................................. 17

*INS v. Elias-Zacarias*,
    502 U.S. 478 (1992) ...................................................................................... 12

*Jiaxing Brother Fastener Co. v. United States*,
    822 F.3d 1289 (Fed. Cir. 2014) ............................................................. 16, 25

*Mid Continent Steel & Wire, Inc. v. United States*,,
    941 F.3d 530 (Fed. Cir. 2019) .......................................................... 28, 31, 32

*Mid Continent Steel & Wire, Inc. v. United States*,
    586 F. Supp. 3d 1349 (Ct. Int'l Trade 2022) ...................................... 28, 29, 32

*Mitsubishi Polyester Film, Inc. v. United States*,
    228 F. Supp. 3d 1359 (Ct. Int'l Trade 2017) ............................................. 14

*Neo Solar Power Corp. v. United States*,
    190 F. Supp. 3d 1255 (Ct. Int'l Trade 2016) ............................................. 14

*Nippon Steel Corp. v. United States*,
    458 F.3d 1345 (Fed. Cir. 2006) ................................................................... 12

*Pam, S.p.A. v. United States*,
    463 F.3d 1345 (Fed. Cir. 2006) ............................................................. 13, 16

*Papierfabrik August Koehler SE v. United States*,
    843 F.3d 1373 (Fed. Cir. 2016) ................................................................... 15

*Posco v. United States,*
    557 F. Supp. 3d 1290 (Ct. Int'l Trade 2022) ........................................................ 25

*PSC VSMPO-Avisma Corp. v. United States,*
    688 F.3d 751 (Fed. Cir. 2012) ............................................................................... 17

*PT Zinus Glob. Indon. v. United States,*
    628 F. Supp. 3d 1252 (Ct. Int'l Trade 2023) ........................................................ 33

*QVD Food Co. v. United States,*
    658 F.3d 1318 (Fed. Cir. 2011) ....................................................................... 24, 27

*Seah Steel Corp. v. United States,*
    539 F. Supp. 3d 1341 (Ct. Int'l Trade 2021) ................................................... 31, 33

*Shandong Rongxin Imp. & Exp. Co. v. United States,*
    203 F. Supp. 3d 1327 (Ct. Int'l Trade Feb. 3, 2017) ............................................ 12

*Since Hardware (Guangzhou) Co., Ltd.,*
    Consol. Ct. No. 11-00106, 2012 Ct. Intl. Trade LEXIS 165 (Ct. Int'l Trade Aug. 14, 2012) .. 23

*Since Hardware (Guangzhou) Co., Ltd.,*
    977 F. Supp. 2d 1354 (Ct. Int'l Trade April 15, 2014) ................................. 24, 25, 26

*Tianjin Tiancheng Pharm. Co. v. United States,*
    366 F. Supp. 2d 1246 (Ct. Int'l Trade 2005) ........................................................ 12

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.,*
    435 U.S. 519 (1978) .............................................................................................. 13

*Yantai Timken Co. v. United States,*
    521 F. Supp. 2d 1356 (Ct. Int'l Trade 2007) ................................................... 13, 15

**STATUTES**

19 U.S.C. § 1516a(b)(1)(B) .................................................................................... 12

19 U.S.C. § 1516a(b)(1)(B)(i) ................................................................................. 12

19 U.S.C. §§ 1673b(b)-(c) ...................................................................................... 15

19 U.S.C. § 1673d(a)(1)-(2) .................................................................................... 15

19 U.S.C. § 1675(b)(4) ........................................................................................... 17

19 U.S.C. § 1677b(a)(1)(B), (C) ............................................................................. 31

19 U.S.C. § 1677b(c)(5) .................................................................................... 31

19 U.S.C. § 1677b(e)(2)(A) ........................................................................... 3, 10

19 U.S.C. § 1677b(e)(2)(B)(i)-(ii) ............................................................... 10, 32

19 U.S.C. § 1677b(e)(2)(B)(iii) ...................................................................... 7, 10

**REGULATIONS**

19 C.F.R. § 351.102(b)(21)(i)-(iv) ..................................................................... 7

19 C.F.R. § 351.102(b)(21)(ii) ........................................................................... 6

19 C.F.R. § 351.102(b)(21)(v) ..................................................................... 6, 7, 9

19 C.F.R. § 351.301(a) ............................................................................. passim

19 C.F.R. § 351.301(c) ..................................................................................... 13

19 C.F.R. § 351.301(c)(5) ......................................................................... 6, 9, 13

19 C.F.R. § 351.302 .......................................................................................... 17

19 C.F.R. § 351.302(b) ............................................................................. passim

19 C.F.R. § 351.302(c) ......................................................................... 14, 16, 17

19 C.F.R. § 351.302(c)(2) ................................................................................. 17

**RULES**

Rule 56.2 ............................................................................................................ 2

**FEDERAL REGISTER NOTICES**

*Certain Activated Carbon from the People's Republic of China*,
   74 Fed. Reg. 57,995 (Dep't of Commerce Nov. 10, 2009) ...................................... 21

*Steel Wire Garment Hangers from the People's Republic of China*,
   77 Fed. Reg. 66,952 (Dep't Commerce Nov. 8, 2012) .......................................... 74

*Extension of Time Limits*,
   78 Fed. Reg. 57,791 (Dep't of Commerce September 20, 2013) .............................. 17

*Prestressed Concrete Steel Rail Tie Wire From the People's Republic of China*,
   79 Fed. Reg. 25,572 (Dep't Commerce May 5, 2014) ............................................ 24

*Certain Polyethylene Terephthalate Resin from the People's Republic of China*,
    81 Fed. Reg. 13,331 (Dep't of Commerce March 14, 2016) ...................................................... 25

*Certain Quartz Surface Products from the People's Republic of China*,
    84 Fed. Reg. 23,767 (Dep't of Commerce May 23, 2019) ........................................................ 30

*Carbon and Alloy Steel Threaded Rod from India*,
    87 Fed. Reg. 55,400 (Dep't of Commerce September 9, 2022) ................................................. 27

*Boltless Steel Shelving Units Prepackaged for Sale from India, Malaysia, Taiwan, Thailand and the Socialist Republic of Vietnam: Initiation of Less-Than-Fair-Value Investigations*,
    88 Fed. Reg. 32,188 (Dep't of Commerce May 19, 2023) ......................................................... 2

*Paper File Folders from India*,
    88 Fed. Reg. 69,134 (Dep't of Commerce October 5, 2023) ..................................................... 27

*Glycine from India*,
    88 Fed. Reg. 77,552 (Dep't of Commerce November 13, 2023) .................................. 10, 20, 21

*Boltless Steel Shelving Units Prepackaged for Sale from India*,
    88 Fed. Reg. 83,395 (Dep't of Commerce Nov. 29, 2023) ........................................................ 7

*Boltless Steel Shelving Units Prepackaged for Sale from India*,
    89 Fed. Reg. 28,746 (Dep't of Commerce Apr. 19, 2024) ........................................................ 2

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

_____

|  |  |  |
|---|---|---|
| EDSAL MANUFACTURING CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 24-0087 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TRIUNE TECHNOFAB PRIVATE LIMITED, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

_____ )

## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## MOTION FOR JUDGMENT UPON THE AGENCY RECORD

Defendant, the United States, respectfully submits this response to the motion for judgment upon the agency record filed by plaintiff, Edsal Manufacturing Co., Ltd. (Edsal). Edsal challenges the Department of Commerce's (Commerce) negative final determination in the less-than-fair-value investigation of boltless steel shelving units prepackaged for sale (boltless steel shelving) from India. Because Commerce's final determination is supported by substantial evidence and is otherwise in accordance with law, we respectfully request that the Court deny Edsal's motion and sustain Commerce's final determination.

## STATEMENT PURSUANT TO RULE 56.2

### I.      Administrative Determination Under Review

The administrative determination under review is Commerce's final negative

determination in the less-than-fair-value investigation of boltless steel shelving units from India.

*Boltless Steel Shelving Units Prepackaged for Sale from India*, 89 Fed. Reg. 28,746 (Dep't of

Commerce Apr. 19, 2024) (Final Determination) (P.R. 289), and the accompanying Issues and

Decision Memorandum (IDM) (P.R. 287).  The period of investigation (POI) is April 1, 2022,

through March 31, 2023.  *Id.*

### II.     Issues Presented for Review

1.      Whether Commerce reasonably used its discretion to extend the deadline for

submission of constructed value (CV) profit information.

2.      Whether substantial evidence supports Commerce's determination that a

company's financial statements were "publicly available."

3.      Whether substantial evidence supports Commerce's finding that financial

statements demonstrating receipt of countervailable subsidies were unsuitable for calculating CV

profit and selling expenses.

