**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE**

| | | |
|---|---|---|
| ————————————————x | : | |
| EDSAL MANUFACTURING CO., LTD., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Court No. 24-00087 |
| UNITED STATES, | : | |
| | : | |
| Defendant, | : | |
| | : | |
| and | : | |
| | : | |
| TRIUNE TECHNOFAB PRIVATE LIMITED, | : | |
| | : | |
| Defendant- Intervenor. | : | |
| ————————————————x | | |

**DEFENDANT-INTERVENOR'S RESPONSE TO PLAINTIFF'S MOTION FOR
JUDGMENT ON THE AGENCY RECORD PURSUANT TO USCIT RULE 56.2**

Ned H. Marshak*
Dharmendra N. Choudhary
Jordan C. Kahn

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP

1201 New York Ave., NW, Suite 650
Washington, DC 20005
202-783-6881

-and-

*599 Lexington Avenue, FL 36
New York, New York 10022
(212) 557-4000

Dated: January 21, 2025

*Counsel for Defendant-Intervenor Triune
Technofab Private Limited*

## TABLE OF CONTENTS

ARGUMENT ............................................................................................................... 1

I.   COMMERCE LAWFULLY FOUND THAT TMTE'S FINANCIAL
STATEMENT IS PUBLICLY AVAILABLE ............................................................. 1

A.  Triune Timely Submitted Information On October 23, 2023 ,To Support The
Public Availability Of TMTE's 2022-23 Financial Statement ................................. 2

B.  TMTE's Financial Statement Submitted As A Public Document On October 2,
2023, Is "Publicly Available" Under Commerce's "Public Availability" Policy ...... 7

II.  COMMERCE LAWFULLY REJECTED MEKINS' COUNTERVAILABLE
SUBSIDY-DISTORTED FINANCIAL STATEMENT ........................................... 14

III.  COMMERCE PROPERLY REJECTED PETITIONER'S ARGUMENTS TO
AVERAGE TMTE AND MEKINS RATIOS ........................................................ 17

A.  TMTE's Production Experience Is Superior To Mekins' Experience ................... 18

B.  Unlike TMTE, Mekins' Sales And Profit Experiences Are Based Substantially On
Its Export Sales Rather Than Its Home Market Sales ........................................... 21

CONCLUSION ......................................................................................................... 22

i

# TABLE OF AUTHORITIES

**Cases**

*An Giang Fisheries Imp. & Exp. Joint Stock Co. v. United States*, 203 F. Supp. 3d 1256 (CIT 2017) ........................................................................................................13, 14

*Best Mattresses Int'l Co. v. United States*, 622 F. Supp. 3d 1347 (CIT 2023) ...................9, 10, 11

*Catfish Farmers of America v. United States*, 2014 WL 7181411 (CIT Dec. 18, 2014), *aff'd*, 645 F. Appx 1001 (Fed. Cir. 2016) ...................................................................14

*Mid Continent Nail Corp. v. United States*, 999 F. Supp. 2d 1307 (CIT 2014) ............................6

*Mid Continent Steel & Wire Inc. v. United States*, 2025 WL 40344 (Fed. Cir. Jan. 7, 2025).......15

*Shantou Red Garden Foodstuff Co. v. United States*, 815 F. Supp. 2d (CIT 2012) ......................8

*Since Hardware (Guangzhou) Co. v. United States*, 911 F. Supp. 2d 1362 (CIT 2013)..............11

**Regulations**

19 C.F.R. § 351.102 ..........................................................................................................3, 4, 5

19 C.F.R. § 351.301 ..............................................................................................................3, 7

**Administrative Decisions**

*Boltless Steel Shelving Units Prepackaged for Sale from India: Final Negative Determination of Sales at Less Than Fair Value*, 89 Fed. Reg. 28,746 (Apr. 19, 2024)............................................1

*Carbon and Alloy Steel Threaded Rod from India: Final Results of Antidumping Duty Administrative Review, 2019–2021*, 87 Fed. Reg. 55,400 (Sept. 9, 2022) ..................................17

*Certain Color Television Receivers from Malaysia: Notice of Final Determination of Sales at Not Less Than Fair Value*, 69 Fed. Reg. 20,592 (Apr. 16, 2004) ...........................................19, 20

*Certain Mobile Access Equipment and Subassemblies Thereof from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value*, 87 Fed. Reg. 9,576 (Feb. 22, 2022)..................................................................................................................13

*Certain Steel Nails from Sri Lanka: Final Negative Determination of Sales at Less Than Fair Value*, 87 Fed. Reg. 78,933 (Dec. 23, 2022)..............................................................................8, 9

*Certain Steel Nails from the Sultanate of Oman: Final Determination of Sales at Less Than Fair Value*, 80 Fed. Reg. 28,972 (May 20, 2015).......................................................................6, 14, 16

*Certain Steel Nails from the Sultanate of Oman: Final Results of Antidumping Duty Administrative Review; 2019-2020*, 86 Fed. Reg. 67,690 (Nov 29, 2021)...................................15

*Certain Steel Nails from the Sultanate of Oman: Final Results of Antidumping Duty Administrative Review; 2021-2022*, 88 Fed. Reg. 85,878 (Dec. 11, 2023) ..................................16

*Certain Quartz Surface Products from India: Final Results of Antidumping Duty Administrative Review; 2019–2021*, 88 Fed. Reg. 1188 (Jan. 9, 2023) ..............................................16

*Glycine from India: Final Results of Antidumping Duty Administrative Review, 2021-2022*, 88 Fed. Reg. 77,552 (Nov. 13, 2023)............................................................................16

*Polyethylene Retail Carrier Bags from Thailand: Preliminary Results of Antidumping Duty Administrative Review and Rescission of Review in Part; 2013-2014*, 80 Fed. Reg. 26,224 (May 7, 2015)....................................................................................................................13

