# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

|  |  |  |
|---|---|---|
| EDSAL MANUFACTURING CO., LTD., | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| UNITED STATES, | ) | Court No. 24-00087 |
| Defendant, | ) | |
| TRIUNE TECHNOFAB PRIVATE LIMITED, | ) | |
| Defendant-Intervenor. | ) | |

## <u>PLAINTIFF'S REPLY BRIEF</u>

KATHLEEN W. CANNON
JOSHUA R. MOREY
MATTHEW T. MARTIN
**KELLEY DRYE & WARREN LLP**
3050 K Street NW, Suite 400
Washington, DC  20007
(202) 342-8867
kcannon@kelleydrye.com
jmorey@kelleydrye.com
mmartin@kelleydrye.com

Counsel to Plaintiff Edsal Manufacturing Co., Ltd.

February 18, 2025

**Table of Contents**

**Page**

ARGUMENT ..................................................................................................................1

I.     THE DEPARTMENT'S ACCEPTANCE OF A NON-PUBLIC
FINANCIAL STATEMENT OBTAINED DIRECTLY FROM
COMPANY OFFICIALS IS UNLAWFUL ..................................................1

     A.     Substantial Evidence Does Not Support the Department's Finding
that TMTE's Financial Statements Were Publicly Available ..................2

          1.     TMTE's Financial Statements Were Not Publicly Available
By Virtue of Triune Submitting Them..........................................2

          2.     The Department's Acceptance of the TMTE Financial
Statements as "Publicly Available" Undermines Important
Principles of Transparency, Fairness, and Accuracy ...................5

          3.     Edsal Attested to its Inability to Obtain the TMTE
Financial Statements and All Parties Acknowledge that the
Financial Statements Were Not Accessible Through the
MCA Website ................................................................................9

     B.     The Department's Retroactive Extension of the Deadline for
Affirmative CV Profit Information Is Unlawful.....................................11

II.     THE DEPARTMENT UNLAWFULLY REFUSED TO CONSIDER
MEKINS' FINANCIAL STATEMENTS ..........................................................16

     A.     The Department's Outright Rejection of Mekins' Financial
Statements Is Unlawful ..........................................................................16

     B.     The Department's Failure to Follow its Preference for Relying on
Multiple Sources for CV Profit Calculations Is Unlawful.....................20

CONCLUSION.............................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Bebitz Flanges Works Priv. Ltd. v. United States,
    433 F. Supp. 3d 1297 (Ct. Int'l Trade 2020) ...........................................................12

Best Mattresses Int'l Co. v. United States,
    622 F. Supp. 3d 1347 (Ct. Int'l Trade 2023) ......................................................... 7-8

Bldg. Sys. de Mexico, S.A. de C.V. v. United States,
    567 F. Supp. 3d 1306 (Ct. Int'l Trade 2022) ("Building Systems de Mexico I")........ 17, 21-22

Cambria Co. v. United States,
    705 F. Supp. 3d 1369 (Ct. Int'l Trade 2024) ...........................................................11

Dongtai Peak Honey Indus. Co. v. United States,
    777 F.3d 1343 (Fed. Cir. 2015)...............................................................................12

Mid Continent Steel & Wire, Inc. v. United States,
    2025 WL 40344 (Fed. Cir. Jan. 7, 2025) ("Mid Continent VI") ..................................... 17-18

Mid Continent Steel & Wire, Inc. v. United States,
    941 F.3d 530 (Fed. Cir. 2019) ("Mid Continent III").................................................... *passim*

Since Hardware (Guangzhou) Co. v. United States,
    Consol. Ct. No. 11-00106, 2012 WL 11802604
    (Ct. Int'l Trade Aug. 14, 2012) ("Since Hardware I")...............................................9

Since Hardware (Guangzhou) Co. v. United States,
    911 F. Supp. 2d 1362 (Ct. Int'l Trade 2013) ("Since Hardware II")................................... 7-8

Since Hardware (Guangzhou) Co. v. United States,
    977 F. Supp. 2d 1347 (Ct. Int'l Trade 2014) ("Since Hardware III")...................................10

SKF USA v. United States,
    630 F.3d 1365 (Fed. Cir. 2011)...............................................................................19

Taian Ziyang Food Co. v. United States,
    637 F. Supp. 2d 1093 (Ct. Int'l Trade 2009) ...........................................................4

Tau-Ken Temir LLP v. United States,
    587 F. Supp. 3d 1346 (Ct. Int'l Trade 2022) ...........................................................12

Universal Camera Corp. v. NLRB,
    340 U.S. 474 (1951)...............................................................................................16

Zhengzhou Harmoni Spice Co. v. United States,
    617 F. Supp. 2d 1281 (Ct. Int'l Trade 2009) ....................................................... 3-4

## Statutes and Regulations

19 U.S.C. § 1677b(a) ................................................................................................7, 16

19 U.S.C. § 1677f(i)(3)(a)......................................................................................16, 19

19 U.S.C. § 1677b(e)(2)(B)(iii) ..........................................................................5, 7, 18

19 C.F.R. § 351.302(b) ........................................................................................ 12-13

## Administrative Determinations

Certain Kitchen Appliance Shelving and Racks From the People's Republic of
    China: Final Results and Partial Rescission of First Antidumping Duty
    Administrative Review, 77 Fed. Reg. 21,734
    (Dep't Commerce Apr. 11, 2012), and accompanying Issues and Decision
    Memorandum (Apr. 4, 2012) ................................................................. 10-11, 21-22

Certain New Pneumatic Off-The-Road Tires from the People's Republic of
    China: Final Affirmative Determination of Sales at Less Than Fair Value and
    Partial Affirmative Determination of Critical Circumstances,
    73 Fed. Reg. 40,485 (Dep't Commerce July 15, 2008), and accompanying
    Issues and Decision Memorandum (July 7, 2008)............................................. 21-22

Certain Paper Plates from the People's Republic of China:
    Final Affirmative Determination of Sales at Less Than Fair Value and Final
    Affirmative Determination of Critical Circumstances, in Part,
    90 Fed. Reg. 8,271 (Dep't Commerce Jan. 28, 2025), and accompanying
    Issues and Decision Memorandum for the Final Affirmative Determination in
    the Less-Than-Fair-Value Investigation of Certain Paper Plates from the
    People's Republic of China and Final Affirmative Determination of Critical
    Circumstances, in Part (Jan. 21, 2025) ....................................................................20

Certain Paper Plates from the Socialist Republic of Vietnam:
    Final Affirmative Determination of Sales at Less Than Fair Value and Final
    Affirmative Determination of Critical Circumstances, in Part,
    90 Fed. Reg. 8,265 (Dep't Commerce Jan. 28, 2025), and accompanying
    Issues and Decision Memorandum for the Final Affirmative Determination of
    Sales at Less Than Fair Value of Certain Paper Plates from the Socialist
    Republic of Vietnam (Jan. 21, 2025) ................................................................. 21-22

