Slip Op. 25-69

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| EDSAL MANUFACTURING CO., LTD.,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>    and<br><br>TRIUNE TECHNOFAB PRIVATE<br>LIMITED,<br><br>    Defendant-Intervenor. | Before: Mark A. Barnett, Chief Judge<br>Court No. 24-00087 |

## <u>OPINION</u>

[Sustaining the U.S. Department of Commerce's negative final determination in the less-than-fair value investigation of boltless steel shelving units prepackaged for sale from India.]

Dated: June 3, 2025

<u>Matthew T. Martin</u> and <u>Joshua R. Morey</u>, Kelley Drye & Warren LLP, of Washington, DC, argued for Plaintiff Edsal Manufacturing Company, Limited. On the brief was <u>Kathleen W. Cannon</u>.

<u>An Hoang</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for Defendant United States. On the brief were <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General, <u>Patricia M. McCarthy</u>, Director, and <u>Franklin E. White, Jr.</u>, Assistant Director. Of counsel on the brief was <u>K. Garrett Kays</u>, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

<u>Dharmendra N. Choudhary</u>, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of Washington, DC, argued for Defendant-Intervenor Triune Technofab Private Limited. On the brief were <u>Ned H. Marshak</u> and <u>Jordan C. Kahn</u>.

Barnett, Chief Judge:  Plaintiff Edsal Manufacturing Co., Ltd., ("Plaintiff" or

"Edsal") challenges the U.S. Department of Commerce's ("Commerce" or "the agency")

final negative determination in the less-than-fair-value investigation of boltless steel

shelving units from India.  *Boltless Steel Shelving Units Prepackaged for Sale From*

*India*, 89 Fed. Reg. 28,746 (Dep't Commerce Apr. 19, 2024) (final negative

determination of sales at less than fair value) ("*Final Determination*"), ECF No. 16-4,

and accompanying Issues and Decision Mem., A-533-914 (Apr. 12, 2024) ("I&D Mem."),

ECF No. 16-5.[1]  For the reasons discussed below, the court denies Plaintiff's motion for

judgment on the agency record and sustains Commerce's determination.

BACKGROUND

Based on a petition from Edsal, Commerce initiated an investigation to determine

whether boltless steel shelving units from India, among other countries, were being or

were likely to be sold in the United States at less than fair value.  *Boltless Steel*

*Shelving Units Prepackaged for Sale From India, Malaysia, Taiwan, Thailand and the*

*Socialist Republic of Vietnam*, 88 Fed. Reg. 32,188 (Dep't Commerce May 19, 2023)

(initiation of less-than-fair-value investigations).  Commerce selected Triune Technofab

Private Limited ("Triune") as a mandatory respondent for individual examination.

*Boltless Steel Shelving Units Prepackaged for Sale From India*, 88 Fed. Reg. 83,395

---

[1] The administrative record filed in connection with the *Final Determination* is divided
into a Public Administrative Record ("PR"), ECF No. 16-2, and a Confidential
Administrative Record ("CR"), ECF No. 16-1.  Parties submitted joint appendices
containing record documents cited in their briefs.  Confid. J.A. ("CJA"), ECF No. 28;
Public J.A., ECF No. 29.  The court references the confidential version of the relevant
record documents, unless otherwise specified.

(Dep't Commerce Nov. 29, 2023) (preliminary negative determination of sales at less than fair value and postponement of final determination) ("*Prelim. Determination*"), and accompanying Prelim. Decision Mem. (Nov. 21, 2023) ("Prelim. Mem."), PR 239, CJA Tab 21.