## STATEMENT OF FACTS

In May 2023, Commerce initiated an investigation into whether imports of boltless steel

shelving from various countries, including India, are being, or are likely to be, sold in the United

States at less than fair value.  *Boltless Steel Shelving Units Prepackaged for Sale from India,*

*Malaysia, Taiwan, Thailand and the Socialist Republic of Vietnam: Initiation of Less-Than-Fair-*

*Value Investigations*, 88 Fed. Reg. 32,188 (Dep't of Commerce May 19, 2023) (P.R. 29).

Following Commerce's determination that other respondents did not produce or ship subject

merchandise, Triune Technofab Private Limited (Triune) became the sole mandatory respondent subject to individual examination in this investigation. *See* Respondent Selection Memorandum (May 30, 2023) (C.R. 24, P.R. 39); *see also* Decision Memorandum for the Preliminary Negative Determination in the Less-Than-Fair-Value Investigation of Boltless Steel Shelving Units Prepackaged for Sale from India at 3-4 (Nov. 21, 2023) (P.R. 239).

## I.    **Initial Submissions of Surrogate Financial Statements**

In September 2023, Commerce found that Triune did not have viable home or third-country markets for sales of boltless steel shelving to calculate CV profit and selling expenses using the preferred method.[1] *See* Request for CV Profit and Selling Expense Comments and Information (September 6, 2023) (P.R. 140). For an alternative method to determine CV profit and selling expenses, Commerce allowed interested parties to submit new factual information, including surrogate financial statements of other companies. *Id.* If parties submitted surrogate financial statements, they were required to "provide the source of each of the financial statements . . . and confirm that the source is publicly available." *Id.* The deadline to submit new factual information was October 2, 2023 for initial submissions, and October 10, 2023 for rebuttal submissions.[2] *See* Commerce's Second CV Profit and Selling Expense Comments and Information Second Partial Extension (September 19, 2023) (P.R. 156).

Triune submitted the financial statements of seven companies into the record, including the 2022-23 financial statement from TMTE Metal Tech Private Limited (TMTE). *See* Triune's

---

[1] Commerce's preferred method is to calculate a constructed value profit and selling expenses based on the respondent's own home market or third country sales made in the ordinary course of trade. *See* 19 U.S.C. § 1677b(e)(2)(A).

[2] The original deadlines to submit initial submissions and rebuttal submissions were September 13, 2023, and September 20, 2023, respectively. *See* Request for CV Profit and Selling Expense Comments and Information (P.R. 140).

Submission of Factual Information for CV Profit and ISE (October 2, 2023) (P.R. 177); Triune

Submission of TMTE Financial Statement (October 2, 2023) (P.R. 191).  In its submission,

Triune confirmed that "these seven financial statements are publicly available" and that "{a}ll of

the{ } companies . . . are required to electronically file their financial statements with the

Ministry of Corporate Affairs (MCA)" of the Government of India.  *Id.* at 2 (P.R. 177).

However, because "the due date for filing of the fiscal year 2022-23 financial statements with the

MCA {was} November 30, 2023," 2022-23 financial statements filed with the MCA were

unavailable for the seven companies.  *Id.*  Instead, Triune provided 2021-22 financial statements

for six companies.  *Id.*  Triune also provided TMTE's 2022-23 financial statement, which "was

issued by the owner of the company as a public document" and provided a letter from TMTE

"agree{ing} to place on record {the} financial statement as {a} Public Document" and "to

provide these financial statements to anyone as {a} public document."  *Id.*; *see also* Triune

Submission of TMTE Financial Statement at 28 (P.R. 191).

Edsal submitted the financial statements of two companies, including the 2022-23

financial statement from Mekins Industries Private Limited (Mekins).  Mekins' financial

statements "were obtained from the website of the {MCA}."  Petitioner's Submission Regarding

Constructed Value Profit and Selling Expenses at 3-4 (October 2, 2023) (P.R. 175).  The other

financial statements "were obtained from the company's own website."  *Id.* at 4.

## II.    Rebuttal Submissions

Edsal submitted rebuttal comments on Triune's CV profit and selling expense

submission.  *See* Edsal's Rebuttal Comments Pertaining to Triune's Submission of Factual

Information for CV Profit and Selling Expenses (Edsal Rebuttal CV Profit Comments) (October

10, 2023) (P.R. 218).  Edsal noted that Triune obtained TMTE's financial statements from

TMTE itself, "and not from a publicly available source." *Id.* at 4.  Moreover, Edsal stated that it was "unable to locate {TMTE's} financial statements in the public domain." *Id.*  On this basis, Edsal asserted that TMTE's financial statements were not publicly available, and that Commerce "should disregard them for purposes of deriving CV profit and selling expenses." *Id.*  Edsal contended that Commerce should instead rely on Mekins' financial statement as "the sole publicly available published Indian annual report . . . contemporaneous with the POI." *Id.* at 8 (emphasis in original).

Triune submitted rebuttal comments on Edsal's CV profit and selling expense submission.  *See* Triune's Submission of Rebuttal Factual Information for CV Profit and ISE (October 10, 2023) (P.R. 217).  Triune argued that Mekins' goods, which "are mostly used in retail or households," are not comparable to the subject merchandise, which "is used in industrial applications." *Id.* at 2.  Triune also provided evidence to demonstrate that Mekins focuses on exports to the U.S. market, and that its profit and indirect selling expenses (ISE) are therefore "distorted." *Id.* at 2-3.

### III.    Additional Submissions

On October 23, 2023, Triune submitted comments on the record to demonstrate how Commerce should calculate CV profit and ISE in its preliminary determination.  *See* Triune's Pre-Preliminary Comments re: CV Profit / ISE Ratios (Triune Pre-Prelim Comments) (October 23, 2023) (P.R. 226).  Specifically, Triune argued that the seven surrogate financial statements that it submitted should be averaged "to yield average ratios that are representative of a broad market average." *Id.* at 11; *see also id.* at 20-21.  Triune also contended that Mekins' financial statement was unreliable because the company had received countervailable subsidies under the Duty Drawback (DDB) and Merchandise Export Incentive Scheme (MEIS) programs.  *Id.* at 25-

27.  Thus, Triune argued Mekins' financial statement should be rejected, consistent with Commerce's practice of rejecting financial statements of a company receiving countervailable subsidies.  *Id*.

Triune also submitted factual information to support how "TMTE's 2022-23 financial statement . . . is publicly available."  *See* Triune's Submission of 30-Day Factual Information re: TMTE Financials' Public Availability (Triune's Pre-Prelim Factual Information) (P.R. 225). Specifically, Triune submitted a printout from the MCA website showing that TMTE's 2022-23 financial statement had been filed and that "any person can . . . obtain a copy of TMTE's 2022-23 financial statement upon payment of prescribed fees."  *Id*. at 1; *see also* Triune Pre-Prelim Comments at 19.  Because Triune submitted the information pursuant to 19 C.F.R. § 351.301(c)(5) and 19 C.F.R. § 351.102(b)(21)(v), Triune did not request an extension of the October 10, 2023 deadline for submission of factual information.

Subsequently, Edsal submitted a letter requesting that Commerce reject and remove from the record Triune's Pre-Prelim Factual Information.  *See* Petitioner's Request to Reject Triune's Untimely Submission of New Factual Information (October 27, 2023) (P.R. 228).  Edsal argued that Triune improperly classified its submission of factual information under 19 C.F.R. § 351.102(b)(21)(v) and 19 C.F.R. § 351.301(c)(5) because the information met the definition of factual information described in § 351.102(b)(21)(ii), and it was provided to rebut, clarify, or correct information in Edsal's rebuttal CV profit and selling expense submission.  *Id.* at 2-3. Because the October 10, 2023 deadline to submit such information had passed, Edsal argued that Triune's October 23, 2023 submission of factual information was untimely and should be rejected.  *Id*. at 3-4.

In response, Triune submitted a letter arguing that it had properly classified its factual information under 19 C.F.R. § 351.102(b)(21)(v) because no other regulatory definition of factual information applied to Triune's submitted information.  *See* Triune's Opposition to Petitioner's Request to Reject Triune's 30-Day New Factual Information (Triune's Opposition to Petitioner's Request to Reject 30 Day NFI) (November 2, 2023) (P.R. 230).  Moreover, Triune stated that TMTE's financial statement had not been filed with the MCA by October 2, 2023 (the deadline for initial submission of CV profit comments) so it could not have satisfied one of the four regulatory definitions of 19 C.F.R. § 351.102(b)(21)(i)-(iv).  *Id.* at 4.