*Pressed Concrete Steel Rail Tie Wire from the People's Republic of China: Final Determination of Sales at Less Than Fair Value*, 79 Fed. Reg. 25,572 (May 5, 2014).................................12, 13

*Pure Magnesium from Israel: Notice of Final Determination of Sales at Less Than Fair Value*, 66 Fed. Reg. 49,349 (Sept. 27, 2001) ................................................................................19, 21

This Response Brief is filed by Defendant-Intervenor Triune Technofab Private Limited ("Triune"), in opposition to the Motion for Judgment on the Agency Record filed by Plaintiff Edsal Manufacturing Co., Ltd. ("Petitioner" or "Edsal") on October 15, 2024, ECF 20-21 ("Pl. Br."). Petitioner alleges that the U.S. Department of Commerce ("Commerce" or "Department"), in the less-than-fair-value investigation of boltless steel shelving units prepackaged for sale from India, improperly accepted the financial statement of TMTE Metal Tech Private Limited ("TMTE") and rejected that of Mekins Industries Private Limited ("Mekins") for purposes of constructed value ("CV") and indirect selling expense ("ISE") calculations. Pl. Br. at 10-39.

Petitioner is wrong. Triune fully supports the position of Defendant United States (the "Government") in opposition to Petitioner's arguments in its response brief filed on December 13, 2024, ECF 23 ("Gov. Br."), at 12-35. In accordance with this Court's instruction, Order (Jan. 6, 2025), ECF 25, Triune provides the following supplemental points in support of Commerce's determination published as *Boltless Steel Shelving Units Prepackaged for Sale from India: Final Negative Determination of Sales at Less Than Fair Value*, 89 Fed. Reg. 28,746 (Apr. 19, 2024), P.R. 289 ("*Final Determination*").

## ARGUMENT

## I.  COMMERCE LAWFULLY FOUND THAT TMTE'S FINANCIAL STATEMENT IS PUBLICLY AVAILABLE

Petitioner argues that Commerce improperly "accepted and considered untimely filed CV profit information submitted by Triune to purportedly establish that a financial statement Triune had obtained from private sources had subsequently become publicly available." Pl. Br. at 2. Petitioner claims that "the Department's finding that the privately obtained financial statement of TMTE is publicly available is unlawful" and summarily alleges that "the record contains merely an unreliable and potentially inaccurate version of TMTE's financial statement." *Id*. As

1

discussed below, these arguments are unsupported by substantial evidence and contradicted by controlling law and established judicial and administrative precedent.

A. **Triune Timely Submitted Information On October 23, 2023 ,To Support The Public Availability Of TMTE's 2022-23 Financial Statement**

Petitioner states that "21 days after the deadline for CV profit information, Triune attempted to supplement its initial CV profit comments . . . by submitting new factual information and claiming that TMTE's 2022-2023 financial statement had become publicly available" and argues that "the Department's acceptance of Triune's untimely filed CV profit information is unlawful." *Id.* at 13-14. This argument is without merit. Commerce's decision to accept this information as timely filed new factual information ("NFI") is supported by its Regulations and settled practice.

Triune, in its 30- day factual information comments dated October 23, 2023, submitted NFI including a printout downloaded from the Government of India ("GOI") Ministry of Corporate Affairs ("MCA") website portal, establishing that TMTE's 2022-23 financial statement had been filed with the Registrar of Companies, Chennai, India. Triune's Submission of 30-Day Factual Information re: TMTE Financial' s Public Availability (Oct. 23, 2023), P.R. 225, at 1, Exhibit 1. Triune explained that any person could obtain a copy of TMTE's 2022-23 financial statement directly from the GOI MCA website upon payment of a prescribed fee. *Id*. Accordingly, as of October 23, 2023, *i.e.*, 30 days prior to the preliminary determination, TMTE's 2022-23 financial statement was publicly available because it had been published by the GOI, and could have been obtained by any member of the public.

Petitioner's argument that Commerce improperly accepted Triune's timely filed supplemental NFI on October 23, 2023, is without merit because on October 2, 2023, the initial deadline for CV profit information, ***the GOI MCA website download printout which Triune***

_**submitted on October 23, 2023, was not available on the MCA website**_. As such, Triune could not have provided this information in its original CV profit comments filed on October 2, 2023, because this information was not posted on the website as of that date.  Clearly, for factual information to be covered under any of the four specific clauses of 19 C.F.R. § 351.102(b)(21)(i)-(iv), such information had to exist as of the filing deadline specified in the Regulation. Information that did not exist as of the specified deadline can only be submitted as NFI under the non-specific catch-all residual clause, 19 C.F.R. § 351.102(b)(21)(v). Thus, the MCA website information submitted on October 23, 2023, was _**not untimely filed**_. Accordingly, Commerce's acceptance of this NFI as having been timely filed is supported by substantial evidence. Commerce reasoned:

> When we initially requested CV profit information, we requested that factual information pursuant to 19 CFR 351.102(b)(21)(v) and 19 CFR 351.301(a). Given Triune's November 2, 2023 letter indicating that the information placed on the record was not available on the due date for CV profit information, pursuant to its discretion under 19 CFR 351.301(a), Commerce has determined that good cause exists to extend the deadline for CV profit information to October 23, 2023, accept Triune's October 23, 2023 submission on the record, and allow for rebuttal information on Triune's October 23rd submission. Thus, Commerce is providing interested parties an opportunity to submit rebuttal information regarding Triune's October 23, 2023 submission by COB November 20, 2023.

U.S. Department of Commerce Memorandum (Nov. 13, 2023), P.R. 233, at 2.

Commerce properly exercised its inherent discretion under 19 C.F.R. § 351.301(a) when extending the deadline for CV profit information to October 23, 2023. The "good cause" rationale was properly invoked because this evidence was not available on October 2, 2023, but became available on the MCA website only later when TMTE actually filed its 2022-23 financial statement with the GOI. Consequently, Commerce did not err in extending the deadline for CV profit information to October 23, 2023.