Certain Polyethylene Terephthalate Resin From the People's Republic of China:
Final Determination of Sales at Less Than Fair Value, 81 Fed. Reg. 13,331
(Dep't Commerce Mar. 14, 2016), and accompanying Issues and Decision
Memorandum for the Final Determination of the Antidumping Duty
Investigation of Certain Polyethylene Terephthalate Resin from the People's
Republic of China (Mar. 4, 2016) ("PET Resin from China") .............................................. 7-8

Certain Steel Grating From the People's Republic of China:
Preliminary Determination of Sales at Less Than Fair Value and
Postponement of Final Determination, 75 Fed. Reg. 847
(Dep't Commerce Jan. 6, 2010), modified and aff'd upon remand,
Yantai Xinke Steel Structure Co. v. United States,
38 C.I.T. 478 (2014) ...............................................................................................................10

Certain Steel Nails From the Sultanate of Oman:
Final Determination of Sales at Less Than Fair Value, 80 Fed. Reg. 28,972
(Dep't Commerce May 20, 2015), and accompanying Issues and Decision
Memorandum for the Final Determination of Sales at Less Than Fair Value
(May 13, 2015) ("Steel Nails from Oman") ...................................................................... 15-16

Decision Memorandum for the Preliminary Negative Determination in the Less-
Than-Fair-Value Investigation of Boltless Steel Shelving Units Prepackaged
for Sale from India (Nov. 21, 2023) ("PDM") (P.R. 239) ............................................. 1, 11-12

Final Determination of Sales at Less Than Fair Value:
Prestressed Concrete Steel Rail Tie Wire From the People's Republic of
China, 79 Fed. Reg. 25,572 (Dep't Commerce May 5, 2014), and
accompanying Issues and Decision Memorandum for the Final Determination
of Sales at Less Than Fair Value (Apr. 28, 2014) ("Rail Tie Wire from China").................. 6-8

Final Results of Redetermination Pursuant to Court Order;
Golden Dragon Precise Copper Tube Group, Inc., et al. v. United States,
Ct. No. 14-00116, (Dep't Commerce Mar. 21, 2016),
aff'd, Golden Dragon Precise Copper Tube Grp., Inc. v. United States,
2016 WL 4442163 (Ct. Int'l Trade Aug. 23, 2016)........................................................... 19-20

Final Results of Redetermination Pursuant to Court Remand;
Mid Continent Steel & Wire Inc. v. United States,
Consol. Ct. No. 15-00214 (Dep't Commerce Apr. 12, 2022)........................................... 18-19

Final Results of Redetermination Pursuant to Court Remand;
Yantai Xinke Steel Structure Co. v. United States, Ct. No. 10-00240
(Dep't Commerce Jan. 18, 2013), aff'd, 38 C.I.T. 478 (2014) .................................................5

Issues and Decision Memorandum for the Final Negative Determination in the
Less-Than-Fair-Value Investigation of Boltless Steel Shelving Units
Prepackaged for Sale from India (Apr. 12, 2024) ("IDM") (P.R. 287) ........................1, 14, 19

Steel Propane Cylinders From the People's Republic of China:
    Preliminary Affirmative Determination of Sales at Less Than Fair Value,
    83 Fed. Reg. 66,675 (Dep't Commerce Dec. 27, 2018), and accompanying
    Decision Memorandum for the Preliminary Determination in the Less-Than-
    Fair-Value Investigation of Steel Propane Cylinders from the People's
    Republic of China (Dec. 18, 2018),
    unchanged in Steel Propane Cylinders From the People's Republic of China:
    Final Determination of Sales at Less Than Fair Value, 84 Fed. Reg. 29,161
    (Dep't Commerce June 21, 2019) ................................................................................. 6

**Other Authorities**

Extension of Time Limits, 78 Fed. Reg. 57,790 (Dep't Commerce Sept. 20, 2013) .............. 12-13

Regulations Enhancing the Administration of the Antidumping and
    Countervailing Duty Trade Remedy Laws, 89 Fed. Reg. 57,286
    (Dep't Commerce July 12, 2024) ............................................................................. 18

Regulations Enhancing the Administration of the Antidumping and
    Countervailing Duty Trade Remedy Laws, 89 Fed. Reg. 101,694
    (Dep't Commerce Dec. 16, 2024) ................................................................. 14-15, 18

On behalf of Plaintiff Edsal Manufacturing Co., Ltd. ("Edsal"), we submit this Reply Brief to Defendant's, the United States, Response to Plaintiff's Motion for Judgment Upon the Agency Record (ECF No. 23) (hereinafter, "Def.'s Resp."), and to Defendant-Intervenor's, Triune Technofab Private Limited ("Triune"), Response to Plaintiff's Motion for Judgment on the Agency Record Pursuant to USCIT Rule 56.2 (ECF No. 26) (hereinafter, "Def.-Int.'s Resp."). For the reasons set forth in Plaintiff's opening brief (ECF Nos. 20, 21) and this Reply Brief, Plaintiff respectfully requests that this Court grant Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record and remand the U.S. Department of Commerce's (the "Department") determination for reconsideration consistent with Plaintiff's request for relief.

## **ARGUMENT**

## I.    **THE DEPARTMENT'S ACCEPTANCE OF A NON-PUBLIC FINANCIAL STATEMENT OBTAINED DIRECTLY FROM COMPANY OFFICIALS IS UNLAWFUL**

In the underlying investigation, the Department instructed interested parties to submit factual information, such as financial statements, for constructed value ("CV") profit and selling expenses calculations by October 2, 2023. Decision Memorandum for the Preliminary Negative Determination in the Less-Than-Fair-Value Investigation of Boltless Steel Shelving Units Prepackaged for Sale from India at 12 (Nov. 21, 2023) ("PDM") (P.R. 239).[1] Edsal and Triune submitted a total of nine sets of financial statements. See Issues and Decision Memorandum for the Final Negative Determination in the Less-Than-Fair-Value Investigation of Boltless Steel Shelving Units Prepackaged for Sale from India at cmt. 1 (Apr. 12, 2024) ("IDM") (P.R. 287). Triune was unable to obtain a publicly available set of the contemporaneous financial statements

---

[1]    Documents in the administrative record are cited using the Public Record ("P.R.") or Confidential Record ("C.R.") number corresponding to the record documents identified in the Index to the Administrative Record filed with this Court on July 15, 2024 (ECF No. 16).

for TMTE Metal Tech Private Limited ("TMTE") by the deadline.  Yet, contrary to the Department's instructions, Triune submitted TMTE's financial statements that were obtained directly from TMTE company officials.  Defendant and Defendant-Intervenor maintain that (1) Triune's submission of TMTE's financial statements obtained directly from a TMTE official because they were not at the time publicly accessible satisfies the Department's public availability requirement, and (2) the Department's retroactive extension of the deadline for Triune to establish the public availability of TMTE's financial statement was lawful.