For this investigation, because Triune did not have viable home or third-country markets, Commerce determined normal value based on constructed value.  I&D Mem. at 4.  Usually, to determine if subject merchandise is being sold or is likely to be sold at less than fair value, Commerce compares the export price or constructed export price with a normal value, namely, "the price at which the foreign like product is first sold . . . for consumption in the exporting country."  19 U.S.C. § 1677b(a)(1)(B)(i).  Commerce may, however, use a constructed value ("CV") as the normal value.  19 U.S.C. § 1677b(a)(4).  The constructed value is based on the respondent's cost of production, selling expenses, and profit for the merchandise at issue.  *Id*. § 1677b(e).  In this investigation, because Triune did not have viable home or third-country markets from which CV profit could be determined, Commerce invited interested parties to submit financial statements of companies from which the agency could determine CV profit.  Req. for Constructed Value Profit and Selling Expense Cmts. and Info. (Sept. 6, 2023) 1–2, PR 140, CJA Tab 6.  Commerce instructed parties to "confirm that the source [for any financial statements] is publicly available."  *Id*. at 2.  Submissions were ultimately due by October 2, 2023, and rebuttal comments and information were due by October 10, 2023.  Prelim. Mem.  at 12.

On October 2, 2023, both Edsal and Triune submitted financial statements. Edsal submitted financial statements for two companies, including Mekins Industries Private Limited ("Mekins"), an Indian producer of comparable merchandise.  Pet'r's Submission Regarding Constructed Value Profit and Selling Expenses (Oct. 2, 2023), PR 175–76, CJA Tab 9.  Triune submitted financial statements for seven companies, including TMTE Metal Tech Private Limited ("TMTE"), also an Indian producer of comparable merchandise.  Triune's Submission of Factual Info. on CV Profit and ISE (Oct. 2, 2023) ("Triune CV Submission"), PR 177–92, CJA Tab 10.  Six of the seven sets of statements were "directly downloaded from the [Government of India's Ministry of Corporate Affairs] website after payment of applicable fees."  *Id.* at 2.[2]  TMTE's financial statements, on the other hand, were provided to Triune by TMTE's owner, who agreed "to provide these financial statements to anyone as [a] public document."  *Id.*, Ex. CV-8(e); *see also id.* at 2 (describing the owner also as having "agree[d] to place on record this financial statement as a public document").  Triune explained that these statements were for the fiscal year 2022–2023 and the filing deadline for the Ministry of Corporate Affairs was not until November 30, 2023.  *Id.* at 2.  On October 10, 2023, Edsal objected to the use of TMTE's financial statements.  Pet'r's Rebuttal Cmts. Pertaining to Triune's Submission of Factual Info. for CV Profit and Selling Expenses (Oct. 10, 2023) ("Edsal Rebuttal Cmts."), PR 218, CJA Tab 13.

---

[2] The only financial statements at issue in this litigation are those of TMTE and Mekins. Commerce's decision not to rely on the other submitted financial statements is not being challenged.

On October 23, 2023, Triune submitted what it labeled "certain factual information."  Triune's Submission of 30-Day Factual Info. re: TMTE Fin.'s Pub. Availability (Oct. 23, 2023) ("Triune Public Availability Submission") at 1, PR 225, CJA Tab 15.  The information "support[ed] the fact that TMTE's 2022–23 financial statement[s] submitted . . . on October 2, 2023 [are] publicly available."  *Id.*  Triune averred that it was submitting the information "in accordance with 19 C.F.R. § 351.102(b)(21)(v) and 19 C.F.R. § 351.301(c)(5)."  *Id.* at 2.  As relevant here, the latter regulation sets a deadline for information described in the former regulation of "30 days before the scheduled date of the preliminary determination in an investigation."  19 C.F.R. § 351.301(c)(5).

On October 27, 2023, Edsal requested that Commerce reject Triune's "untimely new factual information."  Pet'r's Req. to Reject Triune's Untimely Submission of New Factual Info. (Oct. 27, 2023) at 1, PR 228, CJA Tab 17.  Edsal argued that the information fell under 19 C.F.R. § 351.102(b)(21)(ii) and not subsection (b)(21)(v), that Triune's reliance on 19 C.F.R. § 351.301(c)(5) was wrong, and that, therefore, the submission was untimely.  *Id.* at 2–3.  Triune opposed Edsal's request.  Triune's Opp'n to Pet'r's Req. to Reject Triune's 30-Day New Factual Info. (Nov. 2, 2023), PR 230, CJA Tab 19.