Upon consideration of the parties' letters, Commerce stated in a memorandum that it "disagree{d} with both parties and their characterization of the information . . . in Triune's October 23, 2023 submission."  *See* Acceptance of Submission and Opportunity to Submit Rebuttal Information (NFI Acceptance Memorandum) (November 13, 2023) (P.R. 233).  However, "{g}iven Triune's November 2, 2023 letter indicating that the information placed on the record was not available on the due date for CV profit information," Commerce exercised its discretion under 19 C.F.R. §§ 351.301(a) and 351.302(b) to extend the deadline for CV profit information to October 23, 2023, accept Triune's October 23, 2023 submission on the record, and allow for rebuttal information.  *Id*. at 2.

IV.    <u>**Preliminary and Final Determinations**</u>

In November 2023, Commerce released its preliminary negative determination.  *See Boltless Steel Shelving Units Prepackaged for Sale from India,* 88 Fed. Reg. 83,395 (Dep't of Commerce Nov. 29, 2023) (prelim. negative LTFV determination) (P.R. 246) and accompanying preliminary decision memorandum (PDM) (P.R. 239).  In its preliminary determination, Commerce determined CV profit and selling expenses in accordance with 19 U.S.C.

§ 1677b(e)(2)(B)(iii) because Triune had no viable home or third-country market.  *Id*. at 11.  As such, Commerce considered the parties' surrogate financial statement submissions on CV profit and selling expenses.  *Id*.  However, Commerce found all the surrogate financial statements unsuitable, except TMTE's financial statement.  *Id*. at 12.  Specifically, Commerce found that some financial statements were not contemporaneous with the POI, or reflected production in a country not subject to investigation.  *Id*.  Commerce also found Mekins' financial statement unsuitable because it indicated that the company received countervailable subsidies.  *Id*.  In contrast, Commerce found that the record demonstrated that TMTE is a significant producer of comparable merchandise to boltless steel shelving units and its profit predominantly comes from sales of comparable merchandise in India.  *Id*.  On this basis, Commerce found TMTE's financial statement to be the best source for determining CV profit, direct and indirect selling expense rates, and credit expense rates for Triune.  *See* PDM at 12-13.

In its case brief, Edsal continued to argue that Commerce should rely on Mekins' financial statement and disregard TMTE's financial statement.  *See* Edsal's Case Brief (February 22, 204) (C.R. 208, P.R. 279).  Edsal argued that TMTE's financial statement was not publicly available on the deadline for submission of CV profit information, because it was acquired directly from the owner of the company.  *Id*. at 3-4.  Moreover, Edsal argued that Commerce was precluded from finding whether good cause existed for submission of the MCA-filed financial statement because Triune did not make a request for an extension to submit such information.  *Id*. at 7-9.  Additionally, Edsal argued that Commerce should have relied on Mekins' financial statement because neither statute, nor Commerce's practice, foreclose reliance on a financial statement that includes countervailable subsidies in market economy proceedings.  *Id*. at 10.  Edsal also argued that the subsidies included in Mekins' financial statement only constitute 0.50

percent of the company's total revenue and should not disqualify the financial statement.  *Id.* at 12-13.  Finally, Edsal advocated that if Commerce opted to continue relying on TMTE's financial statement, it should average such CV profit and selling expenses with those reported in Mekins' financial statement.  *Id.*  at 14-15.

For its rebuttal, Triune argued that Commerce properly relied on TMTE's financial statement while finding Mekins' financial statement unsuitable.  *See* Triune's Rebuttal Case Brief (March 4, 2024) (P.R. 282).  Triune asserted that, since the financial statement was placed on the record as a public document, and that TMTE agreed to provide the financial statement to any member of the public, it satisfied Commerce's "public availability" requirement.  *Id.* at 3-4.  Additionally, Triune argued that the factual information, filed on October 23, 2023, was properly defined and submitted under 19 C.F.R. § 351.102(b)(21)(v) and 19 C.F.R. § 351.301(c)(5) because it did not satisfy any other regulatory definition of factual information.  *Id.* at 6-8.  Moreover, Triune argued that Commerce lawfully exercised its discretion to extend the deadline for CV profit information because certain documents in Triune's October 23rd submission were not filed with the MCA as of October 2, 2023.  *Id.* at 8-11.  Regarding Mekins' financial statement, Triune argued that Commerce has an established practice of rejecting a company's financial statement to calculate CV profit and selling expense ratios if there is evidence that the company received countervailable subsidies.  *Id.* at 15-19.  Triune also argued that TMTE's production is more akin to that of Triune's operations than Mekins', that Mekins' sales and profits are substantially based on export sales rather than home market sales, and that the other six Indian financial statements corroborate the financial information of TMTE, as compared to that of Mekins.  *Id.*  at 20-28.

In the final determination, Commerce relied on TMTE's 2022-23 financial statement because it found that TMTE's financial statement provided the best CV profit and selling expense data on the record. *See* IDM at 4. No party contested Commerce's finding that Triune did not have a viable home or third-country market to serve as the basis for Normal Value. Additionally, no party contested Commerce's inability to rely on its preferred method under 19 U.S.C. § 1677b(e)(2)(A), or any other method to calculate CV under 19 U.S.C. § 1677b(e)(2)(B)(i)-(ii). Thus, Commerce calculated CV profit and selling expense ratios under "any other reasonable method" pursuant to 19 U.S.C. § 1677b(e)(2)(B)(iii). *See* IDM at 4. To calculate CV profit, Commerce explained its rationale for continuing to rely on TMTE's financial statement for such purpose and rejecting Edsal's argument that it was not publicly available. *Id.* Specifically, Commerce explained its practice of relying on financial statements that are publicly available for the purposes of calculating CV profit, and how it found TMTE's financial statement to be publicly available at the time of its submission on October 2, 2023. *Id.* (citing *Glycine from India*, 88 Fed. Reg. 77,552 (Dep't of Commerce November 13, 2023) (final admin. Review) and accompanying IDM at Comment 4). Commerce explained that, consistent with its regulations, it exercised its discretion to extend the deadline for CV profit information and accept additional record evidence supporting the public availability of TMTE's financial statement. *See* IDM at 5 (citing 19 C.F.R. §§ 351.301(a) and 351.302(b)). Furthermore, consistent with its practice, Commerce declined to rely on Mekins' financial statement based on the presence of countervailable subsidies. *Id.* at 6-8. Commerce also rejected Edsal's argument that Commerce should average TMTE's and Mekins' financial statements, because introducing Mekins' profit ratios, which include countervailable subsidies, would otherwise introduce distortions into Commerce's CV profit ratio calculation. *Id.* at 8. Thus, Commerce did not make

any changes to its preliminary determination in relying on TMTE's financial statement to calculate CV profit. Ultimately, Commerce calculated an estimated weighted-average dumping margin of 0.00 percent and subsequently determined that boltless steel shelving from India are not being, or are not likely to be, sold in the United States at less-than-fair-value (LTFV). *Final Determination,* 89 Fed. Reg. at 28,746-28,747. This action followed.

## SUMMARY OF ARGUMENT

Commerce properly calculated CV profit using TMTE's – but not Mekins' – financial statements.

First, Commerce reasonably exercised its discretion to extend the deadline to submit CV profit information in a situation where new information, clarifying whether the timely submitted financial statement already on the record is publicly available, did not exist prior to the deadline. By regulation, Commerce has the authority and discretion to set, enforce, and modify its own deadlines. Therefore, finding "good cause," Commerce reasonably exercised its discretion to extend the deadline and accept Triune's submission of factual information regarding CV profit.

Second, based on the submission of TMTE's financial statement on public record of this proceeding, and additional record evidence showing that TMTE's financial statement can be accessed by the public, Commerce's findings regarding the public availability of TMTE's financial statement is supported by substantial evidence.

Third, based on the presence of countervailable subsidies, substantial evidence supports Commerce's decision to reject Mekins' financial statement, consistent with Commerce's practice.

## ARGUMENT

### I.    Standard of Review

This Court sustains any determination, finding, or conclusion found by Commerce unless it is unsupported by substantial evidence on the record, or otherwise unlawful.  *See Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)); *see also Tianjin Tiancheng Pharm. Co. v. United States*, 366 F. Supp. 2d 1246, 1249 (Ct. Int'l Trade 2005) (quoting 19 U.S.C. § 1516a(b)(1)(B)(i)).  "Substantial evidence" connotes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938).  Substantial evidence may be "less than the weight of the evidence," and the possibility of drawing inconsistent conclusions from the record does not render Commerce's findings unsupported by substantial evidence. *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

When Congress entrusts an agency to administer a statute that demands inherently fact intensive inquiries, such as in this case, the agency's conclusions may be set aside only if the record is "so compelling that no reasonable factfinder" could reach the same conclusion.  *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992); *Shandong Rongxin Imp. & Exp. Co. v. United States*, 203 F. Supp. 3d 1327, 1338 (Ct. Int'l Trade Feb. 3, 2017) (noting tremendous deference to Commerce's factual findings).  Thus, a party challenging Commerce's determination under the substantial evidence standard "has chosen a course with a high barrier to reversal,"  *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (citation omitted), and the Court sustains Commerce's factual determinations if they are reasonable and supported by the record as a whole, even if evidence detracts from them.  *See Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984).  An agency decision may not be overturned "simply because

the reviewing court would have reached a different conclusion based on the same record." *Cleo Inc. v. United States*, 501 F.3d 1291, 1296 (Fed. Cir. 2007) (citations omitted).