Moreover, Triune's October 23, 2023, NFI is properly covered under the residual catch-

3

all clause, 19 C.F.R. § 351.102(b)(21)(v) because it does not meet the definition of NFI under 19

C.F.R. § 351.102(b)(21)(i)-(iv) of Commerce's Regulations.

First, the NFI Triune provided in support of the public availability of TMTE's 2022-23

financial statement is not "evidence, including statements of fact, documents, and data submitted

either in response to initial and supplemental questionnaires, or, to rebut, clarify, or correct such

evidence submitted by any other interested party." 19 C.F.R. § 351.102(b)(21)(i). This factual

information neither responds to any questionnaire from Commerce nor does it rebut, clarify or

correct any factual information that Petitioner or any other interested party provided pertaining to

such a questionnaire.

Second, this information is not "evidence, including statements of fact, documents, and

data submitted either in support of allegations, or, to rebut, clarify, or correct such evidence

submitted by any other interested party." 19 C.F.R. § 351.102(b)(21)(ii). This information was

not provided to support any allegation by Triune or to rebut, clarify or correct any allegation

made by Petitioner.

Third, because this proceeding is neither a nonmarket economy antidumping duty

proceeding nor a countervailing duty proceeding, this information clearly is not "publicly

available information submitted to value factors under § 351.408(c) or to measure the adequacy

of remuneration under § 351.511(a)(2), or, to rebut, clarify, or correct such publicly available

information submitted by any other interested party." 19 C.F.R. § 351.102(b)(21)(iii).

Fourth, this information is obviously not "evidence, including statements of fact,

documents and data placed on the record by the Department, or, evidence submitted by

any interested party to rebut, clarify or correct such evidence placed on the record by

the Department." 19 C.F.R. § 351.102(b)(21)(iv). This is because this information does not rebut

any evidence submitted by Commerce.

Consequently, Triune's October 23, 2023, NFI regarding the TMTE financial statement's publication on GOI's MCA website falls under the residual catch-all regulatory clause, 19 C.F.R. § 351.102(b)(21)(v).

In sum, these documents were submitted timely in Triune's 30-day factual information submission on October 23, 2023. Consequently, Petitioner's argument that Commerce unlawfully retroactively extended the deadline for CV profit is moot.

Petitioner claims that "in <u>Steel Nails from Oman</u>, the Department rejected petitioner Mid Continent Steel & Wire, Inc.'s ('Mid Continent') attempt to submit additional CV-profit-related information after the deadline for such information but before the preliminary determination deadline." Pl. Br. at 15. Petitioner argues that "the Department should have treated Triune's submission similar to Mid Continent's submission in <u>Steel Nails from Oman</u>" and alleges that "the Department's refusal to do so is an unreasonable deviation from the Department's precedent." *Id*. at 16. In that case, Commerce rejected belatedly submitted translations of a financial statement for the following reasons:

> The Department established a deadline of October 31, 2014, for all parties to submit CV profit and selling expense information. . . . Further, under the Department's regulations, all parties were permitted to file new factual information up to 30 days prior to the preliminary determination (in this case, November 17, 2014) provided that they explained why that information did not meet the definition of the information provided in response to the Department's specific request for CV profit information. Oman Fasteners failed to timely submit fully translated financial statements within either of these deadlines even though evidence on the record indicates that it had access to a full translation of the LSI financial statements well before the established deadlines. It was not until February 12, 2015, several months after the deadline for CV profit and selling expense information, that Oman Fasteners attempted to file a fully translated version of the LSI financial statements. As such, the Department rejected the submission as untimely.

5

*Certain Steel Nails from the Sultanate of Oman: Final Determination of Sales at Less Than Fair Value*, 80 Fed. Reg. 28,972 (May 20, 2015) ("*Nails from Oman*"), IDM Comment 1.

In contrast, in this case Triune was unable to submit the supplemental MCA website information by the initial October 2, 2023, deadline because the information did not exist on that date. Moreover, Triune submitted the supplemental information <u>within</u> the 30-day deadline. Therefore, this Court should reject Petitioner's false equivalence of Triune's October 23, 2023, NFI with *Nails from Oman*.

Petitioner also claims that "the Department's acceptance of Triune's new {NFI} . . . undermined, in a highly prejudicial manner, Edsal's ability to demonstrate the weaknesses of TMTE's 2022-2023 financial statement." Pl. Br. at 17. This argument is disingenuous because Petitioner failed to rebut Triune's October 23, 2023, NFI – even after Commerce afforded it an opportunity to do so. Had Petitioner found any discrepancy between the copy of TMTE's financial statement placed on the record on October 2, 2023, and the copy downloaded from the GOI MCA website, Petitioner could have promptly impeached the TMTE financial. statement Thus, here there are no reliability concerns regarding the copy of TMTE's financial statement that was submitted on October 2, 2023. As such, Petitioner's "prejudice" argument should be rejected.

Petitioner's subsidiary argument that "Triune failed to timely submit a publicly available version of TMTE's 2022-2023 financial statement" Pl. Br. at 11, is baseless because on October 2, 2023, Triune submitted TMTE's 2022-23 financial statement as a public document. Petitioner's reliance on *Mid Continent Nail Corp. v. United States*, 999 F. Supp. 2d 1307, 1327-28 (CIT 2014) ("*Mid Continent 2014*"), Pl. Br. at 13, is unavailing because in *Mid Continent 2014,* the initially submitted financial statement was filed as a business proprietary information

("BPI") under administrative protective order. Further, unlike *Mid Continent 2014*, where "Conares placed the public version of the subject financial statements on the record after the deadline for new factual evidence had passed and the Department treated these financial statements as untimely-filed {NFI}," Petitioner's Case Brief (Feb. 22, 2024), C.R. 208, P.R. 279, at 4, Triune timely filed the supplemental information on October 23, 2023, *i.e.*, within the 30-day regulatory deadline for filing NFI permitted by 19 C.F.R. § 351.301(c)(5).