For the reasons explained in Edsal's opening brief and the additional reasons below, this Court should reject Defendant's and Defendant-Intervenor's arguments.  Triune failed to timely submit publicly available financial statements for TMTE, and the Department's retroactive extension of the deadline for Triune's untimely information after Edsal pointed out the non-public nature of TMTE's data is unlawful.  The record does not support the Department's finding that the version of TMTE's financial statements submitted by Triune were publicly available. Compelling principles of transparency, fairness, and accuracy, as well as the importance of the Department's deadlines, warrant the rejection of Defendant's and Defendant-Intervenor's arguments.

### A. Substantial Evidence Does Not Support the Department's Finding that TMTE's Financial Statements Were Publicly Available

#### 1. TMTE's Financial Statements Were Not Publicly Available By Virtue of Triune Submitting Them

Defendant and Defendant-Intervenor argue that the Department lawfully concluded that the TMTE financial statements were publicly available because (1) they were submitted on the record and supplemented with information in Triune's October 23rd submission purporting to show the data is publicly accessible, and (2) the Department does not require information to be from a corporate registry, government website, public company website, or published to be

considered public.  See Def.'s Resp. at 20-22; Def.-Int.'s Resp. at 8-9.  Both arguments are wrong.

In the underlying investigation, Triune obtained TMTE's financial statements directly from a TMTE official and claimed they were publicly available because a TMTE official provided Triune a letter agreeing to have the financial statements placed on the record.  See Letter from Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP to Sec'y of Commerce Pertaining to Triune CV Profit Submission at 2, Exs. CV-8(c), CV-8(e) (hereinafter, "Triune CV Profit Comments") (P.R. 177-92).  On October 2, 2023, the financial statements had not been filed with the Indian Ministry of Corporate Affairs ("MCA") or otherwise been made available to the public.  See id. at 2 (P.R. 177-92); Letter from Kelley Drye & Warren LLP to Sec'y of Commerce Pertaining to Petitioner Rebuttal CV Cmts at 4 (hereinafter, "Edsal Rebuttal CV Profit Comments") (P.R. 218); Letter from Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP to Sec'y of Commerce Pertaining to Triune Submission of Factual Information at 1, Ex. 1 (P.R. 220-22).

Thus, TMTE's financial statements were not, contrary to Defendant's and Defendant-Intervenor's arguments, "accessible to the public on the date of its submission."  See Def.'s Resp. at 21-22.  Triune's submission of the non-public data on the record of this case does not make the document publicly available.  Indeed, the U.S. Court of International Trade has rejected the argument that surrogate information could be considered "publicly available" by virtue of being submitted to the record:

> The Chinese Producers also argue, in essence, that—even if the price quotes were not otherwise "publicly available" information—the domestic Indian box prices became publicly available information when the Chinese Producers submitted them for inclusion in the administrative record here. . . . As they say in the South, however, "that dog won't hunt."  By such logic, virtually

> *anything* (including, for example, the privately-commissioned study at issue in *Writing Instrument Manufacturers*) could be transformed into publicly available information by the alchemy of placing the information on the record of an administrative proceeding.

Zhengzhou Harmoni Spice Co. v. United States, 617 F. Supp. 2d 1281, 1313 n.39 (Ct. Int'l Trade 2009) (emphasis added) (citing Writing Instrument Mfrs. Assoc. v. U.S. Dep't Com., 984 F. Supp. 629, 644 (Ct. Int'l Trade 1997)).  Similarly, the court rejected the same argument raised in another case and reaffirmed that information is <u>not</u> "publicly available" by virtue of being submitted on the record.  See Taian Ziyang Food Co. v. United States, 637 F. Supp. 2d 1093, 1147 n.58 (Ct. Int'l Trade 2009).

Defendant and Defendant-Intervenor also mischaracterize the record by claiming Triune included "a signed declaration" from a TMTE official purporting to consent to make the financial statements public when, in fact, the document at issue was merely a letter.  See Def.'s Resp. at 22; Def.-Int.'s Resp. at 11; Triune CV Profit Comments at 2, Ex. CV-8(e) (P.R. 177-92) ("Please see a letter from TMTE at Exhibit CV-8(e), agreeing to place on record this financial statement as a public document.").  The opinion of a TMTE official has no bearing on whether TMTE's financial statements were publicly available and does not overcome the fact that TMTE's financial statements were not accessible to Edsal or the public through the MCA website or otherwise by the October 2nd deadline for CV profit information.  Thus, regardless of whether financial statements need or need not be on any specific company, government, or subscription website or be "published" in order to be considered "publicly available," the mere fact that Triune submitted the financial statements on the record with an unsworn, unverified letter did not establish them as being publicly available on October 2, 2023.

Defendant further asserts that if "this Court accepts certain arguments regarding the public availability of TMTE's financial statement, those arguments do not render the financial statement less preferable, when weighed against {the} factors and Commerce's concerns about the viability of the other surrogate financial statements." Def.'s Resp. at 26. This argument is misplaced. While the Department considers four factors that Defendant refers to when assessing sources for CV profit under 19 U.S.C. § 1677b(e)(2)(B)(iii), those considerations are distinct from the Department's preference and practice of using publicly available financial data for CV profit calculations. See, e.g., Letter from Kelley Drye & Warren LLP to Sec'y of Commerce Pertaining to Petitioner Submission of CV Profit and Selling Expenses at 2-5 (P.R. 175-76). If this Court determines that the Department's public availability finding is unsupported by substantial evidence or not in accordance with law, on remand, the Department should decline to use the TMTE financial statements, as Edsal previously argued and consistent with the Steel Grating from China remand results, where the Department concluded that financial statements were not useable because they were not publicly available. See Edsal Rebuttal CV Profit Comments at 4-8 (P.R. 218); Brief from Kelley Drye & Warren LLP to Sec'y of Commerce Pertaining to Petitioner Case Brief at 3-10 (hereinafter, "Petitioner's Case Brief") (P.R. 279); Final Results of Redetermination Pursuant to Court Remand; Yantai Xinke Steel Structure Co. v. United States, Ct. No. 10-00240 (Dep't Commerce Jan. 18, 2013) (ECF No. 83) at 6 n.15, 22-23, aff'd, 38 C.I.T. 478, 491-97 (2014).