On November 13, 2023, Commerce issued a memorandum in which it determined to accept Triune's October 23 submission.  Acceptance of Submission and Opportunity to Submit Rebuttal Info. (Nov. 13, 2023) ("Commerce Acceptance"), PR 233, CJA Tab 20.  Commerce stated that it "disagree[d] with both parties and their

characterization of the information." *Id.* at 2.  Commerce explained that it had requested

CV profit information pursuant to 19 C.F.R. § 351.102(b)(21)(v) and 19 C.F.R.

§ 351.301(a).  *Id.*  Commerce found that because the information was not available at

the earlier deadline, good cause existed to extend the deadline.  *Id.*  Commerce

accepted Triune's submission and provided parties with an opportunity to submit

rebuttal information by November 20, 2023.  *Id.*  Edsal did not file any rebuttal

information.  *See generally* PR, CR; *cf.* Def.'s Resp. to Pl.'s Mot. for J. upon the Agency

R. ("Def.'s Resp."), ECF No. 23, at 24 (noting the failure to file any rebuttal on the

record).

On November 21, 2023, Commerce issued its *Preliminary Determination*.

Commerce explained that the TMTE financial statements were "the best source for

determining CV profit for Triune" because "TMTE is a significant producer of

merchandise comparable to boltless steel shelving" and "the profit stated in its financial

statement[s] predominantly comes from sales of comparable merchandise in India."

Prelim. Mem. at 12.  In its *Final Determination*, the agency continued to use TMTE's

financial statements to calculate CV profit.  I&D Mem. at 4.

This litigation followed.  Edsal argues that Commerce erred in relying on the

TMTE financial statements.  *See* [Confid.] Rule 56.2 Br. in Supp. of Pl.'s Mot. for J. on

the Agency R. ("Pl.'s Br."), ECF No. 20; Pl.'s Reply Br. ("Pl.'s Reply"), ECF No. 27.

Defendant United States ("Defendant" or "the Government") supports Commerce's

determination.  *See* Def.'s Resp.  Triune intervened to support Commerce's

determination.  *See* Def.-Int.'s Resp. to Pl.'s Mot. for J. on the Agency R. Pursuant to

USCIT Rule 56.2 ("Def.-Int.'s Resp."), ECF No. 26.  The court heard oral argument on

May 7, 2025.  *See* Docket Entry, ECF No. 32.

### JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to section 516A(a)(2)(B)(ii) of the Tariff Act of

1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(ii) (2018), and 28 U.S.C. § 1581(c).

The court will uphold an agency determination that is supported by substantial evidence

and is otherwise in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i).  "Substantial

evidence . . . means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 217

(1938).

### DISCUSSION

### I.    Timing of Submission of TMTE Statement

#### a.  Parties' Contentions

Plaintiff contends that Commerce applied the wrong standard in deciding whether

to extend the deadline for the submission of factual information, that the agency should

have considered whether extraordinary circumstances warranted a late extension, and

that a late extension was not warranted.  Pl.'s Br. at 14.  Plaintiff further argues that

even under the good-cause standard, Commerce should have rejected Triune's

submission.  *Id.* at 16–17.  Plaintiff argues that this submission was prejudicial to Edsal.

*Id.* at 17.  Plaintiff avers that the acceptance of this factual information is an

unreasonable deviation from practice in a previous investigation.  *Id.* at 15 (citing Issues

and Decision Mem. for Steel Nails from Oman, A-523-808 (May 13, 2015) ("*Steel Nails*

*From Oman*")).[3]

       The Government argues that Commerce reasonably exercised its discretion

when it extended the submission deadline for good cause.  Def.'s Resp. at 14.  The

Government contends that good cause supported Commerce's determination because

the "financial statement[s] w[ere] not available on the MCA's website at the time of

Commerce's initial deadline."  *Id.* at 17–18.  The Government argues that Commerce

did not need to consider extraordinary circumstances because Triune's filing was not an

extension request.  *Id.* at 17.