## II.    Commerce's Lawfully And Reasonably Exercised Its Discretion To Extend Its Deadlines

### A.    Legal Standard

Courts have held that it is a "general principle" that agencies may relax or modify their procedural rules and that a subsequent agency action is only rescindable "upon a showing of substantial prejudice." *Pam, S.p.A. v. United States*, 463 F.3d 1345, 1348 (Fed. Cir. 2006) (citing *Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 539 (1970)).  In particular, this Court has held that "Commerce is 'free to fashion {its} own rules of procedure and to pursue methods of inquiry capable of permitting {it} to discharge {its} multitudinous duties." *Cambria Co. LLC v. United States*, 705 F. Supp. 3d 1369, 1377 (Ct. Int'l Trade 2024) (citing *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978)).  To that end, "Commerce has broad discretion to establish its own rules governing administrative procedures, including the establishment and enforcement of time limits." *Cambria*, 705 F. Supp. 3d at 1377 (citing *Yantai Timken Co. v. United States*, 521 F. Supp. 2d 1356, 1370 (Ct. Int'l Trade 2007)).

Commerce's regulations enumerate various deadlines for specific submissions of factual information.  *See generally* 19 C.F.R. § 351.301(c).  For submissions without a prescribed deadline, Commerce's regulations allow for a final submission of factual information thirty days before the preliminary determination or results, or fourteen days before verification, whichever is earlier.  19 C.F.R. § 351.301(c)(5).  For categories of factual information not enumerated in § 351.301(c), Commerce "may request any person to submit factual information at any time during a proceeding or provide additional opportunities to submit factual information."  19

13

C.F.R. § 351.301(a). Moreover, "unless expressly precluded by statute, {Commerce} may, for good cause, extend any time limit established in {its} regulations." 19 C.F.R. § 351.301(a); *see also* 19 C.F.R. § 351.302(b).

### B. Commerce Lawfully Exercised Its Discretion To Find That "Good Cause" Warranted Extension Of Its Deadlines

Edsal misinterprets Commerce's discretion to extend its deadlines. Edsal argues that Commerce acted contrary to its regulations when accepting certain factual information submitted to the record. Edsal Br. at 11-18. Specifically, Edsal argues that Commerce may not retroactively extend its deadlines without a request from an interested party and without a showing of extraordinary circumstances by an interested party. *Id.* at 14. However, Edsal's arguments amount to simple disagreement with Commerce's reasonable exercise of its regulatory discretion in administering its deadlines for submission of factual information. Because Commerce's exercise of its discretion to extend the deadline for CV profit information was within its authority, these arguments are without merit.

Commerce's regulations allow it to extend a time limit for good cause *on its own* without the request of an interested party. *See Mitsubishi Polyester Film, Inc. v. United States*, 228 F. Supp. 3d 1359, 1381 (Ct. Int'l Trade 2017) ("Commerce may, 'for good cause,' extend any time limit within Part 351 of Title 19, unless expressly precluded by statute. . . . In addition, it is within Commerce's discretion 'to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it.'" (citing 19 C.F.R. 351.302(b) (2012) and *Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 539 (1970))); *see also Neo Solar Power Corp. v. United States*, 190 F. Supp. 3d 1255, 1260 (Ct. Int'l Trade 2016) ("Commerce may extend a time limit for 'good cause' on its own." (citing 19 C.F.R. §§ 351.302(b), (c))). Thus, based on a finding of good cause—that TMTE's financial statement

was not accessible from the MCA on the day of the deadline for CV profit information—
Commerce properly extended the deadline and accepted Triune's submission of factual
information.  *See* NFI Acceptance Memorandum at 2 (P.R. 233) (citing Triune's Opposition to
Petitioner's Request to Reject 30 Day NFI (P.R. 230)).  Edsal cites no law or authority which
forecloses Commerce's exercise of this discretion.

To the contrary, Commerce makes determinations in line within its statutory obligations
and deadlines.  19 U.S.C. §§ 1673b(b)-(c), 1673d(a)(1)-(2).  Indeed, this Court has held that
Commerce has significant discretion in determining the procedures by which it will gather and
analyze information necessary to meet the statutory deadlines imposed for investigations.  *See*
*Bebitz Flanges Works Private Ltd. v. United States*, 433 F. Supp. 3d 1309, 1325 (Ct. Int'l Trade
2020).  Commerce's exercise of its discretion to set and enforce the timelines of its investigations
should be upheld unless that discretion has been abused.  *Dongtai Peak Honey Indus. Co. v.*
*United States*, 777 F.3d 1343, 1351 (Fed. Cir. 2015) (quoting *Yantai Timken Co. v. United*
*States*, 521 F. Supp. 2d 1356, 1371 (Ct. Int'l Trade 2007)).  Contrary to the implication of
Edsal's argument, it is difficult to see how Commerce's acceptance of *additional* record evidence
would constitute an abuse of Commerce's discretion, when that evidence assists Commerce in its
investigation.  *See Geum Poong Corp. v. United States*, 193 F. Supp. 2d 1363, 1370 (Ct. Int'l
Trade 2002) ("Commerce's ultimate goal in calculating CV profit and selling expenses is to
approximate the home market profit experience."); *cf. Goodluck India Ltd. v. United States*, 393
F. Supp. 3d 1352, 1358 (Ct. Int'l Trade 2019) ("Commerce abuses its discretion when it refuses
to accept updated data when there is plenty of time for Commerce to verify or consider it."
(cleaned up) (citing *Papierfabrik August Koehler SE v. United States*, 843 F.3d 1373, 1384 (Fed.
Cir. 2016))).

Edsal cites various cases where the Court has affirmed Commerce's rejection of untimely new factual information. *See* Edsal Br. at 12-13. These cases discuss Commerce's rejection of timely and untimely extension requests from interested parties to file factual information pursuant to 19 C.F.R. § 351.302(b)-(c). However, that is not the situation here. Commerce did not reject an extension request from any interested party to submit new factual information. Rather, Commerce invoked its authority under 19 C.F.R. § 351.302(b) to exercise its own discretion and extend the deadline for CV profit information for "good cause," without the request of an interested party. Moreover, just because Commerce did not find "good cause" to grant prior extension requests, does not foreclose a finding that "good cause" is present to extend a deadline in other investigations, such as here. It is well settled that each investigation is a separate exercise of Commerce's authority and allows for different conclusions based on different facts in the record. *Calgon Carbon Corp. v. United States*, 443 F. Supp. 3d 1334, 1353, n. 30 (Ct. Int'l Trade 2020) (citing *Jiaxing Brother Fastener Co. v. United States*, 822 F.3d 1289, 1299 (Fed. Cir. 2014)). Indeed, the same authority that supports Commerce's discretion to *enforce* its deadlines, also supports Commerce's discretion to *set* its deadlines. *See Dongtai Peak*, 777 F.3d at1352 ("it is not for {the parties} to establish Commerce's deadlines or to dictate to Commerce whether and when Commerce actually needs the requested information." (citation omitted)); *see also Pam, S.p.A.*, 463 F.3d at 1348 (citing *Am. Farm Lines*, 397 U.S. at 538-39) ("{i}t is always within the discretion of a court or an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it."). Thus, Edsal's argument that an interested party must satisfy the requirements of 19 C.F.R. § 351.302(b)-(c) before Commerce may use its own discretion to change its deadlines for submission of factual information is plainly incorrect.

Edsal also argues that "{o}nly if a party establishes such 'extraordinary circumstances exist{ed}' will the Department consider whether good cause exists to grant an extension retroactively." Edsal Br. at 14 (citing *Extension of Time Limits*, 78 Fed. Reg. at 57,791). But contrary to Edsal's argument, 19 C.F.R. § 351.302(c) only applies to extension requests from interested parties. 19 C.F.R. § 351.302(c) ("a *party* may request an extension . . ." (emphasis added). Moreover, "extraordinary circumstance" must be shown only if a party submits an "untimely filed extension request." *Id.* In other words, 19 C.F.R. § 351.302 cannot be interpreted to impose an "extraordinary circumstance" standard when Commerce extends a deadline on its own prerogative. Such an interpretation would undermine Commerce's discretion to manage its own deadlines for submissions of factual information. *Dongtai Peak*, 777 F.3d at 1352 (citing *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 760-61 (Fed. Cir. 2012) ("{I}t is fully within Commerce's discretion to 'set and enforce deadlines'")).