In sum, in light of all record evidence, current Department Regulations, and established precedent, Commerce did not err in accepting Triune's October 23, 2023, supplemental information as having been timely filed.

**B.    TMTE's Financial Statement Submitted As A Public Document On October 2, 2023, Is "Publicly Available" Under Commerce's "Public Availability" Policy**

Petitioner argues that "the Department's finding that TMTE's financial statement is publicly available is unlawful . . .because the Department used TMTE's privately obtained 2022-2023 financial statement." Pl. Br. at 18. As set forth below, Petitioner's arguments are directly contradicted by Commerce's Regulations, settled practice, and applicable precedent.

TMTE's 2022-23 financial statement was placed on ACCESS as a public document on October 2, 2023. In addition, TMTE management unequivocally affirmed that this financial is publicly available:

> I, M. Sathyanarayanan (DGM Finance) of TMTE METAL TECH PRIVATE LIMITED, hereby confirm that I have provided the financial statements of TMTE METAL TECH PRIVATE LIMITED for the financial year 2022-23 to Triune Technofab Private Limited and hereby **agree to place on record these financial statement as Public Document**. Further, if requested **I agree to provide these financial statements to anyone as public document**.

Triune's Submission of Factual Information for CV Profit and ISE (Oct. 2, 2023), P.R. 177-92, Exhibits CV-8(c)&(e) (emphases added).

Thus, TMTE's management permitted Triune to submit TMTE's 2022-23 financial statement to Commerce as a public document, and accordingly, Triune filed it on ACCESS as a public document. *Id*. TMTE's management then declared that it would agree to provide its 2022-23 financial statement to any member of the public. *Id*. These facts support Commerce's finding that TMTE's 2022-23 financial statement submitted on October 2, 2023, was publicly available.

Pursuant to its Regulations, Commerce treats a document as publicly available information so long as it is made publicly available. Specifically, Commerce's amended Regulations refined the definition of "public availability" to obviate any requirement that a document be formally "published." This Court in *Shantou Red Garden Foodstuff Co. v. United States* summarized Commerce's regulatory change and public availability policy:

> According to the Department's published interpretation of the regulation that contains the preference for publicly available data, **data need not be published in order to be "public."** *See Antidumping Duties; Countervailing Duties,* 61 Fed.Reg. 7,308, 7,344 (Feb. 27, 1996) ("*Proposed Regs.*") (stating that the regulation "drops the preference for published information, limiting the preference to publicly available information."); *see also Antidumping Duties; Countervailing Duties,* 62 Fed. Reg. 27,296, 27,367 (May 19, 1997) ("*Preamble*") ("{T}he Department elected to codify a preference for publicly available information rather than publicly available published information.").

815 F. Supp. 2d 1311, 1330 (CIT 2012) (emphasis added).

Moreover, Commerce in 2022 valued CV profit/ISE ratios based on the financial statement of a Sri Lankan company, Vista Steel, whose public availability was supported solely by a Declaration from its proprietor agreeing to place the statement on the record as a public document and to provide it to anyone as a public document. *Certain Steel Nails from Sri Lanka*: *Final Negative Determination of Sales at Less Than Fair Value*, 87 Fed. Reg. 78,933 (Dec. 23, 2022) ("*Nails from Sri Lanka*"), IDM Comment 1; Triune's Submission of 30-Day Factual Information re: TMTE Financial's Public Availability (Oct. 23, 2023), P.R. 225, Exhibits 2-4.

8

Because the TMTE financial statement submitted as a public document on October 2, 2023, was obtained from the TMTE's management in a similar manner as Vista Steel's financial had been obtained in *Nails from Sri Lanka*, Commerce's decision to consider TMTE's financial statement as being publicly available is supported by agency precedent. Then, as discussed above, Triune filed the same TMTE financial statement with the GOI who published it on its MCA website, and a printout of the MCA website was submitted by Triune on October 23, 2023 (within the 30-day regulatory deadline for filing NFI).

Notwithstanding the above, Petitioner reasons that "{t}he fact that TMTE filed a copy of its financial statement with the Indian government, however, does not demonstrate that the financial statement Triune submitted, which was not obtained from the MCA registry, is publicly available. . . . {T}he fact the TMTE financial statement on the record was obtained directly from TMTE's owner, which may be reason enough to 'possibly render the financial statements not 'publicly available.'" Pl. Br. at 21 (quoting *Best Mattresses Int'l Co. v. United States*, 622 F. Supp. 3d 1347, 1394-95 (CIT 2023). This argument is without merit. Contrary to Petitioner's assertion, *Best Mattresses* does not hold that a financial statement is publicly available only when obtained directly from a government source and conversely is not publicly available when provided by the surrogate company. Instead, *Best Mattresses* addressed a lack of clarity about the source of a financial statement:

> Commerce's inference that Emirates was obtained from a "public fee-based subscription service" derives solely, it appears, from Defendant-Intervenor's legal argument that a financial statement need not be free of charge. That is no more than a "mere scintilla" of evidence, even under our deferential standard. For instance, **Defendant-Intervenor's reasoning is also consistent with a hypothetical private payment to Emirates for use of its financial statements, which would not qualify as a subscription service and possibly render the financial statements not "publicly available."** Because Commerce has not grounded the specific finding of using a subscription service in any part of the factual record before the court, its determination that Emirates's financial

statements were publicly available cannot be sustained.

*Id.* (emphasis added).

In other words, *Best Mattresses* conceived of a hypothetical situation where an interested party paid for a financial statement. In that case, the statement arguably could not be used because of reliability concerns. The situation here is different because: (1) there is no evidence that TMTE provided its 2022-23 financial to Triune in exchange for any payment; (2) TMTE permitted Triune to submit the financial as a public document; (3) TMTE declared it was ready to provide the same financial to any member of the general public; and (4) the statement was published on the GOI's MCA website.