> **2.**   **The Department's Acceptance of the TMTE Financial Statements as "Publicly Available" Undermines Important Principles of Transparency, Fairness, and Accuracy**

Defendant and Defendant-Intervenor attempt to diminish and distinguish the principles supporting the Department's practice of using publicly available data to value CV profit and selling expenses and the agency's disfavoring of non-public information obtained from a private

source.  <u>See</u> Def.'s Resp. at 24-25; Def.-Int.'s Resp. at 12-13.  Contrary to their claims, the reasoning and principles explained in <u>Rail Tie Wire from China</u> and elsewhere regarding when information is publicly available are not limited to privately obtained price quotes – the Department has applied the same reasoning for non-publicly available import statistics and freight data – and these principles apply with equal force in this instance.  <u>See</u>, <u>e.g.</u>, <u>Steel Propane Cylinders From the People's Republic of China: Preliminary Affirmative Determination of Sales at Less Than Fair Value</u>, 83 Fed. Reg. 66,675 (Dep't Commerce Dec. 27, 2018), and accompanying <u>Decision Memorandum for the Preliminary Determination in the Less-Than-Fair-Value Investigation of Steel Propane Cylinders from the People's Republic of China</u> at 11 (Dec. 18, 2018), <u>unchanged</u> <u>in</u> <u>Steel Propane Cylinders From the People's Republic of China: Final Determination of Sales at Less Than Fair Value</u>, 84 Fed. Reg. 29,161 (Dep't Commerce June 21, 2019).

The core of the Department's analysis of whether information is "publicly available" is whether the information was accessible to the public.  <u>See</u>, <u>e.g.</u>, <u>Final Determination of Sales at Less Than Fair Value: Prestressed Concrete Steel Rail Tie Wire From the People's Republic of China</u>, 79 Fed. Reg. 25,572 (Dep't Commerce May 5, 2014) ("<u>Rail Tie Wire from China</u>"), and accompanying <u>Issues and Decision Memorandum for the Final Determination of Sales at Less Than Fair Value</u> at cmt. 6 (Apr. 28, 2014).  When such data are equally accessible to all parties, the Department can ensure that information collection concerns and risks of conflicts of interest are avoided.  Indeed, as the Department explained in <u>Rail Tie Wire from China</u>, when "an interested party may need to conduct private correspondence with the information source," the "conditions under which the information is obtained" may be concealed, and the Department "cannot be certain" that either the agency or other parties would have been able to obtain the

same information.  See id.  Conflicts of interest and potential for data manipulation could also exist.  See id.  Parties would also be incentivized to pick and choose among the data from private companies that they engage and negotiate with solely for the purpose of procuring and submitting to the Department only the data most favorable to their own self interests.  That would entirely undermine the Department's aim and obligation to calculate accurate dumping margins and achieve a fair comparison between a respondent's data and a fair sales price of the particular merchandise.  See Mid Continent Steel & Wire, Inc. v. United States, 941 F.3d 530, 542 (Fed. Cir. 2019) (hereinafter, "Mid Continent III"); 19 U.S.C. § 1677b(a), (e)(2)(B)(iii).

Accordingly, the Department has applied the important principles and reasoning explained in Rail Tie Wire from China in other proceedings when assessing the public availability of information.  See, e.g., Certain Polyethylene Terephthalate Resin From the People's Republic of China: Final Determination of Sales at Less Than Fair Value, 81 Fed. Reg. 13,331 (Dep't Commerce Mar. 14, 2016) (hereinafter, "PET Resin from China"), and accompanying Issues and Decision Memorandum for the Final Determination of the Antidumping Duty Investigation of Certain Polyethylene Terephthalate Resin from the People's Republic of China at cmt. 1 (Mar. 4, 2016) (explaining with respect to reported prices paid – not price quotes – documented by a company and provided directly to a respondent, "{i}t is unclear what specific information was requested of PCI by Xingyu, whether the data were publicly available, or even if the data existed prior to Xingyu's undocumented request for it," and highlighting, among other concerns, the absence of "documentation of its actual request to PCI for data, or the types of limitations or restrictions that may have been included with the request").

Here, as in Rail Tie Wire from China, PET Resin from China, and the cases cited and explained in Edsal's opening brief, the record presents compelling evidence detracting from the

Department's public availability finding.  Pl.'s R. 56.2 Br. at 18-26; see, e.g., Best Mattresses Int'l Co. v. United States, 622 F. Supp. 3d 1347, 1389-95 (Ct. Int'l Trade 2023); Since Hardware (Guangzhou) Co. v. United States, 911 F. Supp. 2d 1362, 1366-69 (Ct. Int'l Trade 2013) ("Since Hardware II").   As in prior instances when the Department or the courts faulted a party's gathering and submitting of privately obtained information, the record here lacks any evidence of Triune's actual request of TMTE's financial statements or follow-up communication between Triune and TMTE.  As a private company, TMTE is not a neutral source of information and is thus meaningfully different from and less reliable than other sources that meet the "public availability" requitement, such as government websites and publicly accessible company websites.   Further, in attempting to justify the Department's findings and distinguish the authorities cited by Edsal, Defendant is forced to contend that Edsal raises the "unsupported assumption" that TMTE's financial statements on the record might differ from its financial statements as purportedly retrievable from the MCA website.  See Def.'s Resp. at 24.  Far from an "unsupported assumption," however, Edsal simply pointed out that the Department's opening the door to the acceptance and reliance on privately obtained data that is initially inaccessible and only later in the proceeding claimed to suddenly be publicly available prevents and undermines fair and equal scrutiny of the record evidence by all parties, raising significant potential for inaccuracy, data manipulation, and other problems.

In sum, the Department's conclusion that TMTE's privately obtained financial statements procured directly from TMTE by Triune are publicly available risks condoning and inviting gamesmanship by parties in future proceedings.

### 3.    Edsal Attested to its Inability to Obtain the TMTE Financial Statements and All Parties Acknowledge that the Financial Statements Were Not Accessible Through the MCA Website

Defendant and Defendant-Intervenor attempt to distinguish <u>Since Hardware</u> by asserting that the facts there "are inapposite" because "the parties argued *during the administrative proceeding* that they were not able to access financial statements from the MCA registrar," whereas "Edsal made no such argument here."  Def.'s Resp. at 23; <u>see</u> <u>also</u> Def.-Int.'s Resp. at 11; <u>Since Hardware (Guangzhou) Co. v. United States</u>, Consol. Ct. No. 11-00106 (ECF No. 81), 2012 WL 11802604 at *2-3 (Ct. Int'l Trade Aug. 14, 2012) (hereinafter, "<u>Since Hardware I</u>"). That argument overlooks that Edsal did in fact attest to its inability to locate TMTE's financial statements in the public domain.  Edsal Rebuttal CV Profit Comments at 4 (P.R. 218).  As discussed in Section I.B., all parties agree that TMTE's financial statements were unavailable through the MCA website on the October 2nd deadline for CV profit information.  And as Edsal explained during the proceeding and in Section I.A.1. above, TMTE's financial statements were not publicly availably by virtue of being submitted on the record.  <u>Id.</u> at 2-8 (P.R. 218).  Thus, contrary to Defendant's argument, Triune – and not Edsal – failed to satisfy its burden of developing the administrative record.  <u>See</u> Def.'s Resp. at 23-24.