       **b.  Analysis**

       Commerce "determined that good cause exist[ed] to extend the deadline" to

October 23, 2023, for information pertaining to CV profit.  Commerce Acceptance at 2

(footnote omitted).  Commerce did not explicitly state which subsection of 19 C.F.R.

§ 351.102(b)(21) properly described the information contained in the October 23

submission and, therefore, what deadline applied.  *See id.* (noting only that the agency

had "requested th[e] factual information pursuant to 19 [C.F.R. §] 351.102(b)(21)(v)").

Commerce also did not express whether the TMTE financial statements attached to the

October 2 submission, without the added October 23 submission, qualified as publicly

available.  *See* I&D Mem. at 6 (stating that "TMTE's financial statements have been

---

[3] Commerce's decision memoranda are publicly available at
https://access.trade.gov/public/FRNoticesListLayout.aspx, with separate links for pre-
and post-June 2021 memoranda.

publicly available since October 2023"); *see also* Prelim. Mem. at 12–13; Commerce

Acceptance at 2.

Nevertheless, Commerce has the discretion to extend its regulatory deadlines for

good cause.  19 C.F.R. § 351.302(b) ("Unless expressly precluded by statute,

[Commerce] may, for good cause, extend any time limit by this part."); *see also id.*

§ 351.301(a) ("[Commerce] may . . . provide additional opportunities to submit factual

information.").  This discretion exists for all types of factual information and without

regard to whether the previously submitted information was inadequate.  Commerce

need only find good cause, and it did so here.  Commerce Acceptance at 2 (explaining

that the fact of the filing with the Ministry of Corporate Affairs was not available by the

earlier deadline).

Edsal's reliance on other cases and administrative proceedings is unavailing.

Edsal cites *Tri Union Frozen Products, Inc. v. United States*, 40 CIT __, __, 163 F.

Supp. 3d 1255, 1293 (2016), and *Ferrostaal Metals GmbH v. United States*, 45 CIT __,

__, 518 F. Supp. 3d 1357, 1371 (2021), for the proposition that there is no reason

Commerce "should be expected" to extend a deadline on the agency's own accord.

Pl.'s Br. at 12–13.  Those cases, however, involved challenges to Commerce's

decisions *not* to extend a deadline.  Here, Commerce elected to extend a deadline

without a request by a party.  While Commerce may not have been required to provide

such an extension, it does not follow that Commerce lacks the discretion so to do.

Indeed, the regulation permits just that, subject only to the good cause standard.[4]  *See* 19 C.F.R. § 351.302(b).  Edsal's further argument that *Steel Nails From Oman* supports rejecting similar information as untimely questionnaire response information under 19 C.F.R. § 351.102(b)(21)(i), Pl.'s Br. 15–16, is also inapposite.  Regardless of how one characterizes the information pursuant to 19 C.F.R. § 351.102(b)(21), Commerce maintains the discretion to extend the deadline for that information.  *See* 19 C.F.R. §§ 351.301(a), 351.302(b).  Finally, Commerce expressly characterized the information in question as requested pursuant to 19 C.F.R. § 351.102(b)(21)(v), in which case its submission on October 23, 2023, would have been 30 days before the scheduled date of the preliminary determination as required by 19 C.F.R. § 351.301(c)(5).

        The acceptance of Triune's October 23, submission was not prejudicial to Edsal.  First, Edsal ignores the fact that the TMTE financial statements had already been provided to Commerce and served on Edsal by the earlier October 2 deadline.  *See* Triune CV Submission, Ex. CV-8(e).  While Edsal attempted to raise speculative doubts about the public availability of the financial statements at that time, it provided no record evidence to support that speculation.  Edsal Rebuttal Cmts. at 4.  Second, and more importantly, Edsal took no steps either to rebut the October 23 statement of public availability or to document any disparities between the October 2 timely submitted