Edsal further argues that Commerce's explanation of "good cause" was "insufficient" and not "reasonable" when it accepted Triune's submission on October 23, 2023. Edsal Br. at 16-17 (citing NFI Acceptance Memorandum at 2 (P.R. 233); 19 C.F.R. § 351.302(b)). Unlike "extraordinary circumstances," Commerce's regulations do not define "good cause." *Compare* 19 C.F.R. § 351.302(b) *with* 19 C.F.R. § 351.302(c)(2). Nonetheless, in other statutory contexts, this Court has explained that "'{g}ood cause' is a term of art . . . that translates simply to a 'legally sufficient reason.'" *Inmax SDN v. United States*, 277 F. Supp. 3d 1367, 1371 (Ct. Int'l Trade 2017) (citing CAUSE, *Black's Law Dictionary* (10th ed. 2014); 19 U.S.C. § 1675(b)(4)). Here, Commerce's explanation satisfied the "good cause" standard because it provided a "legally sufficient reason" why the factual circumstances warranted exercising its discretion to extend the deadline for CV profit information. From the outset, Commerce stated the fact that TMTE's

17

financial statement was not available on the MCA's website at the time of Commerce's initial deadline provided "good cause" to extend the deadline for submission of CV profit information. NFI Acceptance Memorandum at 2 (P.R. 233). Edsal's disagreement does not mean that Commerce's finding of "good cause" is unsupported by substantial evidence or not in accordance with law. *Consolo,* 383 U.S. at 620.

Although Edsal argues that Commerce's extension of its deadline was "highly prejudicial" to Edsal's ability to argue against the reliance on TMTE's 2022-23 financial statement, Edsal Br. at 17, Edsal was provided with the opportunity to rebut all of the factual information that Triune submitted. TMTE's 2022-23 financial statement was not prejudicial because it was timely submitted on the record. *See* Triune Submission of TMTE Financial Statement at Exhibit CV-8(c) (P.R. 191). Edsal had full access to the financial statement and the opportunity to argue against its use. *See* Edsal Rebuttal CV Profit Comments (P.R. 218). Neither was the one-page printout from the MCA website portal confirming the public availability of TMTE's 2022-23 financial statement "highly prejudicial" material. Edsal was also provided with an opportunity to rebut this factual information. *See* NFI Acceptance Memorandum at 2 (P.R. 233) ("Commerce is providing interested parties an opportunity to submit rebuttal information regarding Triune's October 23, 2023 submission by COB November 20, 2023.").

Finally, Edsal argues that Commerce contradicted its own explicit instructions that parties "confirm that the source is publicly available" at the time of submission of its CV profit information and that Commerce unreasonably allowed Triune an opportunity to submit new factual information to "cure its failure to establish the public availability of the financial statement." Edsal Br. at 17-18 (citing Request for CV Profit and Selling Expense Comments and

Information (P.R. 140) at 2; Edsal Rebuttal CV Profit Comments at 4-8 (P.R. 218)).  However, the record evidence shows that Triune followed Commerce's instructions.  At the time of Triune's initial submission of CV profit information, Triune asserted that it submitted the document on the public record, and received the financial statement from TMTE.  *See* Triune Submission of TMTE Financial Statement (P.R. 177).  The additional information from the MCA website portal did not exist at the time when the financial statement was submitted.  Under these circumstances, Commerce properly exercised its authority to extend the deadline for submission and acceptance of additional factual information under 19 C.F.R. § 351.302(b).  Thus, the Court should hold that Commerce lawfully exercised its discretion to extend its deadlines and accept Triune's submission of factual information.

## III.    Edsal Cannot Show Commerce Unlawfully Relied On The TMTE Financial Statement To Calculate CV Profit

Edsal's arguments that Commerce unlawfully relied on the TMTE financial statement, Edsal Br. at 18-39, primarily involve factual disputes and Edsal's improper requests that this Court reweigh evidence.  *ABB, Inc. v. United States,* 273 F. Supp. 3d 1200, 1204 (Ct. Int'l Trade 2017) (citing *Downhole Pipe & Equip., L.P. v. United States*, 776 F.3d 1369, 1377 (Fed. Cir. 2015)) (The court may not "reweigh the evidence or . . . reconsider questions of fact anew.").  First, Edsal argues that Commerce's finding that TMTE's financial statement is publicly available is not supported by substantial evidence.  Edsal Br. at 18-26.  Second, Edsal argues that Commerce's rejection of Mekins' financial statement is not supported by substantial evidence and not in accordance with law.  Edsal Br. at 27-39.  These arguments are meritless and we address each below.

**A.      Commerce Reasonably Found That TMTE's Financial Statement Was Publicly Available, And The Best Data Source On The Record**

Edsal challenges Commerce's determination that TMTE's financial statements were publicly available despite the document being filed on the public record and being accessible through the MCA.  *See* Edsal Br. at 18-26.  It is Commerce's practice to use publicly available financial statements to value CV profit and selling expenses.  *See Glycine from India*, 88 Fed. Reg. 77,552 (Dep't of Commerce Nov. 13, 2023) (final admin. review and accompanying IDM at Comment 4).  When analyzing financial statements in the market economy context, this Court has explained Commerce's "primary purpose for obtaining publicly available information for financial statements is to ensure that all interested parties have access to such information, and are able to comment on the reliability and relevance of such information in the particular case." *Best Mattresses Int'l Co. Ltd. v. United States*, 622 F. Supp. 3d 1347, 1393 (Ct. Int'l Trade 2023) (*Best Mattresses I*).

As explained above, on October 2, 2023, Triune submitted TMTE's financial statement and explained that, since TMTE's financial statement had not yet been electronically filed with the MCA, the submitted financial statement had been provided by the owner of the company as a public document, and was submitted as such.  *See* Triune Submission of TMTE Financial Statement (P.R. 177) (citing Exhibit CV-8(e) (P.R. 191)).  Thirty days before Commerce's preliminary determination, on October 23, 2023, Triune submitted factual information further supporting the public availability of TMTE's financial statement.  *See* Triune Pre-Prelim Comments (P.R. 226).  Specifically, Triune provided a "printout" downloaded from the Indian MCA's website portal, showing that TMTE's 2022-23 financial statement was filed with the government registry and available for any person to obtain from the MCA, upon payment of the prescribed fees.  Triune Pre-Prelim Comments (P.R. 226) at 1, 8-9 (Exhibit 1).  Based on this

evidence, Commerce determined that TMTE's financial statement was publicly available.  *See* IDM at 5-6 (citing NFI Acceptance Memorandum (P.R. 233)).  In prior cases, Commerce has explained that financial statements, accessible by the public from the MCA, are publicly available and therefore acceptable sources for CV profit.  *See, e.g., Glycine from India*, 88 Fed. Reg. 77,552 (Dep't of Commerce November 13, 2023) (final admin. review) and accompanying IDM at 31-32; *Certain Activated Carbon from the People's Republic of China*, 74 Fed. Reg. 57,995 (Dep't of Commerce Nov. 10, 2009) (final admin. review) and accompanying IDM at Comment 2 ("Commerce consistently considers documents, such as those from MCARC (India's Ministry of Corporate Affairs' Registrar of Companies), to be publicly available.").  Thus, Commerce's finding that TMTE's financial statement is publicly available is supported by substantial evidence.

However, Edsal attempts to draw a comparison to *Best Mattresses I*, where Commerce did not adequately explain its findings regarding the public availability of a financial statement.  *See* Edsal Br. at 19-20 (citing *Best Mattresses I*, 622 F. Supp. 3d at 1389-95).  Notably, part of the Court's criticism in *Best Mattresses I*, was the sourcing underlying the "fee-based subscription service."  *Best Mattresses I*, 622 F. Supp. 3d at 1394-95.  But after Commerce reopened the record on remand to add evidence about the accessibility of the financial statement from the MCA and a private provider of commercial information, the Court sustained Commerce's explanation regarding the public availability of the financial statement.  *Best Mattresses Int'l Co. v. United States*, 703 F. Supp. 3d 1382, 1393-95 (Ct. Int'l Trade 2024) (*Best Mattresses II*)).