Petitioner nonetheless perseveres with its misguided attempts to muddy the waters claiming that in the *Best Mattresses I* remand proceeding, Commerce reaffirmed the public availability of the financial statement because *inter alia*, "the additional record evidence demonstrated that petitioners had not retrieved Emirates' financial statement from Emirates itself." Pl. Br. at 20. Petitioner's characterization is wrong. Commerce's *Best Mattresses* remand reaffirmed the financial statement's public availability because "all interested parties are capable of obtaining the financial statements and commenting on the reliability and the relevance of the information." *Best Mattresses Int'l Co. v. United* States, Final  Results of Redetermination Pursuant to Court Remand, Ct. No. 21-00281 (July 17, 2023),  ECF 105. As such, Commerce did not hold that obtaining the financial statement from the surrogate company itself would impugn its public availability. To the contrary, Commerce held that so long as a financial statement could be obtained by all interested parties from any source and its reliability was not questionable, it will be considered publicly available.

To impeach the public availability of TMTE's financial, Petitioner also misplaces

10

reliance on *Since Hardware (Guangzhou) Co. v. United States*, 2012 WL 11802604, *2-3 (CIT Aug. 14, 2012). Pl. Br. at 22-25. In that case, remand was ordered to ascertain the public availability of a financial statement because "interested parties were unable to obtain the financial statements through the public domain" and the "record evidence established that the financial statements were not available through the Government of India's MCA website." Pl. Br. at 22. In contrast, anyone could have obtained TMTE's financial statement from TMTE's owners on and after October 2, 2023. And unlike *Since Hardware (Guangzhou) Co. v. United States*, 911 F. Supp. 2d 1362, 1366-69 (CIT 2013), where "respondents were apparently unsuccessful with similar requests," Pl. Br. at 23, Petitioner does not claim that it was denied a copy of this financial by TMTE's owners. Moreover, as of October 23, 2023, TMTE's financial undisputedly was available on the GOI MCA website. Indeed, Petitioner does not claim it had difficulty downloading the TMTE's financial from the GOI MCA website. Therefore, *Since Hardware,* in fact, supports the public availability of TMTE's financial statement because:

1. TMTE's management did not rebuff Petitioner's attempt to obtain the statement;

2. Petitioner never attempted to obtain the statement from TMTE;

3. TMTE management issued a signed declaration agreeing to provide a copy of the financial to any member of the public;

4. TMTE's financial statement was filed with the GOI MCA within Commerce's regulatory deadline to submit NFI; and

5. Petitioner makes no claim it had any difficulty downloading this financial statement from the MCA website and does not dispute that the MCA version of this financial is identical to the one filed on ACCESS.

In view of the above facts, there is no merit to Petitioner's juxtaposition that "the court in Best Mattresses II and Since Hardware III only sustained the Department's conclusions on the public availability of financial statements after the record data were definitively shown to be the

public financial statements they purported to be" against its assertion that "because Triune never submitted the purportedly publicly available version of TMTE's 2022-2023 financial statement, the Department unreasonably relied on an unverified, unreliable version of the financial statement that was privately obtained." Pl. Br. at 25. To reiterate, as established *supra*, TMTE's financial statement submitted on October 2, 2023, was publicly available under Commerce's public availability policy. Furthermore, Triune established that as of October 23, 2023 (within the 30-day deadline for NFI submission), TMTE's financial statement was published on the GOI MCA website, and Petitioner notably bypassed an opportunity afforded by Commerce to rebut this critical fact when expressly afforded a chance to do so. In sum, Petitioner fails to impeach the public availability of TMTE's financial statement.

Petitioner also raises a subsidiary argument misplacing reliance on *Prestressed Concrete Steel Rail Tie Wire From the People's Republic of China: Final Determination of Sales at Less Than Fair Value*, 79 Fed. Reg. 25,572 (May 5, 2014) ("*Rail Tie Wire from China*"), IDM Comment 6. Pl. Br. at 26. Targeting TMTE's financial submitted on October 2, 2023, Petitioner argues that "the Department has compelling reasons to decline to rely on privately obtained surrogate data because such information presents 'information and collection concerns,' the Department 'does not know the conditions under which the information is obtained,' and the Department 'cannot be certain' that other parties would be able to obtain the same information." Pl. Br. at 26. *Rail Tie Wire from China* is distinguishable because in that case Commerce declined to rely on a privately-solicited price quote, reasoning *inter alia* as follows: (1) "the information accompanying this rate quote appears to indicate that PAF is seeking Silvery Dragon's business and, thus, PAF may have offered Silvery Dragon a special rate in order to obtain its business"; (2) "price quotes obtained by interested parties are subject to information

collection and accessibility concerns"; (3) "the Department cannot be certain that it could obtain the same price quote"; and (4) "price quotes are generally proprietary in nature and, as such, the Department does not know the conditions under which the information is obtained." *Rail Tie Wire from China.* 79 Fed. Reg. 25,572, IDM Comment 6.

In contrast, a company has only one financial statement for a fiscal year. Consequently, all copies of a company's financial statements are identical. Moreover, reliability concerns that permeate price quotes do not apply to financial statements that are prepared by companies based on their overall financial performance and pursuant to regulatory requirements in accordance with generally accepted accounting principles ("GAAP"). Financial statements are audited by an independent licensed accounting firm; they cannot be specially tailored at the behest of another interested party. Further, the TMTE financial statement was filed with the GOI MCA. Therefore, Petitioner's reliance on *Rail Tie Wire from China* is unavailing.

In sum, Petitioner's false equivalence of quintessentially private and customized price quotes with a financial statement fails. Moreover, the fact that Commerce does, in fact, accept a private price quote, if otherwise reliable, even if lacking "public availability,"[1] further undermines Petitioner's arguments.