Further, the mere fact that Edsal did not submit rebuttal factual information regarding the public availability of TMTE's financial statements after the Department accepted Triune's additional CV profit information does not diminish the fact that the Department unjustifiably permitted Triune (and not Edsal) to supplement its initial CV profit information in a one-sided and unlawful manner.  <u>See</u> <u>Since Hardware I</u>, 2012 WL 11802604 at *2-3 (faulting the Department's "apparently one-sided handling of the issue of the public availability" of CV profit financial statements).  Edsal was under no obligation to attempt to replicate Triune's direct correspondence and retrieval of otherwise private financial statements from a private company.

Indeed, as explained in Section I.A.2. above, the Department and the courts have every reason to strongly disfavor and resist concealed side agreements and private arrangements between interested parties and external, private companies.

In addition, Defendant misconstrues Edsal's reliance on Since Hardware by asserting that "Edsal also states that TMTE's financial statement is unreliable because it has not been used in a prior proceeding." Def.'s Resp. at 25-26. Edsal made no such argument. Instead, Edsal pointed out that the public availability justifications for financial statements that were directly obtained from a private company in that case (they were relied on and submitted on the records in numerous other proceedings and their provenance had never been called into question) are not present here. See Pl.'s R. 56.2 Br. at 25-26; Since Hardware (Guangzhou) Co. v. United States, 977 F. Supp. 2d 1347, 1351-53 (Ct. Int'l Trade 2014) ("Since Hardware III"). Further, while Defendant asserts that "Edsal points to *no other proceeding*, where Commerce has relied on its proposed financial statements from Mekins," this assertion too misses the point, and Edsal notes that the Department has in fact considered and/or relied on Mekins' financial data in at least two prior proceedings. See Certain Steel Grating From the People's Republic of China: Preliminary Determination of Sales at Less Than Fair Value and Postponement of Final Determination, 75 Fed. Reg. 847, 854-55 (Dep't Commerce Jan. 6, 2010) (preliminarily using Mekins' financial statements), modified and aff'd upon remand, Yantai Xinke Steel Structure Co. v. United States, 38 C.I.T. 478, 498-506 (2014) (sustaining the Department's use of alternative financial statements, including financial statements of companies that received subsidies and countervailable subsidies); Certain Kitchen Appliance Shelving and Racks From the People's Republic of China: Final Results and Partial Rescission of First Antidumping Duty Administrative Review, 77 Fed. Reg. 21,734 (Dep't Commerce Apr. 11, 2012), and

accompanying <u>Issues and Decision Memorandum</u> at cmt. 2 (Apr. 4, 2012) ("<u>Kitchen Shelving</u> <u>and Racks IDM</u>") (using Mekins' financial statements, along with others, despite evidence that Mekins received subsidies during the period of review).

### B.    The Department's Retroactive Extension of the Deadline for Affirmative CV Profit Information Is Unlawful

Defendant attempts to defend the retroactive extension of the deadline for interested parties to submit affirmative CV profit information – an extension that was afforded to Triune only – by asserting that the Department has broad discretionary authority to establish and enforce its own procedures and deadlines.  <u>See</u> Def.'s Resp. at 13.  Defendant fails to acknowledge, however, that in the very decision it relies on, this Court stressed that the Department "must have a reasonable basis" for any departure from its ordinary establishment and enforcement of deadlines.  <u>See</u> <u>Cambria Co. v. United States</u>, 705 F. Supp. 3d 1369, 1377 (Ct. Int'l Trade 2024); <u>id.</u> at 1378-79 (holding that the Department's enforcement of its deadline "was unreasonable and unsupported by substantial evidence, constituting an abuse of discretion").  In this instance, the ordinary and stated deadlines for affirmative CV profit information – for all parties – was October 2, 2023.  <u>PDM</u> at 12 (P.R. 239).  As explained in Edsal's opening brief and further explained below, the Department unreasonably (1) departed from the October 2nd deadline in a manner inconsistent with its regulations and practice, (2) permitted Triune an unwarranted second opportunity to submit affirmative CV profit information, and (3) contradicted its previous rejections of attempts to supplement and cure initially deficient CV profit information.

Defendant and Defendant-Intervenor argue that the Department's retroactive extension of the deadline for affirmative CV profit information is lawful because there was "good cause" to do so.  <u>See</u> Def.'s Resp. at 14-19; Def.-Int.'s Resp. at 2-7.  Defendant asserts that "good cause" can be established under the Department's regulations upon articulating a "legally sufficient

reason." See Def.'s Resp. at 17-18. Defendant's apparent novel regulatory interpretation based on "other statutory contexts" is unavailing for several reasons.

First, contrary to Defendant's attempted reliance on 19 C.F.R. § 351.302(b), that regulation did not authorize the Department to accept Triune's October 23rd submission of new information attempting to demonstrate that the TMTE financial statements submitted on October 2nd were publicly available. See Def.'s Resp. at 13-15, 19; Memo from USDOC to File Pertaining to Interested Parties Acceptance and Opportunity to Rebut at 2, n.6 (hereinafter, "CV Profit Info Acceptance") (P.R. 233). That regulation applies to a "time limit established by this part," meaning part 351 of Title 19 of the Code of Federal Regulations. See 19 C.F.R. § 351.302(b). Indeed, Defendant's own argument supports this interpretation of the regulation. See Def.'s Resp. at 14-15 (citing Mitsubishi Polyester Film, Inc. v. United States, 228 F. Supp. 3d 1359, 1381 (Ct. Int'l Trade 2017) for the proposition that "Commerce may, 'for good cause,' extend any time limit within Part 351 of Title 19"). The Department's regulations did not establish the October 2nd deadline for CV profit information. Instead, the Department established, and later extended, the deadline in its September 6, 2023 request for CV profit information from interested parties. See PDM at 12 (P.R. 239). Moreover, the courts have stressed that the Department's authority to extend a deadline under 19 C.F.R. § 351.302(b) is predicated on a determination that a party requested an extension of the deadline, and Triune did not request that the October 2nd deadline be further extended. Dongtai Peak Honey Indus. Co. v. United States, 777 F.3d 1343, 1351-55 (Fed. Cir. 2015); Tau-Ken Temir LLP v. United States, 587 F. Supp. 3d 1346, 1351 (Ct. Int'l Trade 2022); Bebitz Flanges Works Priv. Ltd. v. United States, 433 F. Supp. 3d 1297, 1303-04 (Ct. Int'l Trade 2020). Further, Defendant mischaracterizes and fails to contend with Plaintiff's explanation that the Department's own

Final Rule stipulates that "{o}nly if the Department determines that {a} party has demonstrated that extraordinary circumstances exist will the Department then consider whether the party has demonstrated that good cause exists for allowing an extension of the time limit pursuant to section 351.302(b)." Extension of Time Limits, 78 Fed. Reg. 57,790, 57,791 (Dep't Commerce Sept. 20, 2013). Contrary to Defendant's assertion, Edsal merely pointed out that *Triune* failed to demonstrate that extraordinary circumstances warranted the Department's retroactive extension of the deadline to submit additional CV profit information. See Pl.'s R. 56.2 Br. at 14. Edsal is not, therefore, asserting any "interpretation" that "would undermine Commerce's discretion to manage its own deadlines for submissions of factual information." See Def.'s Resp. at 17. To the contrary, Edsal is underscoring the need for observance of the Department's instructions and deadlines for CV profit information because the Department failed to enforce its instructions and deadlines in this instance.