---

[4] Note that this good-cause standard applies to the agency's *sua sponte* extensions, regardless of when granted, even if a similarly timed, untimely extension request from a party would have been required to meet the extraordinary-circumstances standard of 19 C.F.R. § 351.302(c).

financial statements and those available from the Ministry website.[5]  When Commerce

extended the deadline, the agency expressly "provid[ed] interested parties an

opportunity to submit rebuttal information regarding Triune's October 23, 2023

submission."  Commerce Acceptance at 2.[6]  Edsal failed to provide any rebuttal

information.  Moreover, the acceptance of the October 23 submission did not "nullif[y]

the purpose of establishing deadlines," Pl.'s Mem. at 17, because the regulations

expressly permit Commerce to accept late submissions and extend deadlines, *see, e.g.*,

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Coun.*, 435 U.S. 519, 543 (1978)

("Absent constitutional constraints or compelling circumstances the administrative

agencies should be free to fashion their own rules of procedure and to pursue methods

of inquiry capable of permitting them to discharge their multitudinous duties.") (internal

quotation marks and citation omitted).

Finally, Commerce did not err by applying the good-cause standard, rather than

the extraordinary-circumstance standard.  Parties do not dispute that the extraordinary-

circumstances standard applies when a party untimely requests an extension.  *See* 19

C.F.R. § 351.302(c).  However, Edsal and the Government agree that Triune never

requested an extension.  *See* Pl.'s Br. at 14 ("Triune never requested an extension of

the deadline."); Def.'s Resp. at 6 ("Triune did not request an extension of the October

---

[5] Edsal does not dispute that that the TMTE financial statement on the Ministry of
Corporate Affairs website is publicly available.
[6] In light of the court's analysis of Commerce's regulations and the information as
accepted by Commerce, it is not clear to the court that any deadline extension was even
necessary in this investigation.  To that end, Commerce's granting of such an extension
and express provision of a rebuttal period to Edsal would be harmless error.

10, 2023 deadline for submission of factual information.").  Absent an untimely request

for an extension, the extraordinary-circumstances standard was not applicable.  *See*

*supra* note 4.

       For these reasons, the court sustains Commerce's decision to accept Triune's

October 23 submission.

   **II.    Public Availability of TMTE's Financial Statement**

       **a.  Parties' Contentions**

       Plaintiff argues that Commerce erred in finding that TMTE's financial statements

were publicly available.  Pl.'s Br. at 18.  Plaintiff contends that Commerce must

adequately explain a finding of public availability and Commerce failed to do so here.

*See id.* at 19–21 (citing *Best Mattresses Int'l Co. v. United States* (*Best Mattresses I*),

47 CIT __, __, 622 F. Supp. 3d 1347, 1393–95 (2023)).  Plaintiff further avers that

Commerce erred by simply accepting Triune's claim that the financial statements had

been filed with the Indian government, without a copy from the Indian Ministry's website.

*Id.* at 21.  Edsal argues that a document is not publicly available simply "by virtue of

being submitted to the record."  Pl.'s Reply at 3–4 (citing *Zhengzhou Harmoni Spice Co.*

*v. United States*, 33 CIT 453, 489 n.39, 617 F. Supp. 2d 1281, 1313 n.39 (2009), and

*Taian Ziyang Food Co. v. United States*, 33 CIT 828, 888 n.58, 637 F. Supp. 2d 1093,

1146 n.58 (2009)).

       Defendant argues that Commerce properly determined that the TMTE financial

statements were publicly available because the documents were "filed on the public

record" and "accessible through the MCA" for a fee.  Def.'s Resp. at 20.

####    b.  Analysis

Commerce's stated "practice [is] to use publicly available financial statements to value CV profit and selling expenses."  I&D Mem. at 5 & n.18 (citations omitted).  This practice "ensure[s] that all interested parties have access to such information, and are able to comment on the reliability and relevance of such information in the particular case."  *Best Mattresses I*, 622 F. Supp. 3d at 1393.  In cases involving a market economy, "[t]he publicly available requirement has diminished force," *id.*,[7] but Commerce must still adequately explain its finding.