Contrary to the facts at issue in *Best Mattresses I*, TMTE's financial statement was not initially obtained from a "subscription service," and was accessible to the public on the date of

its submission and Commerce's extended deadline for CV profit information.  *Compare Best Mattresses I*, 622 F. Supp. 3d at 1394-95 *with* IDM at 5 (citing Triune Pre-Prelim Comments at Exhibit 1).  Triune submitted a signed declaration, from a TMTE official, that it provided the financial statement to Triune and agreed to make the document available "to anyone as {a} public document."  *See* Triune Submission of TMTE Financial Statement, Exhibit CV-8(c) at 28 (P.R. 191).  Furthermore, Triune submitted additional factual information that the same financial statement from TMTE was published and accessible to the public from the MCA.  *See* Triune Pre-Prelim Comments, Exhibit 1 (P.R. 226).  Edsal argues that Triune "does not demonstrate that the financial statement Triune submitted, which was not obtained from the MCA registry, is publicly available" or was from a "public source," Edsal Br. at 21, yet this Court has found Commerce's explanation reasonable when it "does not require financial statements to be from a corporate registry, government securities website, public website of the company in order to be considered publicly listed."  *See Best Mattresses I*, 622 F. Supp. 3d at 1394.

Next, Edsal argues that Commerce fails "to address the fact the TMTE financial statement on the record was obtained directly from TMTE's owner, which may be reason enough to 'possibly render the financial statements not 'publicly available.'"  Edsal Br. at 21 (citing *Best Mattresses I*, 622 F. Supp. 3d at 1394-95).  However, aside from its untimeliness objection, Edsal fails to address evidence demonstrating that TMTE's financial statement was filed with a public registry maintained by Indian government, making it available to the general public.  Edsal argues that the record lacks evidence that TMTE's financial statement submitted on October 2, 2023 was publicly available.  Edsal Br. at 22.  But Commerce extended its deadline for CV profit information to October 23, 2023, accepted additional factual information evidencing the public availability of TMTE's statement from the MCA registry, and provided all

22

interested parties with an opportunity to rebut this information.  *See* Triune NFI Acceptance

Memo (P.R. 233).

Edsal, next, points to the *Since Hardware* line of cases for the proposition that record

evidence can undermine Commerce's finding regarding the public availability of a financial

statement.  Edsal Br. at 22-23 (citing *Since Hardware (Guangzhou) Co., Ltd*., Consol. Ct. No.

11-00106, 2012 Ct. Intl. Trade LEXIS 165 (Ct. Int'l Trade Aug. 14, 2012) (*Since Hardware I*)).

However, Edsal's references to the *Since Hardware* cases do not undermine Commerce's

findings regarding the public availability of TMTE's financial statement because the facts in

*Since Hardware I* are inapposite.  In *Since Hardware I,* the parties argued *during the*

*administrative proceeding* that they were not able to access financial statements from the MCA

registrar.  *See Since Hardware I*, 2012 Ct. Intl. Trade LEXIS 165, *5-6.  However, Edsal made

no such argument here.  After Commerce extended the deadline for CV profit information and

accepted Triune's submission of record evidence to indicate that TMTE's financial statement

was filed with MCA, Commerce provided Edsal with an opportunity to rebut Triune's assertion

that TMTE's financial statement was not submitted to the MCA.  *See id.* at 2 (providing Edsal an

opportunity to submit rebuttal information until November 20, 2023).  Edsal argues that

Commerce's treatment of TMTE's financial statement was "one-sided" and that it "failed to

address Edsal's inability to obtain TMTE's financial statement in the public domain," Edsal Br.

at 24-25 (citing Edsal Rebuttal CV Profit Comments at 4 (P.R. 218); *Since Hardware I*, 2012 Ct.

Intl. Trade LEXIS 165 at *7), but Edsal neglects the fact that it was presented with another

opportunity to show that TMTE's financial statement was not obtainable "in the public domain"

or from the MAC's registrar.  *See* Triune NFI Acceptance Memorandum at 2.  Thus, Edsal

merely disagrees with Commerce's analysis of *affirmative evidence* on the record, offered by

Triune, to indicate the public availability of TMTE's financial statement.  Contrary to its argument, it was Edsal itself that failed to satisfy its burden to demonstrate that TMTE's financial statement could not be accessed from the MCA's website.  Edsal Br. at 25 (citing *Since Hardware III*, 977 F. Supp. 2d at 1354 (citing *QVD Food Co. v. United States*, 658 F.3d 1318, 1325 (Fed. Cir. 2011) (Interested parties "bear the burden of developing the administrative record.")).  Thus, Edsal's arguments based on *Since Hardware* do not undermine Commerce's finding that TMTE's financial statement is publicly available.

Undeterred, Edsal argues that this Court, in *Best Mattresses II* and *Since Hardware III*, only sustained Commerce's findings regarding the public availability of certain financial statements after Commerce demonstrated, on remand, that the financial statements were "definitively shown to be the public financial statements they purported to be."  Edsal Br. at 25 (citing *Best Mattresses II*, 703 F. Supp. 3d at 1393-95; *Since Hardware III*, 977 F. Supp. 2d at 1351-53).  Underlying this argument is the unsupported assumption that TMTE's financial statement, submitted to Commerce by Triune on October 2, 2023, is not the same financial statement filed with the MCA registrar, supported by Triune's record evidence submitted on October 23, 2023.  However, this argument imposes Edsal's "sourcing" requirements on Commerce, which is not required by its practice.  If the financial statement filed with the MCA were to be indeed different from the statement that Triune submitted on the record, Edsal had an opportunity to demonstrate so with factual information and comment as part of its rebuttal.  But Edsal did not submit anything and therefore failed to rebut Triune's assertion.  *QVD Food*, 658 F.3d at 1325.

Edsal also attempts to question the provenance of TMTE's financial statements.  Edsal Br. at 26 (citing *Prestressed Concrete Steel Rail Tie Wire From the People's Republic of China*,

79 Fed. Reg. 25,572 (Dep't Commerce May 5, 2014) (final LTFV determination) (*Rail Tire Wire from China*), and accompanying IDM at Comment 6). However, as Commerce suggests, Edsal's reliance on *Rail Tire Wire from China* is inapposite. *See* IDM at 6 ("*Rail Tie Wire from China* involved price quotes, and the suggestion that the interested party had obtained biased price quotes"). Commerce has a practice of generally not relying on price quotes or price lists in non-market economy proceedings, because those quotes represent proposed starting prices in transactions between two parties, and generally do not reflect a "broad market average"—one of Commerce's factors used in selecting surrogate values for factors of production. *See Certain Polyethylene Terephthalate Resin from the People's Republic of China*, 81 Fed. Reg. 13,331 (Dep't of Commerce March 14, 2016) (final LTFV determination), and accompanying IDM at Comment 2. In *Rail Tire Wire from China*, the price quote reflected a transaction between two private parties at a "special rate in order to obtain its business;" thus, that transaction could not have represented a *broad* market average. *See Rail Tire Wire from China* IDM at 25-26. Contrary to Edsal's argument, there is nothing on the record to indicate that TMTE's financial statement was purposefully concocted for the sole purposes of its use in this investigation. *See* IDM at 6. Thus, Edsal's citations to *Rail Tire Wire from China* are inapposite.

Edsal also states that TMTE's financial statement is unreliable because it has not been used in a prior proceeding. Edsal Br. at 25-26 (citing *Since Hardware III*, 977 F. Supp. 2d at 1353). This argument is not persuasive. As a general matter, each administrative segment stands on its own and has its own record, and, thus, Commerce is not limited to only relying on information that was used in a prior proceeding. *Posco v. United States*, 557 F. Supp. 3d 1290, 1301, n.21 (Ct. Int'l Trade 2022) (citing *Jiaxing Bro.*, 822 F.3d at 1299 ("It is well settled that each segment of a proceeding stands on its own record and that record is limited to the relevant

period of investigation or review.")).  Indeed, Edsal points to *no other proceeding*, where

Commerce has relied on its proposed financial statement from Mekins.  As Commerce

explained, it considers four factors when considering potential surrogates for calculating CV

profit and selling expenses.  *See* PDM at 11-12.  Specifically, it considers (1) the similarity

between a potential surrogate company's business operations and products and the respondent's

business operations and products; (2) the extent to which a potential surrogate company has sales

in the United States and the home market; (3) the contemporaneity of the surrogate data to the

period of investigation; and (4) the similarity of the customer base between a potential surrogate

company and the respondent.  *Id.* (citing *Mattresses from Indonesia* PDM at 12-13).  Notably,

Edsal did not contest whether TMTE's financial statement satisfied *any of these factors* before

this Court, nor before the agency.  *See generally* Edsal's Case Brief (P.R. 279), Edsal Br.  Thus,

assuming *arguendo,* that this Court accepts certain arguments regarding the public availability of

TMTE's financial statement, those arguments do not render the financial statement less

preferable, when weighed against these factors and Commerce's concerns about the viability of

the other surrogate financial statements.  *See* PDM at 11-12; IDM at 5-8.