---

[1] *Polyethylene Retail Carrier Bags from Thailand: Preliminary Results of Antidumping Duty Administrative Review and Rescission of Review in Part; 2013-2014,* 80 Fed. Reg. 26,224 (May 7, 2015), Decision Memorandum at 8 ("the Department determined that, because the price quote reflected commercial practices of the particular industry during the period of investigation, the information was relevant to mandatory respondents which refused to participate in the investigation."); *Certain Mobile Access Equipment and Subassemblies Thereof from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value,* 87 Fed. Reg. 9,576 (Feb. 22, 2022), IDM Comment 5 ("Concerning . . . price quotes that Dingli placed on the record, we continue to find that because Dingli made the transactions between its U.S. affiliate and a company in a third-country public, the information does not necessarily have to be published to be 'public.'"); *An Giang Fisheries Imp. & Exp. Joint Stock Co. v. United States,* 203 F. Supp. 3d 1256, 1283 (CIT 2017) ("The court cannot say that Commerce unreasonably considered the superior specificity of these price quotes to outweigh their lack of public

## II.   COMMERCE LAWFULLY REJECTED MEKINS' COUNTERVAILABLE SUBSIDY-DISTORTED FINANCIAL STATEMENT

Petitioner asserts that "the Department's rejection of Mekins' financial statement on the basis that it indicates receipt of countervailable subsidies is not supported by substantial evidence and is otherwise not in accordance with law." Pl. Br. at 27. As the Government established, this argument is totally without merit. Def. Br. at 27-34. Triune incorporates by reference the Government's arguments, which establish that Commerce properly rejected Mekins' financial that is distorted by benefits received under two countervailable subsidy programs (Duty Drawback and MEIS), in favor of TMTE's financial that undisputedly is undistorted by subsidies, and otherwise fulfills all other necessary criteria for selection of surrogate financial statements used for CV profit calculation.

Again, TMTE's 2022-23 financial statement is publicly available. Section I, *supra*. Thus, Commerce did not encounter a situation where it had to weigh the comparative deficiencies of two subsidy distorted financials, which is the fact situation in several decisions upon which Petitioner relies. *See, e.g.*, *Mid-Continent* line of cases, arising from the final determination in the *Certain Steel Nails from the Sultanate of Oman: Final Determination of Sales at Less Than Fair Value* (May 20, 2015). Pl. Br. 29-32. Pursuant to this protracted litigation, Commerce's third remand redetermination ultimately relied upon the financial statement of Sundram Fasteners Limited – despite being subsidy-distorted – because Sundram produced comparable merchandise and constituted the best financial data available on the record. Pl. Br. at 32. The Court of Appeals

---

availability."); *Catfish Farmers of Am. v. United States*, 2014 WL 7181411, \*15 (CIT Dec. 18, 2014) ("Commerce . . . found the specificity of the price quote to the three by-products Commerce needed to value to be an important factor in their valuation"), *aff'd*, 645 F. Appx 1001 (Fed. Cir. 2016).

for the Federal Circuit recently affirmed Commerce's rationale as follows:

> Although Sundram's fasteners have different end uses from those of Oman
> Fasteners, . . . it was reasonable for Commerce to select Sundram, which produces
> fasteners, over Al Jazeera, which does not. Oman Fasteners suggests that
> Sundram's receipt of a subsidy (found by Commerce) undercuts its
> reasonableness as a comparator and that Commerce erred by not explicitly
> discussing the potential effects of that subsidy. . . . But Commerce did note the
> size of the subsidy: . . . The insignificance of the subsidy to any profit calculation
> means that, even if it was unreasonable for Commerce not to address the subsidy
> more than it did, that error was harmless: It could not have affected the choice of
> Sundram over Al Jazeera. . . . Accordingly, we see no reversible error in
> Commerce's selection of Sundram over Al Jazeera.

*Mid Continent Steel & Wire, Inc. v. United States*, 2025 WL 40344, *2-3 (Fed. Cir. Jan.

7, 2025).

Yet selection of Sundram's subsidy-distorted financial was specific to the underlying

record, a fact that was proved in subsequent review proceedings where Commerce rejected

Sundram's financials on the grounds of its subsidy distortion when the record proffered more

suitable and subsidy-free alternatives, as is the case here.

Commerce in the 2019-20 *Nails from Oman* review deviated from its precedent (third

remand redetermination where it selected Sundram's financial), when afforded with better

alternatives and rejected Sundram financials distorted by countervailable subsidy benefits:

> {F}or the final results, we have not relied upon Sundram as a source for CV
> profit and selling information because the Sundram FS demonstrate evidence
> of countervailable subsidies received.

*Certain Steel Nails from the Sultanate of Oman: Final Results of Antidumping Duty*

*Administrative Review; 2019-2020*, 86 Fed. Reg. 67,690 (Nov 29, 2021), IDM Comment 1.

Likewise, Commerce in the subsequent review again rejected Sundram's financial

statement:

> {F}or the final results, we continue to find that Sundram's financial statements
> contain evidence of subsidies received under programs which Commerce has

15

previously found to be countervailable and do not represent the best available information on the record to calculate CV profit and ISE ratios.

*Certain Steel Nails from the Sultanate of Oman: Final Results of Antidumping Duty Administrative Review; 2021-2022*, 88 Fed. Reg. 85,878 (Dec. 11, 2023), IDM Comment 1.

As such, Commerce's recent decisions in *Nails from Oman* reviews clarify that for purposes of CV profit computations, the agency will reject a subsidy-distorted financial when afforded with alternatives that are undistorted by countervailable subsidies and otherwise fulfill all other criteria. Moreover, in recent market economy AD proceedings, to calculate CV profit, Commerce has consistently rejected financials showing receipt of countervailable subsidy benefits. For example, in *Glycine from India: Preliminary Results of Antidumping Duty Administrative Review; 2021-2022*, Commerce reasoned:

> For these preliminary results, we have considered the CV profit options proposed by interested parties in this administrative review, and find that, for various reasons, many of them are not viable sources for CV profit and selling expenses. Specifically, the financial statements of Alkyl Amines Chemicals Ltd., Diamines and Chemicals Ltd., Cipla Ltd., Coral Drugs Private Ltd. (Coral Drugs), New Alliance Fine Chem Private Ltd. (New Alliance), Paras, Indo Amines Ltd., and Eiko Lifesciences Ltd. indicate that they received countervailable subsidies.