Second, even if, arguendo, the extraordinary circumstances standard did not apply and even if Triune had (1) requested an extension of the October 2nd deadline and (2) attempted to show good cause, the record and agency precedent do not support finding that good cause existed. The Department's sole stated finding of "good cause" is the very deficiency in TMTE's financial statements that Edsal had timely raised in its rebuttal CV profit comments: that "**the information** placed on the record **was not available** on the due date for CV profit information." CV Profit Info Acceptance at 2 (emphasis added) (P.R. 233); see Def.'s Resp. at 14-15 ("TMTE's financial statement was **not accessible from the MCA on the day of the deadline for CV profit information**.") (emphasis added); Def.-Int.'s Resp. at 2-3, 6 (admitting the "supplemental MCA website information" submitted on October 23, 2023, "**did not exist**" by the October 2nd deadline); Edsal Rebuttal CV Profit Comments at 2-8 (P.R. 218). Had the

Department not retroactively (and unlawfully) extended the CV profit information deadline for Triune, the natural consequence of the unavailability of TMTE's financial statements in the public domain is (1) the recognition that TMTE's financial statements present a shortcoming by being not publicly available, and (2) the Department's use of other publicly available financial statements.  In sum, far from providing either Triune or the Department with "good cause" to retroactively permit Triune to supplement its October 2nd submission, the unavailability of information purporting to establish the public nature of TMTE's financial statements on October 2nd is a material and significant deficiency.

Next, Defendant argues that the acceptance of Triune's October 23rd submission of factual information was excusable because it "assist{ed} Commerce in its investigation" and was entirely fair because Edsal "was provided with the opportunity to rebut" the submission and had "full access to the financial statement."  Def.'s Resp. at 15-18.  That argument is unavailing for several reasons.[2]  Importantly, Defendant overlooks the fact that Edsal could not have anticipated that the Department would act contrary to its precedent and established deadlines for affirmative and rebuttal CV profit information by allowing Triune to supplement its affirmative CV profit submission after Edsal had timely rebutted the information.  In other words, only Triune and not Edsal was allowed to submit additional, affirmative CV profit information.  The Department's determination to allow Edsal to respond to Triune's second submission did not undo the Department's grant to Triune alone of an additional opportunity to meet a deadline that had since passed.  Further, Defendant's flawed reasoning lacks any coherent limiting principle, meaning the same logic could be used and exploited in future proceedings by parties seeking to submit

---

[2]    Defendant also overlooks that the Department had no less than nine financial statements on the record to consider for calculating CV profit, and thus, did not have any particular need for TMTE's financial statements.  See <u>IDM</u> at cmt. 1 (P.R. 287).

additional factual information when it suits them, thereby further undermining both the Department's proper enforcement of its deadlines and the agency's ability to timely analyze record evidence.  See Regulations Enhancing the Administration of the Antidumping and Countervailing Duty Trade Remedy Laws, 89 Fed. Reg. 101,694, 101,709 (Dep't Commerce Dec. 16, 2024) (eff. Jan. 15, 2025) (explaining the Department must analyze voluminous submissions and "has experienced a large increase in AD and CVD proceedings and orders which it must administer" within statutory deadlines, and for these reasons, requiring parties to submit factual information earlier in proceedings than previously permitted).

Further, Defendant failed to respond to Plaintiff's argument that the Department had previously rejected affirmative CV profit information submitted after the deadline as untimely and incapable of being submitted under the 30-day deadline that Triune invoked.  Certain Steel Nails From the Sultanate of Oman: Final Determination of Sales at Less Than Fair Value, 80 Fed. Reg. 28,972 (Dep't Commerce May 20, 2015) (hereinafter, "Steel Nails from Oman"), and accompanying Issues and Decision Memorandum for the Final Determination of Sales at Less Than Fair Value at cmt. 1 (May 13, 2015).  While Defendant-Intervenor attempts to distinguish Steel Nails from Oman by shifting the focus to the irrelevant differences in the information submitted, the Department's reasoning, repeated in Defendant-Intervenor's brief, in that case demonstrates that the 30-day deadline Triune attempted to rely on could not be used for submitting additional affirmative CV profit information:

> The Department established a deadline of October 31, 2014, for all parties to submit CV profit and selling expense information. . . . Further, under the Department's regulations, all parties were permitted to file new factual information up to 30 days prior to the preliminary determination (in this case, November 17, 2014) provided that they explained why that information did not meet the definition of the information provided in response to the Department's specific request for CV profit information.

Id.; see Def.-Int.'s Resp. at 5-6. The Department's refusal to enforce its procedures here in a manner similar to in Steel Nails from Oman is unlawful. In sum, the Department's acceptance of Triune's additional CV profit information weeks after the relevant deadline is unlawful.

## II.    THE DEPARTMENT UNLAWFULLY REFUSED TO CONSIDER MEKINS' FINANCIAL STATEMENTS

Defendant and Defendant-Intervenor failed to justify the Department's complete disregard of Mekins' financial statements. The mere presence of countervailable subsidies does not preclude the Department from using a company's financial statements for CV profit calculations, and the Department failed to fully analyze and compare the relative deficiencies and merits of the sources for CV profit data. Further, the Department unjustifiably deviated from its preference for using multiple sources of surrogate financial ratios. These failures prevented the Department from calculating a fair comparison between Triune's export price and normal value and constituted an unlawful refusal to consider important arguments and evidence detracting from the Final Determination. See 19 U.S.C. §§ 1677b(a), 1677f(i)(3)(a); Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951).