Commerce reasonably explained its finding in this case.  Triune represented, in its original filing, that TMTE agreed "to provide these financial statements to anyone as a public document."  Triune CV Submission, Ex. CV-8(e); *see also id.* at 2 (describing the owner as having "agree[d] to place on the record this financial statement as a public document").  There is no indication that Commerce considered the financial statements submitted on October 2 not to be publicly available.  Furthermore, Triune later submitted, and Commerce accepted, documentation that the financial statements were filed with the Ministry of Corporate Affairs and available to the public through the Ministry's website.  Triune Public Availability Submission, Ex. 1.  Commerce pointed to this evidence when the agency determined that the statements were publicly available.

---

[7] In contrast, when calculating normal value for a nonmarket economy, Commerce's regulations state a preference for "publicly available information."  19 C.F.R. § 351.408(c)(1).

I&D Mem. at 5.  Edsal does not identify any evidence on the record to dispute the availability of TMTE's financial statements on that website.

Cases such as *Zhengzhou* and *Taian Ziyang*, relied on by Edsal to argue that submission on the public record is not sufficient to qualify a document as "publicly available," *see* Pl.'s Reply at 3–4, are readily distinguishable.  First, those cases involved price quotes, which, as Defendant explains, represent transactions between two parties rather than audited financial statements based on a "broad market average" of transactions.  *See* Def.'s Resp. at 25.  Moreover, those cases involved a nonmarket economy country and, therefore, were subject to a regulatory preference for public availability.  *See* 19 C.F.R. § 351.408(c)(1) (stating "[t]he Secretary normally will use publicly available information").  In a market economy, like India here, the public availability of the financial statements allows all interested parties to access and review the statements and speak to their reliability and relevance for their intended use.  *See Best Mattresses I*, 622 F. Supp. 3d at 1393.

The fact that the *Best Mattresses I* court remanded the determination to Commerce to address further the public availability of the financial statements does not affect the court's conclusion.  There, the court found that "Commerce acted unreasonably" by "premising its finding that [a party's] financial statement was publicly available on an *inference* that the statement was from a 'fee-based subscription service.'"  *Id.* at 1394 (emphasis added).  Here, Commerce is not relying on any "inference"—Triune provided documentation from TMTE's owner that he would provide the financial statements to anyone as a public document upon request and

subsequently documented that the financial statements were filed with the Ministry of

Corporate Affairs.  In contrast, the concerns raised by Edsal were purely speculative,

and Edsal submitted no rebuttal information in response to Commerce's invitation.

Thus, substantial evidence supports Commerce's acceptance of the financial

statements as publicly available.[8]

Comparing this case to *Since Hardware (Guangzhou) Co. v. United States*, 2012

WL 11802604 (CIT Aug. 14, 2012) (published order), Edsal faults Triune for not

providing the financial statements directly from the website of the Ministry of Corporate

Affairs (and instead providing a record of filing) with its October 23 submission and

avers that the October 2 submission of the financial statements was "unverified" and

"unreliable."  Pl.'s Br. at 25.  But in *Since Hardware*, "a fair amount of record

information" demonstrated that the relevant financial statements "may not have been

publicly available," and "interested parties were unable to obtain the financial

statements through the public domain."  *Id.* at 22 (first quoting and then citing *Since*

*Hardware*, 2012 WL 11802604, at *2–3).  Here, Edsal failed to submit or identify any

record evidence establishing that the submitted document was unreliable or

unavailable.  In response to the October 2 submission, Edsal asserted that it could not

---

[8] Edsal also argues that, based on *Best Mattresses I*, the submission of financial
statements "obtained directly from TMTE's owner . . . may be reason enough to
'possibly render the financial statement "not publicly available."'"  Pl.'s Br. at 21 (quoting
*Best Mattresses I*, 622 F. Supp. 3d at 1394–95).  In *Best Mattresses I*, the court
discussed "a hypothetical private payment" for use of another company's financial
statement.  *Best Mattresses I*, 622 F. Supp. 3d at 1394–95.  *Best Mattresses I* did not
rely upon its hypothetical, however, and there is no evidence, direct or even inferential,
of such a payment here.