Commerce reasonably determined that TMTE's financial statement was public and

reliable for purposes of calculating Triune's CV profit and selling expenses.  Edsal's argument

that TMTE's financial statement is not publicly available is not supported by the record.

Specifically, TMTE's financial statement was publicly available on the record such that parties

"had access to, and were able to comment upon" TMTE's financial statement, *see Since*

*Hardware III*, 977 F. Supp. 2d at 1352, and record evidence shows that TMTE's financial

statement was submitted to the MCA registrar.  *See* Triune's Pre-Prelim Factual Information

(P.R. 225), Exhibit 1 at 7-9.  By failing to rebut Triune's evidence regarding the public

availability of TMTE's financial statement, or otherwise show how TMTE's financial statement

is unusable under its CV profit factors explained in *Mattresses from Indonesia*, Edsal failed to

demonstrate otherwise.  *See QVD Food*, 658 F.3d at 1325.  As such, Commerce's finding that

TMTE's financial statement constitutes the best source of CV profit and selling expense data on

the record of this proceeding is supported by substantial evidence and otherwise in accordance

with law.  *See* IDM at 4-8.

### B.     Commerce's Rejection Of Mekins' Financial Statement Is Consistent With Commerce's Practice And The Law.

Edsal argues that Commerce's analysis and rejection of Mekins' financial statement

based on the presence of countervailable subsidies is unlawful.  Edsal Br. at 27-39.  However,

consistent with its practice, Commerce found Mekins' financial statement unusable because it

indicated that it had received countervailable subsidies.  *See* PDM at 12, IDM at 5 (citing Edsal's

CV Profit Submission (P.R. 175) at 112); *see also Carbon and Alloy Steel Threaded Rod from

India*, 87 Fed. Reg. 55,400 (Dep't of Commerce September 9, 2022) (final admin. review)

(*Carbon and Alloy Steel Threaded Rod from India*), and accompanying IDM at Comment 4

("We agree with Mangal that the CV profit and selling expense rates should be revised to

exclude financial statements that indicate the receipt of subsidies previously found to be

countervailable where more suitable options are on the record.").  Specifically, Mekins' financial

statements identify receipt of subsides under specific programs (*i.e*., DDB and MEIS), that

Commerce has previously identified as countervailable.  *Id.; see also Paper File Folders from

India*, 88 Fed. Reg. 69,134 (Dep't of Commerce October 5, 2023) (Final CVD affirm. determ.),

and accompanying IDM at section VI (finding DDB and MEIS to be countervailable subsidy

programs).

Edsal relies on the *Mid Continent* line of cases to attempt to undermine Commerce's rejection of Mekins' financial statement. Edsal Br. at 30-36. Edsal's reliance on these cases is unpersuasive because Edsal fails to acknowledge the scope of factual issues at issue in *Mid Continent*. Edsal asserts that "evidence of the receipt of countervailable subsidies is relevant but not dispositive of a financial statement's suitability for CV profit calculations." Edsal Br. at 30 (citing *Mid Continent III*, 941 F.3d at 542). After rejecting the only other nine financial statements on the record for failing to have sufficient information to determine their usability in line with Commerce's practice, the Court affirmed Commerce's explanation that Hitech Fastener Manufacturer (Thailand) Co., Ltd. (Hitech) and Sundram Fasteners Limited (Sundram), were the *only two* companies with sufficient information on the record that would accurately reflect the experience of a nail producer, and that these were the only two for which a detailed comparison of their statements was warranted. *Mid Continent Steel & Wire, Inc. v. United States*, 586 F. Supp. 3d 1349, 1358 (Ct. Int'l Trade 2022) (*Mid Continent V*). After acknowledging that both Hitech and Sundram received countervailable subsidies, Commerce explained that both statements were "equal" in opposition to Commerce's preference to avoid financial statements with countervailable subsidies. *Id.* Thus, after analyzing Hitech's and Sundram's financial statements against the four criteria that Commerce uses to select financial statements, Commerce explained that Sundram's financial statement better satisfied the contemporaneity and comparability of merchandise factors, supporting its reliance over Hitech's financial statement. *Id.* at 1358-59.

The issues present in *Mid Continent V*, are not present here. This is not a situation in which the only financial statements with sufficient information reflect receipt of countervailable subsidies. Edsal does not contest that TMTE's financial statement satisfies each of the four

selection criteria.  Nor does Edsal claim that TMTE's financial statement indicates receipt of any subsidies.  So, in promoting the use of Mekins' financial statement over TMTE's financial statement, Edsal asks Commerce to weigh a financial statement with subsidies on an equal basis to one without subsidies.  This is inconsistent with Commerce's practice.

Moreover, Edsal mischaracterizes Commerce's practice when analyzing financial statements for calculation of CV profit and selling expenses, claiming that "it does not necessarily render a source unsuitable" when the financial statement provides evidence of countervailable subsidies.  Edsal Br. at 32-33.  It is Commerce's practice to exclude financial statements that indicate the receipt of subsidies previously found to be countervailable *where more suitable options are on the record*.  *See* IDM at 6 (citing *Carbon and Alloy Steel Threaded Rod from India* IDM at Comment 4); *see also Glycine from India* IDM at Comment 5.  Indeed, Edsal's referenced caselaw supports this point.  In *Mid Continent V*, Commerce explained that there was no other suitable financial statement on the record, before relying on a financial statement indicating receipt of countervailable subsidies.  *See Mid Continent V*, 586 F. Supp. 3d 1349, 1358 (affirming Commerce's preference of Sundram's financial statement over Hitech's, after Commerce explained that each were equally *less preferable*, due to the presence of countervailable subsidies); *CP Kelco U.S., Inc. v. United States*, 949 F.3d 1348, 1358-1359 (Fed. Cir. 2020) (affirming Commerce's explanation, that in the absence of unflawed financial statements, relying on a financial statement with countervailable subsidies was preferrable over a financial statement missing "vital" information); *Best Mattresses II*, 703 F. Supp. 3d at 1395 (in the absence of unflawed financial statements, Commerce reasonably relied on a financial statement "where the presence of subsidies is uncertain.").  Other than Edsal's concerns regarding the public availability of TMTE's financial statement, discussed and rebutted above,

Edsal cannot point to any other shortcomings of TMTE's financial statement. Edsal also does not dispute that Mekins' financial statement indicate receipt of countervailable subsidies. Thus, Commerce's rejection of Mekins' financial statement is consistent with its practice to rely on financial statements with countervailing subsidies only when there are no other suitable alternatives on the record.

Edsal's next argues that Commerce did not consider its explanation that since Triune also received subsidies during the POI, Mekins' financial statement and profit experience would provide a fair comparison. Edsal Br. at 33-34. Edsal's argument fails to consider Commerce's practice when calculating normal value in this regard. As explained above, if Commerce has a reason to believe or suspect that the company producing comparable merchandise may have received subsidies that Commerce has found to be countervailable, it may consider the financial ratios derived from that company's financial statements to be less representative of the financial experience of the relevant industry than the ratios derived from financial statements that do not contain evidence of subsidization. *Glycine from India* IDM at comment 4 (citing *Carbon and Alloy Steel Threaded Rod from India* IDM, at Comment 4). Consequently, Commerce generally does not rely on financial statements where there is evidence that the company received countervailable subsidies when there are other sufficiently reliable and representative sources of data on the record for purposes of calculating the CV profit or other financial ratios. *Id.* Nonetheless, Edsal fails to acknowledge that Commerce's practice rejects financial statements with evidence of countervailing subsidies, even when the mandatory respondent (*i.e.,* Triune, here), may have received countervailable subsidies. *See Certain Quartz Surface Products from the People's Republic of China*, 84 Fed. Reg. 23,767 (Dep't of Commerce May 23, 2019) (final affirm. LTFV determination and final determination of critical circumstances), and

30

accompanying IDM at 11, 82 (where Commerce continued to rely on financial statements with no evidence of subsidization even though the respondent received countervailable subsidies in concurrent CVD investigation).