88 Fed. Reg. 43,277 (July 7, 2023), IDM at 1, aff'd, *Glycine from India: Final Results of Antidumping Duty Administrative Review, 2021-2022*, 88 Fed. Reg. 77,552 (Nov. 13, 2023), IDM Comment 5.

In *Certain Quartz Surface Products from India: Final Results of Antidumping Duty Administrative Review; 2019–2021*, Commerce similarly determined,

> {T}he company states that it recognizes duty drawback and export benefits on an accrual basis in its standalone and consolidated financial statements. Thus, this indicates that Asian Granito benefits from a countervailable subsidy program. Therefore, for these final results, we find Asian Granito's profit and selling expense information is not suitable for use as a reasonable alternative, per our practice to dismiss sources which reflect such subsidization.

88 Fed. Reg. 1188 (Jan. 9, 2023), IDM Comment 1. Likewise, in *Carbon and Alloy Steel*

*Threaded Rod from India: Final Results of Antidumping Duty Administrative Review, 2019–*

*2021*, Commerce followed the same practice:

> {F}or the final results we find that the financial statements of Sterling, Sundram, Hiten, and Techbolt are not suitable sources for calculating CV profit and selling expense ratios because they demonstrate countervailable subsidies received during the POR. Further, we find that there are other sufficiently reliable and representative data on the record for this purpose.

87 Fed. Reg. 55,400 (Sept. 9, 2022), IDM Comment 4. These decisions reveal that contrary to

Petitioner's assertions, for purposes of calculating CV profit and selling expenses, Commerce

has a well-established policy to reject financial statements distorted by countervailable subsidies,

and conversely, to select financials that are free from such subsidy distortions.

 In sum, Petitioner's arguments that Commerce erred in rejecting Mekins' financial based

on the receipt of countervailable subsidy benefits in favor of TMTE's undistorted financial, is

without merit.

### III. COMMERCE PROPERLY REJECTED PETITIONER'S ARGUMENTS TO AVERAGE TMTE AND MEKINS RATIOS

 Petitioner argues that "the Department unjustifiably deviated from its practice by

declining to average the profit data of Mekins and TMTE." Pl. Br. at 37. Petitioner further

argues that "using more than just one financial statement … would reflect a broader market

average and thus be more representative of the Indian economy as a whole." *Id*. at 38. However,

Petitioner abjectly fails to cite to any precedent where Commerce averaged a subsidy-free

financial that also satisfied all other criteria (*TMTE*) with another financial that was both

subsidy-distorted (*Mekins*) and failed to meet other necessary criteria (*Mekins*). In all cases

where Commerce averages ratios from multiple financial statements, those financial statements

are either equally suitable or have comparable deficiencies. That is not the situation here because

as further explained below, Mekins' financial statement, besides being subsidy-distorted, is also unrepresentative of the production experiences of Triune. In contrast, TMTE, besides being undistorted by subsidies, manifests comparable production experiences. Therefore, Petitioner's arguments should be rejected because averaging Mekins' ratios with TMTE's ratios would introduce avoidable distortions in the resulting average CV profit.

**A. TMTE's Production Experience Is Superior To Mekins' Experience**

TMTE's annual report confirms that it produces the merchandise under consideration ("MUC"), *i.e.*, steel shelving. Triune's Submission of Factual Information for CV Profit and ISE (Oct. 2, 2023), P.R. 177-92, Exhibit CV-8(b) at 35, 33 (product described as "slotted angle rack" is actually boltless steel shelving). In addition, TMTE is focused on production of a variety of steel racks, *id*. Exhibit CV-8(b), which are closely comparable to steel shelving in terms of physical characteristics and uses, as described in the underlying Petition (excerpted below).

> Boltless steel shelving units that are prepackaged for sale are used for storage in homes, basements, garages, offices, and commercial and industrial operations. . . .
>
> Boltless steel shelving units are relatively high load-capacity, stand-alone shelving. . . .
>
> Boltless steel shelving is designed for utility, rather than aesthetic appearance, and therefore is likely to be used in a garage, basement, or back room rather than a kitchen, living room or sales display area.

Triune's Submission of Rebuttal Factual Information for CV Profit and ISE (Oct. 10, 2023), C.R. 170-71, P.R. 217, Exhibit CVR-1(d): Antidumping Duty Petition (Apr. 25, 2023), at 7-8, 11.

A chart appended to Triune's rebuttal case brief is instructive. Triune's Rebuttal Case Brief (Mar. 4, 2024), P.R. 282-83, at 21-22, 26, Exhibit 1. This chart compares the products produced and sold by TMTE, Mekins, and six other Indian companies (whose financial statements Triune submitted in its October 2, 2023, CV Profit comments) in terms of their

product descriptions, physical characteristics, and end-uses. This chart evidences that a large majority of TMTE's products are steel shelving and steel racks used in industrial and commercial operations. *Id*. Exhibit 1. Accordingly, TMTE's products are identical and comparable to the MUC in terms of their product descriptions, physical characteristics, and end-uses.

Note 22 "Revenue from Operations" shows that of TMTE's total revenue of Rs. 7404.92 Lakhs, Rs. 7110.60 Lakhs, i.*e.,* 96%, is from sale of "Racks." Triune's Submission of Factual Information for CV Profit and ISE (Oct. 2, 2023), P.R. 177-192, Exhibit CV-8(c) at 22 (unnumbered). As such, TMTE's sales expenses and profits are tied predominantly – nearly exclusively – to the sale of identical and comparable merchandise. Consequently, TMTE's operations are representative of Triune's operations and accordingly, its CV profit/ISE ratios are reliable in valuing Triune's CV profit/ISE ratios.