### A.    The Department's Outright Rejection of Mekins' Financial Statements Is Unlawful

Defendant and Defendant-Intervenor fail to contend with the central holding of the Mid Continent line of cases that while the presence of countervailable subsidies in a potential source of CV profit data is relevant to the Department's analysis, it does not render the source as unusable per se. See Mid Continent III, 941 F.3d at 542. Indeed, because the statute instructs the Department "to find a good proxy (or surrogate) for the profits that the respondent can be fairly expected to build into a fair sales price of the particular merchandise," the Department cannot and should not rule out a source for CV profit solely on the basis of the receipt of subsidies as the Department did here. Id. (citing 19 U.S.C. § 1677b(e)(2)(B)(iii)). The most

recent decision in the <u>Mid Continent</u> line of cases underscores the Department's incorrect approach here.

In the latest decision, the U.S. Court of Appeals for the Federal Circuit concluded that the Department had complied with the court's instruction for additional explanation and its holding that receipt of countervailable subsidies is relevant but not dispositive of a company's suitability for CV profit calculations. <u>Mid Continent Steel & Wire, Inc. v. United States</u>, 2025 WL 40344, at *2-3 (Fed. Cir. Jan. 7, 2025) (hereinafter, "<u>Mid Continent VI</u>"). After previously failing to address the size of the subsidy at issue, the court noted that, upon remand, "Commerce did note the size of the subsidy." <u>Id.</u> at *2. Notably, the court reasoned that the subsidy amount was "tiny relative to Sundram's total revenue for the period of investigation (about $336 million)," and "{t}he insignificance of the subsidy to any profit calculation means that . . . {i}t could not have affected the choice of Sundram" over a non-subsidized alternative surrogate company, Al Jazeera. <u>Id.</u> Thus, this latest <u>Mid Continent</u> decision and the facts and holdings of the line of cases as a whole, reaffirms that the size and distortive impact – if any – of subsidies matters, and that the Department is obligated to fully analyze and explain its analysis of the deficiencies of the sources for CV profit calculations. Indeed, Defendant even acknowledges that, in another case, <u>Building Systems de Mexico</u>, the Department lawfully used profit data that included countervailable subsidies because the plaintiff in that case "was unable to point to any evidence that the remission or duty drawback export subsidy **<u>distorted</u>** the constructed value" profit data. Def.'s Resp. at 32-33 (emphasis added); <u>Bldg. Sys. de Mexico, S.A. de C.V. v. United States</u>, 567 F. Supp. 3d 1306, 1311-12 (Ct. Int'l Trade 2022) (hereinafter, "<u>Building Systems de Mexico I</u>"). Edsal raised the same argument here, yet the Department disregarded the argument.

Further, the Department recently amended its regulations to clarify the information that the agency will consider in selecting financial statements to determine CV profit under 19 U.S.C. § 1677b(e)(2)(B)(iii) following the Mid Continent III decision.  See Regulations Enhancing the Administration of the Antidumping and Countervailing Duty Trade Remedy Laws, 89 Fed. Reg. 57,286, 57,306-07 (Dep't Commerce July 12, 2024) (hereinafter, "Proposed Regulatory Updates"); Regulations Enhancing the Administration of the Antidumping and Countervailing Duty Trade Remedy Laws, 89 Fed. Reg. 101,694, 101,717 (Dep't Commerce Dec. 16, 2024) (eff. Jan. 15, 2025) (hereinafter, "Final Regulatory Updates").  Notably, the Department acknowledged the Mid Continent III decision and declined the opportunity to codify any supposed practice of ruling out financial statements merely because they might indicate receipt of countervailable subsidies.  See Proposed Regulatory Updates, 89 Fed. Reg. at 57,307; Final Regulatory Updates, 89 Fed. Reg. at 101,717.  This comprehensive regulatory update undertaken in full awareness of Mid Continent III, therefore, further undermines the Department's sweeping rejection of Mekins' financial statements based on a factor the Department did even bother to mention or codify in its regulations.

Defendant attempts to downplay and distinguish Mid Continent by arguing that those decisions hinged on a "scope of factual issues" not present here and by incorrectly claiming that, in that instance, the Department was effectively forced to rely on one of the financial statements with countervailable subsidies.  See Def.'s Resp. at 28-30.  Defendant fails to acknowledge, however, that the Department did in fact compare many if not all of the financial statements in that case upon remand, including a comparison of the comparability of the companies' products to the respondents' products.  See Mid Continent VI, 2025 WL 40344, at *2; Final Results of Redetermination Pursuant to Court Remand; Mid Continent Steel & Wire Inc. v. United States,

Consol. Ct. No. 15-00214 (Dep't Commerce Apr. 12, 2022) at 15-16 (ECF No. 150) (explaining "Hitech and Sundram's . . . respective profits are still based on production and sale of comparable merchandise, unlike the other {financial statements} on the record").

Thus, Edsal is not, as Defendant claims, asking the Department to "weigh a financial statement with subsidies on an equal basis to one without subsidies."  See Def.'s Resp. at 29. Rather, Edsal faults the Department for failing to consider Mekins' financial statements at all, and for ignoring Edsal's explanations that Mekins' financial data is actually: (1) similar to Triune's subsidized financial data, and (2) not distorted at all because any subsidy amounts for Mekins are tiny.  See Mid Continent III, 941 F.3d at 544-45 (noting "{t}he size of any subsidies would obviously be relevant, as would the comparative deficiencies of the alternative sources"). The Department refused to consider these arguments – even asserting that if Triune had received subsidies, it "would not affect our selection of the financial statements" (IDM at cmt. 1 (P.R. 287)), contrary to its obligation to do so.  See 19 U.S.C. § 1677f(i)(3)(a); SKF USA v. United States, 630 F.3d 1365, 1374 (Fed. Cir. 2011) ("Commerce has an 'obligation' to address important factors raised by comments from petitioners and respondents.").

Next, Defendant and Defendant-Intervenor even attempt to use an argument that the Department itself rejected in a prior proceeding: specifically, that the Department will not use financial statements with evidence of countervailable subsidies when the record includes other data without subsidies.  See Def.'s Resp. at 31; Def.-Int.'s Resp. at 16-17.  The Department flatly rejected this argument, concluding – as Edsal does here – that "the Department must make a case-specific analysis regarding the presence of countervailable subsidies."  Final Results of Redetermination Pursuant to Court Order; *Golden Dragon Precise Copper Tube Group, Inc., et al. v. United States*, Ct. No. 14-00116, at 20-26 (Dep't Commerce Mar. 21, 2016) (ECF No. 89)

(emphasis added), aff'd, Golden Dragon Precise Copper Tube Grp., Inc. v. United States, 2016 WL 4442163 at *3 (Ct. Int'l Trade Aug. 23, 2016); see id. at 22 ("{T}he Department may, based upon its evaluation of the record evidence, opt to use a financial statement that references a subsidy program even when the record contains useable financial statements that do not reference a subsidy program."). As explained by the Department in the Golden Dragon remand results, the Department must engage with financial statements that indicate countervailable subsidies before simply moving on to other sources. See id. at 20-26.