access the financial statements "in the public domain," Edsal Rebuttal Cmts. at 4, but

Edsal provided no evidence suggesting that it tried and failed to obtain the statements

from TMTE.  Triune's October 23 submission simply confirmed the public availability of

the statements by documenting that they were then available from the Ministry of

Corporate Affairs.  Commerce expressly invited Edsal to submit rebuttal information to

that submission and Edsal declined.  In the absence of any record evidence

inconsistent with the submission of the statements as publicly available on October 2

and available from the Ministry by October 23, Commerce's acceptance of the

statements as publicly available is supported by substantial evidence.

   **III.    Presence of Countervailable Subsidies in Mekins' Financial Statement**

           **a.  Parties' Contentions**

       Plaintiff argues that Commerce erroneously treated Mekins' financial statements

as per se unsuitable for use to determine CV profit.  Pl.'s Br. at 32–33.  Plaintiff

contends that Commerce "is not required to reject a company's financial statement[s] for

the purpose of calculating a constructed value under 19 U.S.C. § 1677b(e)(2)(B)(iii)

because it indicates receipt of countervailable subsidies."  *Id.* at 28 (citing *Mid Continent

Steel & Wire, Inc. v. United States*, 941 F.3d 530, 543–46(Fed. Cir. 2019), and *CP

Kelco US, Inc. v. United States*, 949 F.3d 1348, 1358–59 (Fed. Cir. 2020)).  Plaintiff

further contends that Commerce erred by dismissing the argument that Mekins' receipt

of a subsidy "actually likens its profit experience to Triune's."  *Id.* at 33.  Finally, Plaintiff

argues that Commerce failed to consider appropriately the "quantifiable and miniscule" effect of subsidies on Mekins' financial statements.  *Id.* at 34–35.

Defendant argues that Commerce's rejection of Mekins' financial statements did not deviate from agency practice.  *See* Def.'s Resp. at 27.  Defendant contends that the cases that Plaintiff cites are factually distinct because they included alternative financial statements that were unsuitable for other reasons.  *Id.* at 28–30.  Defendant further argues that Commerce did not need to consider whether the presence of countervailable subsidies made Mekins' financial statements more reflective of Triune's, which were alleged to contain countervailable subsidies, because Commerce can reject statements with countervailable subsidies.  *Id.* at 30–31.  Defendant similarly argues that whether Commerce could have adjusted for Mekins' "modest" subsidies is irrelevant because Commerce had an alternative set of financial statements without subsidies.  *Id.* at 31–32.

Alternatively, Plaintiff argues that Commerce should have averaged the various financial statements of Mekins and TMTE.  Pl.'s Mem. at 36–37.  Plaintiff avers that Commerce has a "preference and practice . . . to rely on multiple financial statements to calculate surrogate profit and selling expenses ratios" and that the agency unlawfully deviated from this practice.  *Id.* at 36–37.  Defendant counters that none of the cases that Edsal cites involve Commerce using financial data with evidence of countervailable subsidies, thus making them inapplicable here.  Def.'s Resp. at 34.

####    b.  Analysis

When determining a constructed value profit using "any other reasonable method," 19 U.S.C. § 1677b(e)(2)(B)(iii), Commerce is not required to reject a company's financial statement when it includes countervailable subsidies.  *See Mid Continent*, 941 F.3d at 544–45; *CP Kelco*, 949 F.3d at 1358–59.  However, Plaintiff's contention that Commerce rejected Mekins' financial statements as unusable, per se, is not supported by the record.  Commerce explained that its practice is to "reject surrogate financial statements that contain evidence of countervailable subsidies *when there are other sufficient, reliable, and representative data available*."  I&D Mem. at 7 (emphasis added).  Thus, Commerce weighed other considerations before deciding if the inclusion of countervailable subsidies warranted rejection of Mekins' financial statements.  Commerce explained that "TMTE is a significant producer of merchandise comparable to boltless steel shelving" and "the profit stated in its financial statement[s] predominantly comes from sales of comparable merchandise in India."  Prelim. Mem. at 12.  Edsal based its challenge to the use of TMTE's financial statements on their alleged nonpublic availability but, as discussed above, Commerce addressed that concern.  Thus, Commerce reasonably concluded that TMTE's financial statements represented a reliable alternative to Mekins' financial statements.