Indeed, Commerce cannot ignore the presence of countervailable subsidies in the parties' proposed financial data when calculating normal value or constructed value, in both market and non-market economy proceedings. *Mid Continent III,* 941 F.3d 530, 544 ("although { 19 U.S.C. § 1677b(c)(5)} explicitly provides for the removal of subsidies in nonmarket-economy proceedings, it does not follow from that focused authorization in one context that Commerce is free to ignore subsidies in market-economy proceedings"). Edsal provides no instance where Commerce relies upon a financial statement with evidence of countervailable subsidies instead of a financial statement on the record with no evidence of countervailable subsidies that contains no other issues or flaws. *See Seah Steel Corp. v. United States*, 539 F. Supp. 3d 1341, 1360 (Ct. Int'l Trade 2021) ("The Court notes that the statute instructs Commerce to exclude sales from non-viable markets when determining normal value based on home market sales or third-country sales. *See* 19 U.S.C. § 1677b(a)(1)(B), (C)"). Accordingly, Commerce addressed Edsal's contentions and reasonably "determined that {Mekins' financial statements} are not suitable as a basis for calculating CV profit and selling expenses," consistent with its practice. *See* IDM at 7.

Edsal argues that it was unlawful for Commerce to ignore the "modest" amount of countervailable subsidies, received by Mekins and evidenced in its financial statement. Edsal Br. at 34-35. According to Edsal, because Mekins' subsidies are "quantifiable and miniscule," Commerce could have adjusted its CV profit calculations, or otherwise found the subsidies so insignificant that no changes were necessary. *Id.* (citing *Mid Continent III*, 941 F.3d at 544-45). Edsal's argument boils down to an untenable proposition that Commerce should have rejected a

financial statement of a company that received no countervailable subsides and satisfies all other selection criteria in favor of a financial statement of another company that received purportedly "modest" amount of countervailable subsidies.  Just because Commerce *could have* adjusted a financial statement to negate any subsidies in a financial statement, does not mean that Commerce *should* adjust its financial statement to eliminate the effect of subsidies, especially when Commerce's practice dictates the use of suitable financial statements, *without evidence of countervailable subsidies*.  Indeed, while the Federal Circuit remanded for Commerce to explain its rationale for relying on Hitech's financial statement, even though it included countervailable subsidies, Commerce switched gears and relied on Sundram's financial statement, *not because it could be adjusted to eliminate the effect of subsidies,* but because it found Sundram to preferable in terms of contemporaneity and production of comparable merchandise.  *Mid Continent V*, 586 F. Supp. 3d at 1358-59.  Edsal's reference to *Building Systems I* is inapposite, as well.  In relying on a separate respondent's home market sales (and not the respondent's financial statement, as opposed to the facts here) to calculate CV profit, the plaintiff was unable to point to any evidence that the remission or duty drawback export subsidy distorted the constructed value for the respondent's home market sales data under 19 U.S.C. § 1677b(e)(2)(B)(ii), a different statutory and factual analysis than at issue here, since only Triune is under investigation.  *Bldg. Sys. de Mexico, S.A. de C.V. v. United States*, 567 F. Supp. 3d 1306, 1314 (Ct. Int'l Trade 2022) (*Building Systems I*).

Indeed, if the purpose of calculating CV is to obtain a fair approximation of the sales price and the profits realized by a respondent's home market sales, *Mid Continent III*, 941 F.3d at 542, an analysis of the underlying home market sales themselves is more informative about any subsidy distortion than of a high-level view of a company's financial statement.  *Building*

*Systems I*, 567 F. Supp. 3d at 1314 ("Commerce reasonably finds that there was no evidence to support the conclusion that Corey's home market sales were distorted by the export subsidies it received. Indeed, BSM does not point to any evidence that Corey used materials that it imported duty free in FSS that Corey sold in Mexico."). Edsal's citation to *SeAH Steel* is also not persuasive. Edsal Br. at 35 (citing S*eAH Steel Corp.*, 539 F. Supp. 3d at 1358-62). Although the Court affirmed Commerce's finding that the underlying non-recurring subsidy, received by SeAH, did not distort the company's financial statement for the POR in 2018, Commerce also explained that the grant received in 2013 was not a *countervailable* subsidy. S*eAH Steel*, 539 F. Supp. 3d at 1361. Edsal references *PT Zinus* for the notion that Commerce must weigh the "comparative deficiencies" of each financial statement, but other than the public availability of TMTE's financial statement rebutted above, Edsal points to no other deficiency that might warrant discounting the subsidies evidenced in Mekins' financial statement. Edsal Br. at 35 (citing *PT Zinus Glob. Indon. v. United States*, 628 F. Supp. 3d 1252, 1271 (Ct. Int'l Trade 2023)). Thus, Edsal's argument in favor of financial statements with countervailable subsidies, is not supported by statute, this Court's precedent, or Commerce's practice. Edsal may disagree with Commerce's conclusion regarding the evidence, particularly the degree of distortion with Mekins' financial statement. But even if the distortion in Mekins' statement were "modest," it does not undermine Commerce's selection of a financial statement that contains no distortion from countervailable subsidies. Nor would it mean that Commerce's determination to reject Mekins' financial statement is unsupported by substantial evidence. *See Am. Silicon Techs. v. United States*, 261 F.3d 1371, 1376 (Fed. Cir. 2001) ("Even if it is possible to draw two inconsistent conclusions from evidence in the record, such a possibility does not prevent

Commerce's determination from being supported by substantial evidence.") (citing *Fujitsu*, 88 F.3d at 1044).

As a last attempt to undermine Commerce's rejection of Mekins' financial statement, Edsal argues that Commerce should average Mekins' financial data with TMTE's to calculate CV profit, consistent with its practice. Edsal Br. at 36-39. Edsal cites various cases, explaining Commerce's preference to rely on multiple financial statements. However, none of these cases provide an instance where Commerce included financial data distorted by countervailable subsidies. For example, Edsal references *Steel Wire Garment Hangers from China* to support its argument. Edsal Br. at 37 (citing *Steel Wire Garment Hangers from the People's Republic of China*, 77 Fed. Reg. 66,952 (Dep't Commerce Nov. 8, 2012) (final admin. review) (*Steel Wire Garment Hangers from China*), and accompanying IDM at comment 1D. In *Steel Wire Garment Hangers from China*, however, Commerce only relied on Philippine financial statements that did not include countervailable subsidies. *See Steel Wire Garment Hangers from China* IDM at 14 ("Specifically, each of these statements . . . does not contain any evidence that the company received subsidies under a program that the Department has found to be countervailable."). Edsal also states that this Court has affirmed Commerce's inclusion of financial data which includes *countervailable* subsidies, but Edsal misunderstands this Court's holding. Edsal Br. at 38 (emphasis added). Specifically, in *Best Mattresses II*, the subsidies included in the financial statement had not been previously countervailed. *Best Mattresses Int'l Co. v. United States*, 703 F. Supp. 3d 1382, 1395 (Ct. Int'l Trade 2024) ("{I}t is difficult to see why Commerce would be compelled here to reject the Emirates statements where the presence of subsidies is uncertain."). Edsal therefore fails to demonstrate that Commerce's rejection of Mekins' financial statement is

unlawful or inconsistent with its practice of rejecting surrogate financial statement containing

evidence of countervailable subsidies.

## **CONCLUSION**

For these reasons, we respectfully request that the Court deny Edsal's motion for

judgment upon the administrative record and sustain Commerce's final determination.


Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

Of Counsel:

K. GARRETT KAYS
Attorney
U.S. Department of Commerce
Office of the Chief Counsel for Trade
  Enforcement and Compliance

/s/ An Hoang
AN HOANG
Trial Attorney | Commercial Litigation Branch
United States Department of Justice
P.O. Box 480 | Ben Franklin Station
Washington, DC 20044
Tel: (202) 616-3226
Email: An.Hoang@usdoj.gov

December 13, 2024

*Attorneys for the Respondent*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing brief complies with the Rules of this Court and the Court's scheduling order in that it contains no more than 10,095 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

<u>/s/ An Hoang</u>

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE
_____
                                                                        )
EDSAL MANUFACTURING CO., LTD.,                    )
                                                                        )
                              Plaintiff,                           )
                                                                        )
             v.                                                       )          Court No. 24-0087
                                                                        )
UNITED STATES,                                                )
                                                                        )
                              Defendant,                        )
                                                                        )
             and                                                    )
                                                                        )
TRIUNE TECHNOFAB PRIVATE LIMITED,        )
                                                                        )
                              Defendant-Intervenor.        )
_____ )

## **ORDER**

Upon consideration of plaintiff's motion for judgment upon the agency record, responses

thereto, plaintiff's reply, the administrative record, and other pertinent papers, it is hereby:

ORDERED that plaintiff's motion is DENIED;

ORDERED that the Department of Commerce's determination is sustained;

and it is further

ORDERED that judgment is entered in favor of the United States.

Dated: _____                    _____
           New York, NY                                          CHIEF JUDGE