Therefore, TMTE's business operations and products are similar to Triune's business operations and products, fulfilling a key criterion for selecting financial statements to calculate CV Profit and ISE, as specified in *Pure Magnesium from Israel: Notice of Final Determination of Sales at Less Than Fair Value*:

1) the similarity of the potential surrogate companies' business operations and products to the respondent's business operations and products;

2) the extent to which the financial data of the surrogate company reflects sales in the home market and does not reflect sales to the United States; and

3) the contemporaneity of the data to the POI.

66 Fed. Reg. 49,349 (Sept. 27, 2001), IDM Comment 8.

Commerce also examines, pursuant to its precedent established decades ago, the extent to which the customer base of the surrogate and the respondent are similar. *Certain Color Television Receivers from Malaysia: Notice of Final Determination of Sales at Not Less Than*

*Fair Value*, 69 Fed. Reg. 20,592 (Apr. 16, 2004), IDM Comment 26. TMTE also satisfies this criterion.

In contrast, the comparative chart appended to Triune's Rebuttal Case Brief establishes that a large majority of products produced and sold by Mekins are not comparable to the subject merchandise, as further explained below. In its website (https://mekins.com/), Mekins' products are divided into three broad categories:

(a) Material Handling

(b) Retail Storage

(c) Fight COVID

Triune's Submission of Rebuttal Factual Information for CV Profit and ISE (Oct. 10, 2023), C.R. 170-71, P.R. 217, Exhibit CVR-1(a)-(c).

The products under categories (a) and (c) are not remotely similar to shelving products. *Id*. Exhibit CVR-1(a)&(c). As Triune established, the products covered in category (a) are euro pallets, automotive pallets, etc. Triune's Rebuttal Case Brief (Mar. 4, 2024), P.R. 282-83, at 22. All of these products are mainly used for transportation and not storage of goods. Likewise, the products covered in category (c) are Fighting COVID products, like UVC Trolleys, UVC Safety boxes, etc. – all of which are used in health care/ hospitals, a different customer base and end-use than Triune's customer base. *Id*.

Further, Mekins' retail storage category encompasses products like promotional bins, pegs & merchandisers, fruit & vegetable stands, etc. – which are used for display of products in supermarkets and retail shops. *Id*. at 22-23. As such, virtually all products manufactured by Mekins are not comparable to steel shelving products. This is in stark contrast to TMTE's products, which are steel racks that are identical or comparable to steel shelving produced and

sold by Triune. *Id*. at 22. Moreover, racks accounts for 96% of TMTE's sales. *Id*.

In sum, the fact that Mekins' business operations and products are less similar to Triune's

business operations and products than TMTE's operations and products, supports Commerce's

decision to rely solely on the TMTE statement in accordance with Department precedent. *See*

*Pure Magnesium from Israel*, 66 Fed. Reg. 49,349 (Sept. 27, 2001), IDM Comment 8.

### B. Unlike TMTE, Mekins' Sales And Profit Experiences Are Based Substantially On Its Export Sales Rather Than Its Home Market Sales

Triune established that its home market sales of racks represent 99.52% of its total sales.

Triune's Rebuttal Case Brief (Mar. 4, 2024), P.R. 282-83, at 23. Further, there is zero evidence

that TMTE exported any products to the U.S. market. Therefore, TMTE's financial statement

"reflects sales in the home market and does not reflect sales to the United States," fulfilling

another critical criterion specified in *Pure Magnesium from Israel*, 66 Fed. Reg. 49,349 (Sept.

27, 2001), IDM Comment 8.

In contrast with TMTE, **<u>35.35%</u>** of Mekins' total sales revenue are from export sales.

Triune's Rebuttal Case Brief (Mar. 4, 2024), P.R. 282-83, at 24. Further, Mekins has substantial

exports to the U.S. market including exports during the reporting period. *Id*. In contrast with

Mekins, TMTE's home market sales account for 99.52% of its total sales, and these sales consist

of steel racks and steel shelving that are identical or comparable to Triune's products. *Id.* at 25.

Unlike TMTE, Mekins' financial statement "reflect{s} {relatively lesser} sales in the

home market and . . .  reflect{s} sales to the United States." *Pure Magnesium from Israel*, 66

Fed. Reg. 49,349 (Sept. 27, 2001), IDM Comment 8. Therefore, Mekins' financial statement is

disfavored by longstanding Department practice, summarized in *Pure Magnesium from Israel,*

which requires predominantly home market sales and minimal or no U.S. sales for a financial to

be selected.

In sum, the fact that Mekins' financial statement is qualitatively inferior to TMTE further undermines Petitioner's arguments against rejection of Mekins' financial statement.

## **CONCLUSION**

For the foregoing reasons, Triune respectfully requests that this Court affirm Commerce's actions with respect to selection of TMTE's financial as it is supported by substantial evidence and otherwise in accordance with law.

Respectfully submitted,

*/s/ Dharmendra N. Choudhary*
Ned H. Marshak*
Dharmendra N. Choudhary
Jordan C. Kahn

1201 New York Ave., NW, Suite 650
Washington, DC 20005
202-783-6881

-and-

*599 Lexington Avenue, FL 36
New York, New York 10022
(212) 557-4000

Dated: January 21, 2025

*Counsel for Defendant-Intervenor Triune Technofab Private Limited*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Defendant-Intervenor's Response Brief, as computed by Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP's word processing system Microsoft Word 2007, is 6,613 words, less than the 7,000-word limit.

<u>*/s/ Dharmendra N. Choudhary*</u>
*Counsel for Defendant-Intervenor Triune Technofab Private Limited.*

Dated: January 21, 2025