Moreover, the Department has also recently relied on the financial statements of a company that received countervailable subsidies instead of a company's financial statements that showed no evidence of subsidies upon finding the subsidized company's products to be more comparable to the respondent's products and, notably, finding "no basis to believe or suspect that the subsidy benefit from tax exemption distorted the ratios derived from cost, expenses, and profit before tax." Certain Paper Plates from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part, 90 Fed. Reg. 8,271 (Dep't Commerce Jan. 28, 2025), and accompanying Issues and Decision Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value Investigation of Certain Paper Plates from the People's Republic of China and Final Affirmative Determination of Critical Circumstances, in Part at cmt. 4 (Jan. 21, 2025).

In sum, the Department's outright rejection of Mekins' financial statements is not supported by substantial evidence and is not in accordance with law.

### B.    The Department's Failure to Follow its Preference for Relying on Multiple Sources for CV Profit Calculations Is Unlawful

Defendant's attempt to justify the refusal to average TMTE's and Mekins' financial data rests on the conclusory assertion that Mekins' data are distorted. See Def.'s Resp. at 34. At no

point during the proceeding did the Department explain how Mekins' profit data are distorted, let alone show that they are heavily distorted and incapable of being adjusted.  Further, Mekins' data were not distorted or unusable given (1) the small subsidy amounts at issue, and (2) the fact that Triune itself received countervailable subsidies and operates in a countervailable special economic zone.  Thus, contrary to Defendant's contentions, Mekins' financial data are in fact "a good proxy (or surrogate) for the profits that can be fairly expected" to be used to arrive at a fair sales price for the subject merchandise.  Mid Continent III, 941 F.3d at 542; see Building Systems de Mexico I, 567 F. Supp. 3d at 1311-12 ("Commerce must consider whether the data it uses to calculate constructed value profit results in a fair comparison between normal value and export price.").

Moreover, as Defendant pointed out, Triune had also urged the Department to use more than one source of data for CV profit calculations "to yield average ratios that are representative of a broad market average."  Def.'s Resp. at 5; Letter from Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP to Sec'y of Commerce Pertaining to Triune Pre-Prelim Comments at 11 (Oct. 23, 2023) (P.R. 226).  Edsal similarly explained that by using more than one company's financial statements, the Department would end up with a more representative result and normalize any potential distortions by relying on a single company's data.  See Petitioner's Case Brief at 14-15 (P.R. 279).  The Department failed to adequately address these arguments.

Next, Defendant and Defendant-Intervenor attempt to defend the refusal to use an average of financial data by arguing that Edsal had not established that the Department had averaged subsidized financial data with other data in other proceedings.  See Def.'s Resp. at 34; Def.-Int.'s Resp. at 17.  The Department has in fact used an average of subsidized and unsubsidized surrogate financial data in many other proceedings, including in recent instances.

See, e.g., Certain Paper Plates from the Socialist Republic of Vietnam: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part, 90 Fed. Reg. 8,265 (Dep't Commerce Jan. 28, 2025), and accompanying Issues and Decision Memorandum for the Final Affirmative Determination of Sales at Less Than Fair Value of Certain Paper Plates from the Socialist Republic of Vietnam at cmt. 2 (Jan. 21, 2025); Kitchen Shelving and Racks IDM at cmt. 2; Certain New Pneumatic Off-The-Road Tires from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value and Partial Affirmative Determination of Critical Circumstances, 73 Fed. Reg. 40,485 (Dep't Commerce July 15, 2008), and accompanying Issues and Decision Memorandum at cmt. 17A (July 7, 2008).

Moreover, this argument is hardly a defense of the Department's refusal to average in this instance because Triune itself received subsidies. Pl.'s R. 56.2 Br. at 33-34. Therefore, using Mekins' financial data is entirely appropriate and consistent with the Department's objective to arrive at "a good proxy (or surrogate) for the profits that can be fairly expected" to be used to arrive at a fair sales price for the subject merchandise. See Mid Continent III, 941 F.3d at 542; Building Systems de Mexico I, 567 F. Supp. 3d at 1311-12.

Lastly, Defendant-Intervenor argues that the Department was justified in refusing to average Mekins' financial data with TMTE's because, according to Defendant-Intervenor, Mekins produces dissimilar products and derives less of its profits from its home market sales than does TMTE. See Def.-Int.'s Resp. at 18-21. These claims were not, however, articulated by the Department in rejecting Mekins' financial data and are, thus, a post hoc rationalization. Further, Edsal has already rebutted those arguments and thoroughly explained that Mekins produces merchandise in the same general category and for the same uses as the subject

merchandise and that Mekins' relevant share of profits from its home market sales does not render the company's data unsuitable for CV profit calculations.  See, e.g., Letter from Kelley Drye & Warren LLP to Sec'y of Commerce Pertaining to Petitioner Submission of CV Profit and Selling Expenses at 4-5 (P.R. 175-76); Letter from Kelley Drye & Warren LLP to Sec'y of Commerce Pertaining Petitioner Pre-Prelim Cmts at 9-11 (P.R. 229).   Thus, the Final Determination is not supported by substantial evidence and is not in accordance with law.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully urges this Court to determine that the Department's Final Determination is not supported by substantial evidence and is otherwise not in accordance with law and remand the Final Determination to the Department with instructions to correct the errors set forth above and in Plaintiff's Rule 56.2 Brief.

Respectfully submitted,

/s/ Joshua R. Morey

KATHLEEN W. CANNON
JOSHUA R. MOREY
MATTHEW T. MARTIN
KELLEY DRYE & WARREN LLP
3050 K Street NW, Suite 400
Washington, DC  20007
(202) 342-8867
kcannon@kelleydrye.com
jmorey@kelleydrye.com
mmartin@kelleydrye.com

Counsel to Plaintiff Edsal Manufacturing Co., Ltd.

Dated: February 18, 2025

**CERTIFICATE OF COMPLIANCE**
**WITH COURT OF INTERNATIONAL TRADE**
**STANDARD CHAMBERS PROCEDURES**

Pursuant to this Court's Order dated January 6, 2025 (ECF No. 25), setting the word limitation for Plaintiff Edsal Manufacturing Co., Ltd.'s Reply Brief to 7,000 words, counsel for Plaintiff certifies that the attached Reply Brief contains 6,976 words, including footnotes. The word count certification is made in reliance on the word-count feature contained in Microsoft 365 – Enterprise.

s/ Joshua R. Morey

KATHLEEN W. CANNON
JOSHUA R. MOREY
MATTHEW T. MARTIN
KELLEY DRYE & WARREN LLP
3050 K Street NW, Suite 400
Washington, DC  20007
(202) 342-8867
kcannon@kelleydrye.com
jmorey@kelleydrye.com
mmartin@kelleydrye.com

Counsel to Plaintiff Edsal Manufacturing Co., Ltd.

Dated: February 18, 2025