Plaintiff relies on cases from this court and the U.S. Court of Appeals for the Federal Circuit addressing the antidumping proceeding on steel nails from Oman.  *See* Pl.'s Br. at 29–33 (citing various cases).  While that line of cases is consistent with Plaintiff's argument that Commerce may not reject financial statements merely because

they contain countervailable subsidies, it goes no further.  There, the courts required Commerce to engage in a comparative analysis of the financial statements containing countervailable subsidies with financial statements containing other deficiencies. Plaintiff points to no case suggesting that Commerce *must* use a financial statement affected by countervailable subsidies when other, nonimpugned financial statements are available.  Commerce's decision is fact-specific, *see Mid Continent*, 941 F.3d at 544–45 (declining to "prescribe an ultimate result"), and here Commerce explained its selection of TMTE.

Plaintiff's contention that Mekins' countervailable subsidies are comparable to Triune's own receipt of subsidies and modest in size does not change the court's analysis.  "The objective [of determining constructed value profit] is to find a good proxy (or surrogate) for the profits that the respondent can fairly be expected to build into a fair sales price for the particular merchandise" and "[t]he size of any subsidies would obviously be relevant" to selecting among surrogate financial statements with varying comparative deficiencies.  *Id.* at 542, 544.  Here, Commerce considered the comparability of the financial statements, cited the countervailable nature of the subsidies reflected in Mekins' statements, I&D Mem. at 6 & n.29, and explained that "it was unclear whether [Triune's] subsidies were attributable to previously countervailed programs," *id.* at 7.[9]  Commerce also reasonably found that, even if the subsidies were

---

[9] Based on the administrative proceedings cited by Commerce, the agency was relying on the distinction it had drawn between financial statements containing subsidies previously countervailed (and consequently excluded) and those containing possible

small, the record did not warrant consideration of financial statements with evidence of

countervailable subsidies based on the availability of TMTE's financial statements

without subsidies or other deficiencies.  *See Mid Continent*, 941 F.3d at 544 (explaining

that "the comparative deficiencies" would also be relevant).

Finally, Edsal's argument that Commerce should have averaged the two financial

statements is also unavailing.  First, none of Edsal's examples of averaging involved the

inclusion of financial statements with countervailed subsidies, as would be the case

here.  *See* Def.'s Resp. at 34.  Similarly, Edsal's reliance on *Best Mattresses Int'l Co. v.*

*United States* (*Best Mattresses II*), 48 CIT __, __, 703 F. Supp. 3d 1382, 1395–96

(2024), *see* Pl.'s Br. at 38, ignores that the subsidies in that case had not been

previously countervailed, *see* Def.'s Resp. at 34.  Moreover, in that case Commerce

explained that it averaged the statements to account for other flaws in the data.  *Best*

*Mattresses II*, 703 F. Supp. 3d at 1395.  Here, in contrast, the TMTE financial

statements contain no flaws such that averaging would be beneficial.

---

subsidies that had not previously been countervailed (and otherwise considered
acceptable).  *See* I&D Mem. at 6 & n.29.  Commerce further stated that the uncertainty
regarding the countervailable nature of Triune's subsidies would not have affected its
selection, *id.* at 7, but the agency's reasoning is evident from its citations and sufficient
to support the agency's decision.

Court No. 24-00087                                                                 Page 21

**CONCLUSION**

For the reasons discussed above, the court will sustain Commerce's *Final Determination*.  Judgment will enter accordingly.

/s/     Mark A. Barnett____

Mark A. Barnett, Chief Judge

Dated: June 3, 2025_____
     New York, New York